# EXHIBIT A

# STATE OF NORTH CAROLINA

_____Wake_____ County

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| | |
|---|---|
| *Name Of Plaintiff*<br>Kimberli Lewis | **CIVIL SUMMONS**<br>☒ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| *Address*<br>c/o Maginnis Howard, 7706 Six Forks Road, Suite 101 | *Served with Interrogatories + Requests for Production of Docs* |
| *City, State, Zip*<br>Raleigh, NC 27615 | G.S. 1A-1, Rules 3 and 4 |
| **VERSUS** | *Date Original Summons Issued*<br>04/14/2022 |
| *Name Of Defendant(s)*<br>EquityExperts.org, LLC | *Date(s) Subsequent Summons(es) Issued* |

## To Each Of The Defendant(s) Named Below:

| *Name And Address Of Defendant 1*<br>EquityExperts.org, LLC<br>c/o Corporation Service Company, Reg. Agent<br>2626 Glenwood Avenue, Suite 550<br>Raleigh, NC 27608 | *Name And Address Of Defendant 2*<br>EquityExperts.org, LLC<br>c/o Michael Novak, Member<br>6632 Telegraph Road, Suite 339<br>Bloomfield Hills, MI 48301 |
|---|---|

⚠ **IMPORTANT! You have been sued! These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!**

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra! Estos papeles son documentos legales. ¡NO TIRE estos papeles!**

**Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!**

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1.  Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2.  File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| *Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff)*<br>Edward H. Maginnis, Karl S. Gwaltney, Asa C. Edwards<br>Maginnis Howard<br>7706 Six Forks Road, Suite 101<br>Raleigh, NC 27615 | *Date Issued*<br>9-6-22 | *Time*<br>2  ☐ AM ☒ PM |
|---|---|---|
| | *Signature* | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | *Date Of Endorsement* | *Time*<br>☐ AM ☐ PM |
|---|---|---|
| | *Signature* | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

| | | RETURN OF SERVICE | |
|---|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid | Signature Of Deputy Sheriff Making Return |
|---|---|
| $ | |
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

Case 2:22-cv-00302-FL   Document 1-2   Filed 08/04/22   Page 3 of 34

STATE OF NORTH CAROLINA    FILED IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

COUNTY OF WAKE    2022 APR 14 A 11: 29    CASE NO. _____

WAKE CO.) C.C.C.

| | |
|---|---|
| KIMBERLI LEWIS on Behalf of Herself and Others Similarly Situated, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EQUITYEXPERTS.ORG, LLC, )<br>)<br>Defendant. )<br>) | **COMPLAINT – CLASS ACTION**<br>[JURY TRIAL DEMANDED] |

Plaintiff Kimberli Lewis, on behalf of herself and others similarly situated, files this Class Action Complaint against Defendant EquityExperts.org, LLC, ("Equity Experts" or "Defendant") and states:

## NATURE OF THE ACTION

1.    This is a consumer protection action brought by Plaintiff and others similarly situated to obtain redress from Defendant EquityExpert.org's unlawful collection practices.

2.    Defendant's business consists of contracting with Homeowner's Associations ("HOAs") to aggressively contact and attempt to collect debt – including arbitrary fees imposed by Defendant - from members of the respective HOAs.

3.    Particularly troubling is Defendant's use of a form letter to notify homeowners of its intent to foreclose on outstanding liens for assessments ("Notice of Intent").

4.    The Notice of Intent is unfair and deceptive in that it: (1) contains a false and arbitrary deadline for payment under threat of foreclosure, which creates a false sense of urgency and limits consumers' ability to evaluate and respond to the Notice of Intent; and (2) demands the

1

payment of unlawful, grossly excessive, and arbitrary attorneys' fees and costs that grossly exceeds the amount authorized and allowed under North Carolina law.

5.    This case arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1962, *et seq.* ("FDCPA"); the North Carolina Collection Agency Act, N.C.G.S. § 58-70, *et seq.* ("NCCAA"); the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50, *et seq.*, the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1, *et seq.*, ("UDTPA"); the North Carolina Planned Community Act, N.C.G.S. § 47-1-101, *et seq.* ("NCPCA"); and common law.

6.    This class action is filed pursuant to Rule 23 of the North Carolina Rules of Civil Procedure on behalf of homeowners that were sent the unlawful Notice of Intent and were charged and illegally pursued for Defendant's illegal debt collection fees during the applicable statute of limitations period in violation of Federal and North Carolina law as further set forth herein.

<u>**JURISDICTION AND VENUE**</u>

7.    This Court has jurisdiction over the parties and this action pursuant to N.C.G.S. § 75-16 and 56, N.C.G.S. § 1-75.4, and N.C.G.S. § 58-70 *et seq.*,

8.    Venue is proper under N.C.G.S. § 1-79 in that Defendant maintains a registered office, and has regularly conducted business, in Wake County, North Carolina.

<u>**PARTIES**</u>

9.    Plaintiff Kimberli Lewis is a citizen and resident of Wake County, North Carolina.

10.    Plaintiff and each member of the proposed classes owed a "debt," as defined by the FDCPA, 15 U.S.C. § 1692a(5).

2

11.    These alleged debts were incurred in connection with covenants appurtenant to the houses maintained by Plaintiff and each member of the proposed class for personal, family, household or agricultural purposes.

12.    These alleged debts were treated as delinquent when referred to Defendant for collection.

13.    Plaintiff and each member of the proposed classes are "consumers" as that term is defined by 15 U.S.C. § 1692a(3).

14.    Plaintiff and each member of the proposed classes are "consumers" as that term is defined by N.C.G.S. § 75-50.

15.    Plaintiff and each member of the proposed classes are "consumers" as that term is defined by N.C.G.S. §58-70-15.

16.    Defendant EquityExperts.Org, LLC, is a company organized and existing under and by virtue of the laws of the State of Michigan that maintains a registered office in Wake County, North Carolina.

17.    Defendant is regularly engaged in the business of collecting debt in the State of North Carolina.

18.    Defendant's debt collection activity within the state of North Carolina involves interstate commerce.

19.    Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

20.    Defendant is a "collection agency" as defined by the North Carolina Collection Agency Act ("NCCAA"), N.C.G.S. § 58-70-15.

21.    Alternatively, Defendant is a "debt collector," as defined by the North Carolina Debt Collection Act ("NCDCA"), N.C.G.S. § 75-50.

3

22. Defendant's employees, affiliates, directors, agents, and attorneys act under the direction and supervision of Defendant and, therefore, Defendant is responsible and/or vicariously liable for the actions of its employees, affiliates, directors, agents, and attorneys under, *inter alia*, the theory of *respondeat superior*.

## FACTUAL ALLEGATIONS

I. General Factual Allegations

23. Plaintiff and each member of the putative classes are North Carolina consumers with residential homes subject to standard covenants, conditions, and restrictions ("Covenants") duly filed and recorded with the register of deeds for their respective counties in North Carolina.

24. These Covenants authorize homeowners associations to collect "costs" and "reasonable attorney fees" incurred with collection of assessment fees subject to the Planned Community Act.

25. Plaintiff and each member of the putative classes were alleged to have had delinquent debts arising out of their respective Covenants which were referred to Defendant for collections.

26. After the accounts of Plaintiff and each member of the putative classes were placed for collection, Defendant assessed several hundred dollars in charges for "costs" and "attorneys fees" that more than doubled the principal debts in some cases. Defendant then sets out on a cyclic campaign, where it charges consumers hundreds, sometimes thousands, of dollars a month for their debt collection services while using unfair and deceptive debt collection practices to coerce consumers into paying illegal fees.

27. These "costs" are not authorized by the Covenants, nor are they authorized by the Planned Community Act or other North Carolina law. The amounts that Defendant claim for

4

"costs" are not permitted by the Covenants of Plaintiff and putative class members in violation of N.C.G.S. § 47f-2-116(h). Moreover, these costs are arbitrary, grossly excessive, unconscionable, and unreasonable.

28. These "attorneys fees" are not authorized by the Covenants, nor are they authorized by the Planned Community Act or other North Carolina law.

29. The costs and attorneys' fees that Defendant collects or attempts to collect are unlawful.

30. If a consumer fails to promptly pay the unlawful amounts assessed by Defendant, Defendant sends an unfair, deceptive, untruthful, false, misleading, and dishonest Notice of Intent letter. This Notice of Intent is a standard letter sent to Plaintiff and each member of the putative classes pursuant to Defendant's uniform collection practices.

31. A true and correct copy of a Notice of Intent received by Plaintiff is attached hereto as **Exhibit A**.

32. The Notice of Intent claims that: "Failure to satisfy the debt secured by the lien(s) on or before the date stated herein may result in the sale of the Property."

33. The Notice of Intent is unlawful for at least two reasons:

   a. First, the Notice of Intent contains a false and arbitrary deadline for payment under threat of foreclosure. Even if Defendant intended to follow through on its false threats - which it does not and cannot - the failure to satisfy the debt by or before the deadline contained in the Notice of Intent will **never**, under any circumstances, result in the sale of the Property because, *inter alia*, (1) Defendant is legally unable to foreclose prior to sending a detailed accounting of the assessments and fees that are included in the alleged amount due for foreclosure pursuant to N.C. Gen. Stat.

5

47f-3-116(f)(5) and 45-21.16(c)(5a) and (2) homeowners have the right to satisfy a lien and prevent the sale of their homes until the expiration of the upset bid period provided in N.C. Gen Stat. 45-21.27 and N.C. Gen. Stat. 47F-3-116(f)(7).

b. Second, the Notice of Intent misrepresents the nature and amount of the alleged debts because it includes the unlawful "costs" and "attorneys' fees" that are arbitrary, grossly excessive, unconscionable, and in excess of amounts allowed under North Carolina law.

II. Plaintiff Lewis's Factual Allegations

34. Plaintiff Kimberli Lewis, at all times relevant, was the owner of a home located at 6012 Herston Road in Raleigh, North Carolina. This home is subject to the covenants and restrictions filed in the Wake County Register at Book 11014, Page 243, which places the home under the management of the Abbington Ridge Townhome Association, Inc.

35. The Abbington Ridge Townhome Association declaration and covenants authorize the Association to charge homeowners quarterly assessment fees.

36. The Abbington Ridge Townhome Association declaration and covenants also purport to give the Association the ability to collect "all costs" incurred with collection of assessment fees, without any limitation or bounds of reasonableness of those costs.

37. Upon information and belief, the Abbington Ridge Association referred Plaintiff Lewis's account to Defendant in or after 2019.

38. Upon information and belief, the contract between the Abbington Ridge Association and Defendant set the rates for Defendant's services. Upon information and belief, Defendant colludes with HOAs to set grossly excessive and arbitrary rates to be paid by

6

consumers with the explicit or implicit agreement that Defendant will not seek to recoup unpaid fees from the respective HOAs.

39.     A homeowner's association has the right to enforce its covenants, but Defendant is abusing its authority by unfairly and deceptively coercing the payment of arbitrary and grossly excessive fees from consumers in this state.

40.     From March to September 2019, Defendant called Plaintiff repeatedly regarding the amount allegedly owed to the Abbington Ridge Association. Each time Defendant called Plaintiff they added another charge to Plaintiff Lewis's account.

41.     On or about September 16, 2019, Defendant added a $395.00 "Lien North Carolina" and $150 "Attorney Fee" to Plaintiff's account.

42.     Upon information and belief, Defendant did not actually prepare or file the lien for Plaintiff's property until on or about November 1, 2019, despite having charged Plaintiff $545.00 for the lien service in September.

43.     Defendant caused a lien to be placed on Plaintiff's home on or about November 1, 2019. The lien stated that the secured amount owed was $2,810.00.

44.     The amount allegedly secured by the lien included grossly excessive and arbitrary amounts that are unfair, deceptive, inequitable, unconscionable, and unlawful.

45.     From October 2019 to January 2020, Defendant continued to place calls to Plaintiff and add charges to her account each time it did so.

46.     In January 2020, Defendant added a $3,445.00 "Foreclosure Referral" fee to Plaintiff's account. (This charge was removed on August 20, 2021, however it was reinstated six days later).

7

47. Finally, in March 2020 Defendant charged Plaintiff a "Plan Fee," which appears to be a fee required to pay other fees.

48. Between March 2019 and August 2021, Defendant added at least nineteen separate charges to Plaintiff's account, ranging from $25.00 to $3,445.00 per charge. The total of all these fees combined is $6,035.00.

49. During this same time frame, Plaintiff entered into a payment plan and made a total of $782.25 in payments on her account, including payments in November 2019; February 2020; and March 2020.

50. The ending balance reflected on Plaintiff's account is $6,349.00, meaning only $314.00 of the statement balance is debt originating with the Abbington Ridge Association and the remaining $6,035.00 are fees from Defendant for their debt collection services.

51. On or about August 26, 2021, Defendant sent Plaintiff a Letter of Intent to Foreclose. See **Exhibit A**.

52. In the Notice of Intent, Defendant stated that in order to avoid foreclosure, Plaintiff "must pay all amounts due to the Creditor by 09/25/2021," with Abbington Ridge Association listed as the creditor.

53. The Notice of Intent further stated that the amount secured under the lien was $2,810.00 and that the total amount due to the creditor was $6,339.00; but did not provide an itemization of the alleged fees and costs or provide Plaintiff Lewis with 15 days' notice of Defendant's intent to seek recovery of attorneys fees and costs. Upon information and belief, the Notice of Intent also included fees and/or costs that were incurred within 30 days of the Notice of Intent which would preclude Defendant from foreclosing upon expiration of the false deadline.

8

54.     Upon information and belief, Defendant charged all of the unsecured fees directly to Plaintiff and never sought recoupment of unpaid fees from Abbington Ridge Association.

55.     Defendant's Notice of Intent misrepresented the amount Plaintiff needed to pay to avoid foreclosure.

56.     Defendant's Notice of Intent caused Plaintiff to believe that she would lose her home if all assessments and fees were not paid within thirty days.

57.     Defendant did not send a detailed accounting of what assessments and fees were included in the alleged amount due for foreclosure in violation of 47f-3-116(f)(5) and 45-21.16(c)(5a).

58.     Defendant did not provide notice of its intent to seek recovery of attorneys' fees and costs as required by N.C.G.S. Sec. 47F-3-116(e).

59.     Upon information and belief, Defendant did not include an itemization of fees and charges to Plaintiff Lewis in the Notice of Intent.

60.     Upon information and belief, Defendant did not provide Plaintiff with an itemization of charges and fees at least 30 days prior to the deadline set forth in the Notice of Intent.

61.     Upon information and belief, Defendant did not provide 15 days' notice of its lien as required by N.C.G.S. Sec. 47F-3-116(b).

62.     Defendant misrepresented the amount of attorneys' fees and costs it could recover by attempting to collect unreasonable or unauthorized fees from Plaintiff.

63.     Defendant misrepresented the amount of attorneys' fees and costs it could recover by failing to disclose that said fees could only be recovered to the extent that they were reasonable.

9

64. Defendant misrepresented the amount of attorneys' fees and costs it could recover by failing to disclose that said fees were statutorily capped at $1,200 or 15% of the principal balance.

65. Defendant misrepresented the amount of costs and other charges that could be assessed under the applicable covenants.

66. Plaintiff read and was misled by the Notice of Intent which caused confusion, distress, anxiety and other injury.

## COMMON CLASS ALLEGATIONS

67. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

68. Defendant repeatedly attempts to collect costs and attorneys' fees that are unlawful, including but not limited to through its use of the Notice of Intent.

69. Defendant's Notice of Intent misrepresents the amounts consumers must pay, and when they must pay those amounts, in order to avoid the sale of their homes.

70. Defendant's Notice of Intent causes homeowners to falsely believe that they will lose their homes if all assessments and fees are not paid within thirty days.

71. Upon information and belief, Defendant sent a form letter substantially identical to **Exhibit A** to each member of the putative classes pursuant to uniform policies and procedures.

72. Defendant's Notices of Intent misrepresent the amount Plaintiff and others similarly situated need to pay to avoid foreclosure or the sale of their home.

73. Defendant's Notice of Intent caused Plaintiff and others similarly situated to falsely believe that they would lose their homes if all assessments and fees were not paid within thirty days.

10

74.     Defendant did not send Plaintiff or others similarly situated a detailed accounting of fees and costs in or in connection with the Notice of Intent as required by 47f-3-116(f)(5) and 45-21.16(c)(5a).

75.     Defendant did not provide Plaintiff or others similarly situated with notice of its intent to seek recovery of attorneys' fees and costs as required by N.C.G.S. Sec. 47F-3-116(e).

76.     Defendant misrepresented the amount of attorneys' fees and costs it could recover from Plaintiff and others similarly situated by attempting to collect unreasonable or unauthorized fees and by failing to disclose that said fees would be capped at $1,200 or 15% of the principal debt.

77.     Upon information and belief, Defendant collected or attempted to collect, through phone calls, letters, and Notices of Intent, the following illegal fees and costs from Plaintiff and others similarly situated within the applicable statutes of limitations:

a.  Dunning Letter Fee – appx. $270
b.  Lien Fee – appx. $395
c.  Escalated Outreach Service Fee – appx. $350
d.  EDO 2 Fee – appx. $100
e.  Post Outreach Lien Enforcement Fee – appx. $650
f.  Foreclosure Referral Fee – appx. $3445
g.  Extended Outreach Fee – appx. $25
h.  PCI Letter Fee – appx. $25
i.  Duplicate late fees (HOA late fees & principal late fees) – appx. $15
j.  Chain of Ownership Fee – appx. $50
k.  Property Analysis Review Fee – appx. $150
l.  Unspecified Attorney Fee – appx. $150
m.  Credit Card Fee – appx. $7.25
n.  Plan Fee – appx. $100
o.  Quarterly Fee – appx. $58

78.     The foregoing fees and costs are unauthorized, grossly excessive, arbitrary, unconscionable, and/or illegal.

11

79. Plaintiff's and each member of the proposed classes' debt was alleged to be in default by the express terms of their respective master HOA covenants when acquired by Defendant.

80. Pursuant to North Carolina Rule of Civil Procedure 23, Plaintiff brings this action individually and on behalf of a class which is tentatively defined as:

### Notice of Intent Class:

All North Carolina consumers who, during the respective statute of limitations period, (a) owned a home in North Carolina, (b) that was subject to management by an HOA (c) which contracted with Equity Experts for recovery of defaulted assessments, and (d) received a Notice of Intent Letter from Equity Experts substantially identical to the Notice of Intent Letter delivered to Plaintiff.

### Collection Class

All North Carolina consumers who, during the respective statute of limitations period, (a) owned a home in North Carolina, (b) that was subject to management by an HOA (c) which contracted with Equity Experts for recovery of defaulted assessments and (d) were contacted by Defendant for purposes of collecting or attempting to collect costs and attorneys fees which were unreasonably high and not expressly authorized by the covenants as required by the Planned Community Act.

### Fee Class

All North Carolina consumers who, during the respective statute of limitations period, (a) owned a home in North Carolina, (b) that was subject to management by an HOA (c) which contracted with Equity Experts for recovery of defaulted assessments and (d) were contacted by Defendant for purposes of collecting or attempting to collect costs and attorneys fees which were unreasonably high and not expressly authorized by the covenants as required by the Planned Community Act; and (e) actually paid those costs and attorneys' fees.

81. Excluded from the proposed classes are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant and any entity in which Defendant has a

12

controlling interest, including its legal representatives, assigns and successors; and (c) all persons and entities who properly execute and file a timely request for exclusion from a class.

82. *Numerosity*: Plaintiff is unable to provide a specific number of members of the proposed classes because that information is solely in the possession of Defendant. However, the exact number of class members, including the names and addresses of all class members, will be easily ascertained through a review of Defendant's business records. Upon information and belief, the putative class contains at least a hundred consumers and likely exceeds several thousand consumers and is therefore so numerous that joinder of all members would be impracticable.

83. *Commonality*: In attempting to collect HOA assessments that were in default, Defendants sent letters with false deadlines for payment and illegal threats of legal action, while charging proposed class members illegally high fees for their services. Each and every member of the proposed class is subject to Defendant's policies and procedures. Common questions of law and fact predominate over any individual issues that may be presented, because Defendant has a pattern, practice, and policy of charging and communicating with proposed class members in a manner that violates federal and state collection laws. Common questions include, but are not limited to:

> i. Whether Defendant's collection or attempted collection of costs and attorneys' fees were in violation of the FDCPA, NDCDA, and/or NCCAA;
>
> ii. Whether Defendant's Collection Letters contained materially false information;
>
> iii. Whether Defendant's Collection Letters contained false deadlines for payment;
>
> iv. Whether Defendant's Collections Letters were misleading;

13

     v.   Whether Defendant's collection of costs and attorneys' fees were unlawful.

84.    *Typicality*: The claims of Plaintiff are typical of the claims of the proposed class and all are based on the same facts and legal theories, as all such claims arise out of Defendants conduct.

85.    *Adequate Representation*: Plaintiff is an adequate representative of the class in that she does not have antagonistic or conflicting claims with other members of the class. Plaintiff has also retained counsel experienced in the prosecution of complex class actions, specifically including experience with consumer class actions. Neither Plaintiff nor her counsel have any interests that might cause them not to vigorously pursue this action. Plaintiff is aware of her responsibilities to the putative class and has accepted such responsibilities.

86.    *Predominance and Superiority*: The class is appropriate for certification because questions of law and fact common to the class members predominate over questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the class is impracticable. Should individual class members be required to bring separate actions, this Court or courts throughout North Carolina would be confronted with a multiplicity of lawsuits burdening the court system while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale, and comprehensive supervision by a single court. Further, Defendant has acted and refused to act on grounds generally applicable to the proposed class, thereby making appropriate final injunctive and declaratory relief with respect to the class as a whole.

## FIRST CAUSE OF ACTION
(Violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*)

87. The forgoing allegations are hereby reincorporated by reference as if fully restated herein.

88. Defendant is a "debt collector," as defined by the FDCPA, 15 U.S.C. § 1692a(6).

89. Plaintiff and all members of the FDCPA Sub-Class are "consumers," as defined by the FDCPA, 15 U.S.C. § 1692a(3) since they are natural persons allegedly obligated to pay a consumer debt.

90. At all material times, Plaintiff's debt and the debts of the FDCPA Sub-Class members were "debt," as defined by the FDCPA, 15 U.S.C. § 1692a(5).

91. Plaintiff and members of the FDCPA Sub-Class's debt was in default per the terms of respective class member's master covenants and declarations.

92. Collection letters like the Notice of Intent are to be evaluated by the objective standard of the hypothetical "least sophisticated" consumer test.

93. FDCPA 15 U.S.C. § 1692e states in pertinent part:

> A debt collector may not use false, deceptive, or misleading representations or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

94. FDCPA section 1692f states in pertinent part that "a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

95. Defendant violated the FDCPA by, *inter alia*:

15

a.  falsely representing that the alleged debt had to be paid within thirty days to avoid foreclosure when pursuant to N.C. Gen. Stat. § 47f-3-116(f)(8), Plaintiff had until the end of the upset bid period provided for in N.C.G.S. § 45-21.27 to pay her balance and avoid foreclosure;

b.  threatening to take actions it did not intend to take or could not legally take by threatening to foreclose on a lien prior to satisfying the conditions precedent (itemization of assessments and fees) set forth in N.C. Gen. Stat. § 47f-3-116(f)(5) and 45-21.16(c)(5a).

c.  threatening to take actions it did not intended to take or could not legally take by threatening to foreclose on a lien that was more than three years old in violation of N.C.G.S. § 47f-3-116(c);

d.  threatening to take, and taking, actions it could not lawfully take;

e.  collecting and threatening to collect unlawful and unauthorized costs and attorneys' fees;

f.  collecting or attempting to collect debt by means of unfair threats, coercions, or attempts to coerce, including by collecting or attempting to collect debt by threatening to take action not permitted by law;

g.  threatening to take and taking actions not permitted by law, including, *inter alia*, threatening to assess and collect unauthorized and unlawful costs and attorneys' fees without a legal justification;

h.  threatening to take actions it did not intend to take or could not legally take by threatening to foreclose on a lien that was more than three years old in violation of N.C.G.S. § 47f-3-116(c).

16

i. collecting or attempting to collect a debt by means of fraudulent, deceptive, and/or misleading representations, including, *inter alia*, through the use of the Notice of Intent;

j. collecting or attempting to collect from Plaintiff and members of the proposed Classes a charge, fee or expense incidental to the principal debt that was legally prohibited.

96. Defendant's actions in violation of the FDCPA were willful.

97. As a result of Defendants unlawful attempts to collect debt, Plaintiff and the FDCPA Sub-Class Members are entitled to actual and statutory damages, as well as their reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
(Violations of the North Carolina Collection Agency Act, N.C.G.S. § 58-70, *et seq.*)

98. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

99. Defendant is a "debt collection agency" as defined by the North Carolina Collection Agency Act ("NCCAA"), N.C.G.S. § 58-70-15.

100. Plaintiff and the North Carolina Class are "Consumers" as that term is defined by N.C.G.S. § 58-70-90.

101. Defendant violated the NCCAA by, *inter alia*:

a. falsely representing that the alleged debt had to be paid within thirty days to avoid foreclosure when pursuant to N.C. Gen. Stat. § 47f-3-116(f)(8), Plaintiff had until the end of the upset bid period provided for in N.C. Gen. Stat. § 45-21.27 to pay her balance and avoid foreclosure;

17

b. threatening to take actions it did not intend to take or could not legally take by threatening to foreclose on a lien prior to satisfying the conditions precedent (itemization of assessments and fees) set forth in N.C. Gen. Stat. § 47f-3-116(f)(5) and 45-21.16(c)(5a).

c. threatening to take actions it did not intended to take or could not legally take by threatening to foreclose on a lien that was more than three years old in violation of N.C.G.S. § 47f-3-116(c);

d. threatening to take, and taking, actions it could not lawfully take;

e. collecting and threatening to collect unlawful and unauthorized costs and attorneys' fees;

f. collecting or attempting to collect debt by means of unfair threats, coercions, or attempts to coerce, including by collecting or attempting to collect debt by threatening to take action not permitted by law;

g. threatening to take and taking actions not permitted by law, including, *inter alia*, threatening to assess and collect unauthorized and unlawful costs and attorneys' fees without a legal justification;

h. threatening to take actions it did not intend to take or could not legally take by threatening to foreclose on a lien that was more than three years old in violation of N.C.G.S. § 47f-3-116(c).

i. collecting or attempting to collect a debt by means of fraudulent, deceptive, and/or misleading representations, including, *inter alia*, through the use of the Notice of Intent;

18

      j.   collecting or attempting to collect from Plaintiff and members of the proposed

Classes a charge, fee or expense incidental to the principal debt that was legally

prohibited.

102. Defendant's actions in violation of the NCCAA were willful.

103. Plaintiff and each member of the proposed Classes were injured by Defendant's

actions and are entitled to damages to be established at trial as well as statutory damages in an

amount ranging from $500.00 to $4,000.00 for each separate violation of the NCCAA.

### THIRD CAUSE OF ACTION (*in the alternative*)
(Violations of the North Carolina Debt Collection Act, N.C.G.S. § 75-50, *et seq.*)

104. The foregoing allegations are hereby reincorporated by reference as if fully restated

herein.

105. If Defendant is not a collection agency pursuant to the NCCAA, Defendant is a

"debt collector" as defined by the NCDCA, N.C.G.S. § 75-50.

106. Plaintiff and the North Carolina Class are "consumers" as that term is defined by

N.C.G.S. § 75-50.

107. Defendant violated the NCDCA by, *inter alia*:

      a.   falsely representing that the alleged debt had to be paid within thirty days to avoid

foreclosure when pursuant to N.C. Gen. Stat. § 47f-3-116(f)(8), Plaintiff had until

the end of the upset bid period provided for in N.C.G.S. § 45-21.27 to satisfy the

lien;

      b.   threatening to take actions it did not intend to take or could not legally take by

threatening to foreclose on a lien prior to satisfying the conditions precedent

(itemization of assessments and fees) set forth in N.C. Gen. Stat. § 47f-3-116(f)(5)

and 45-21.16(c)(5a).

19

c. by collecting and threatening to collect unlawful and unauthorized costs and attorneys' fees;

d. by collecting or attempting to collect debt by means of unfair threats, coercions, or attempts to coerce, including by collecting or attempting to collect debt by threatening to take action not permitted by law;

e. by threatening to take and taking actions not permitted by law, including, *inter alia*, threatening to assess and collect unauthorized and unlawful costs and attorneys' fees;

f. by collecting or attempting to collect a debt by means of fraudulent, deceptive, and/or misleading representations, including, *inter alia*, through the use of the Notice of Intent;

g. by collecting or attempting to collect from Plaintiff and members of the proposed Classes a charge, fee or expense incidental to the principal debt that was legally prohibited.

108. Defendant's actions in violation of the NCDCA were willful.

109. Plaintiff and each member of the proposed classes were injured by Defendant's actions and are entitled to damages to be established at trial as well as statutory damages per violation in an amount ranging from $500.00 to $4,000.00 for each violation of the NCDCA.

<u>**FOURTH CAUSE OF ACTION**</u>
(Violations of the Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75-1.1 *et seq.*)

110. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

111. The actions, practices, and conduct displayed by Defendant are in and affecting commerce as defined under the UDTPA.

20

112. Defendant has violated the UDTPA by utilizing unfair, coercive, false, deceptive, and misleading practices, actions and representations in connection with its sending of its Collection Letters.

113. Defendant's Letter of Intent possessed the tendency to mislead or created likelihood of deception, in violation of N.C.G.S. § 75-1.1.

114. The fees Defendant charged Plaintiff and the proposed classes are unfair in that they are so unreasonably high and arbitrary that they are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

115. Upon information and belief, Defendant's unfair and deceptive conduct, representations, and omissions, as herein alleged, are all pursuant to policies, practices, and procedures created, adopted, and implemented for all of its collection business in North Carolina.

116. Upon information and belief, Plaintiff and others similarly situated reasonably relied upon the misrepresentations and omissions related to the assessed amounts and false deadlines which delayed their discovery of proximately caused injuries.

117. The forgoing allegations constitute unfair or deceptive acts or practices in or affecting commerce in violation of N.C.G.S. § 75-1.1.

118. The foregoing unfair or deceptive acts or practices in or affecting commerce directly and proximately caused Plaintiff and all others similarly situated anxiety, stress, anger, frustration, mental anguish, and other actual damages to be proved at trial.

119. As a direct and proximate result of Defendant's unfair and/or deceptive acts and practices, in or affecting commerce, Plaintiff and all others similarly situated are entitled to recover treble damages pursuant to N.C.G.S. § 75-16, or to recover punitive damages pursuant to N.C.G.S. § 1D-1 *et seq.*

21

120.     Plaintiff and all others similarly situated are also entitled to recover their reasonable attorneys' fees and costs as provided for in N.C.G.S. § 75-16.1.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

121.     The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

122.     Plaintiff and proposed class members have paid to Defendant amounts in excess of their legal obligations.

123.     Defendant has wrongfully benefited and been unjustly enriched from collecting these excessive costs and fees.

124.     Defendant has received a measurable benefit from the collection of these fees and knowingly accepted that benefit.

125.     Plaintiff and others similarly situated did not pay the excessive collection fees gratuitously.

126.     As a result of Defendant's unjust enrichment by collecting excessive fees, Plaintiff and the proposed classes are entitled to an amount to be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Kimberli Lewis and all others similarly situated, pray the Court for judgment as set forth below:

1.   Certifying this action as a class action as provided by Rule 23 of the North Carolina Rules of Civil Procedure, appointing Plaintiff as a class representative, and appointing the undersigned as Class Counsel;

2.   Adjudging that Defendant violated the FDCPA, and awarding Plaintiff and members of the FDCPA Sub-Class actual and statutory damages pursuant to the FDCPA;

22

3.  Adjudging that Defendant violated the NCCAA, or in the alternative the NCDCA sections as enumerated above, and awarding Plaintiff and proposed class members actual and statutory damages, along with their attorneys' fees;

5.  Adjudging that Defendant has been unjustly enriched and awarding Plaintiff and proposed class members actual damages;

7. Awarding Plaintiff and all Class Members their reasonable attorneys' fees and costs incurred pursuant to the FDCPA, NCDCA, NCCAA and UDTPA;

8.  That the compensatory damages of Plaintiff and the Class Members be trebled by the Court pursuant to Chapter 75 of the North Carolina General Statutes;

10. That the costs of this action be taxed to Defendant;

11. For a trial by jury on all issues so triable; and,

12. For such other and further relief as the Court deems just and proper.


Respectfully submitted, this the 11th day of April, 2022.

**MAGINNIS HOWARD**

Edward H. Maginnis
N.C. State Bar No. 39317
Karl S. Gwaltney
N.C. State Bar No. 45118
Asa C. Edwards
N.C. State Bar No. 46000
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Telephone: 919-526-0450
Fax: 919-882-8763
emaginnis@maginnishoward.com
kgwaltney@maginnishoward.com
aedwards@maginnishoward.com

23

Re:     Creditor : Abington Ridge HOA
        Property : 6012 HERNTON ROAD, RALEIGH, NC 27610

**NORTH CAROLINA LICENSE NO. 11324G**

Dear Kimberli Lewis and Donnell Daniels:

Equity Experts represents the above referenced Creditor and is writing to provide you with Notice of the Creditor's intent to foreclose on outstanding liens for assessments against the above referenced property. The lien(s) upon which the Creditor is foreclosing are as follows:

1.    Date of Lien:  11-01-2019
      Instrument No: 19-M-5050
      Amount Secured: $2810.00
      Total Owed to Creditor: $6339.00

To satisfy the lien(s) you must pay all amounts due to the Creditor by 09-25-2021. Y may have outstanding balances on your account not reflected in the above referenced liens. obtain the current payoff or to make payment arrangements, please contact the Creditor's ag Equity Experts, at (855) 321-3973. Failure to satisfy the debt secured by the lien(s) on or b the date stated herein may result in the sale of the Property.

You have the right to bring a court action in the circuit court of the county or city the Property is located to assert the nonexistence of the debt or any other defense you ma to the sale. This office does not accept cash payments.

This is an attempt to collect a debt and any information obtained may be used purpose.

Sincerely,

Equity Experts



STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
CASE NO. 22-CVS-4772

KIMBERLI LEWIS on Behalf of )
Herself and Others Similarly Situated, )
)
Plaintiff, )
)
v. )
)
EQUITYEXPERTS.ORG, LLC, )
)
Defendant. )
)

**PLAINTIFF'S FIRST REQUESTS FOR
PRODUCTION TO DEFENDANT
EQUITYEXPERTS.ORG, LLC**

Pursuant to Rules 26 and 34 of the North Carolina Rules of Civil Procedure, Plaintiff Kimberli Lewis, on Behalf of Herself and Others Similarly Situated (hereinafter "Plaintiff") hereby serves the following First Requests for Production upon Defendant EquityExperts.org, LLC (hereinafter "Defendant").

## DEFINITIONS

1. The term "document" or "documents" is used in its broadest sense and includes "documents," and any other materials within the scope of Rules 26 and 34 of the North Carolina Rules of Civil Procedure, any papers, or writings including drafts, and any mechanical or electronic recordings or records of any kind in your possession, custody and control, or of which you have knowledge, wherever located, whether an original or a copy, including agreements, financial statements, invoices, minutes, memoranda, e-mails, notes, records, medical or scientific articles or papers, interoffice communications, tapes or other records, telegrams, letters, photographs, drawings, data, reports, printed matter, publications, offers, bids, proposals or statements. Any copy containing thereon or attached thereto any alterations, notes, comments, or other materials not included in the originals or copies referred to in the preceding sentence, shall be deemed a separate document within the foregoing definition.

2. "ESI" or "Electronically Stored Information," includes any and all electronically stored information - including writings, text, drawings, grafts, charts, photographs, sound recordings, images, and other data or data compilations - stored in any medium from which information can be obtained either directly, or if necessary, after translation by the responding party into a reasonably usable form. ESI includes, by way of example only, computer programs (whether private, commercial or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts and/or transmittals, output resulting from the use of any software program, including word processing Documents,

spreadsheets, database files, charts, graphs and outlines, electronic mail, operating systems, source code of all types, peripheral drivers, PIF files, batch files, ASCII files, and any and all miscellaneous files and/or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, deleted file or file fragment. Electronic data includes any and all items stored on computer memories, snap drives, hard disks, floppy disks, CDROMs, removable media such as Zip disks, Jazz cartridges, Bernoulli Boxes and their equivalent, magnetic tapes of all types, microfiche, punched cards, punched tape, computer chips, including, but not limited to EPROM, PROM, RAM and ROM, on or in any other vehicle for digital data storage and/or transmittal. The term electronic data also includes the file, folder tabs and/or containers and labels appended to, or associated with, any physical storage device associated with each original and/or copy.

3. The term "communication" means any inquiry, discussion, conversation, negotiation, agreement, undertaking, meeting, telephone conversation, letter, note, email, telegram, telex, facsimile, or other form of expression, written, electronic, or oral.

4. As used herein, the word "correspondence" includes all letters, telegrams, notices, messages, emails, or other written communications or memoranda, or other records of conversations, meetings, conferences, or other oral communications.

5. For any discovery request asking the Defendant to "identify" a document, Defendant should set forth the date of the document; the names and present addresses of the person or persons who prepared the document and of the signers and addressers of the document; the name of the employer or principal whom the signers, addressers, and preparers were representing; the present location of the document; the name and current business and home address of the present custodians of the original document, and any copies of it; a summary of the contents of the documents (or citation to its bates number(s), if applicable); and, if the original document was destroyed, the date and reason for or circumstances under which it was destroyed.

6. For any discovery request asking the Defendant to "identify" a conversation, Defendant should set forth who was present during the conversation; the date, time, and place of the conversation; and a detailed description of the subject matter of the conversation.

7. The terms "referring to", "relating to", "relate to", "otherwise evidencing" or "concerning" shall mean, in any way, directly or indirectly concern, reflect, refer to, constitute, contain, evidence, amend, confirm, endorse, represent, support, qualify, terminate, revoke, negate, or connect in any way, logically or factually, with the matter described in this request.

8. As used herein, the singular includes the plural; the plural includes the singular; the masculine includes the feminine; and the feminine includes the masculine.

9. The correctives "and" and "or" shall be construed either disjunctively or conjunctively.

10. The term "all" shall be construed to include the word "every" and vice versa.

2

11. The term "any" shall be construed to include the word "all" and vice versa.

12. The term "North Carolina Class" or "Class Member" refers to each of the three putative classes identified in Plaintiff's Complaint.

13. The term "Defendant," as well as Defendant's full or abbreviated name or a pronoun referring to Defendant means EquityExperts.org, LLC, and all agents, representatives, owners, employees, attorneys, subsidiary entities, or other persons acting for or on behalf of Defendant.

14. All terms defined in Plaintiff's Complaint shall have the same meaning as set forth herein.

15. "Relevant Time Period" shall refer to the date four years prior to the date in which Plaintiff's Complaint was filed through the date on which you serve your responses hereto.

## INSTRUCTIONS

1. Should a Request call for Defendant to produce a document which would otherwise be responsive except for the fact that Defendant claims such document as privileged, Defendant shall so state and identify the document to a degree sufficient to allow the Judge to rule, if necessary, on such claim of privilege. Defendant shall specify the privilege claimed, the type of document, the author, all known recipients, "cc's" or "bcc's" and a general description of the document's subject matter.

2. If any document requested was at one time in existence but is no longer in existence, please state for each such document:
   (a) the type of document;
   (b) the date upon which it ceased to exist;
   (c) the circumstances under which it ceased to exist;
   (d) the identity of all persons having knowledge of the circumstances under which is ceased to exist; and,
   (e) the identity of all persons having knowledge of the contents thereof.

3. Your responses to these Discovery Requests shall be set forth in full after each request. Separate responses shall be provided with respect to each request and subdivision thereof. With respect to each document produced, identify the person producing the document and the paragraph or subparagraph number of the request to which such response is made.

4. Should a Discovery Request call for Defendant to produce a document which would otherwise be responsive except for the fact that Defendant claims such document to be confidential or proprietary, **it is your obligation to timely seek and obtain an appropriate protective order** and any delay in obtaining a protective order shall not excuse you from responding to these Discovery Requests within the time provided by the North Carolina Rules of Civil Procedure.

3

## REQUEST FOR PRODUCTION

1. All documents and ESI identified or referenced in your responses to Plaintiff's Complaint.

**RESPONSE:**

2. All documents and ESI upon which you relied in responding to Plaintiff's Complaint or Plaintiff's First Set of Interrogatories.

**RESPONSE:**

3. All documents and ESI that may be utilized as grounds for any defense in this action or which you expect to offer into evidence upon the trial of this action.

**RESPONSE:**

4. A full and complete set of all documents, ESI, or screens necessary to understand abbreviations or codes used in any documents you are producing in relation to these Requests for Production.

**RESPONSE:**

5. Your full and complete log of activities and/or collection notations on Plaintiff's account ledger, including a log of telephone calls made to or received from Plaintiff.

**RESPONSE:**

6. All documents generated or received by you that refer or relate to the Plaintiff, including all billing statements or other invoices.

**RESPONSE:**

7. All correspondence and ESI sent to or received from Plaintiff.

**RESPONSE:**

4

**8.** Copies of all Notice of Intent Letters sent to Plaintiff and/or any Class Member that specifically identify the date that each Notice of Intent Letter was sent.

**RESPONSE:**

**9.** For each person who was sent a Notice of Intent Letter, produce all account notes and collection histories, including all documents identifying the specific amount of charges and payments made by each such person.

**RESPONSE:**

**10.** Copies of all correspondence and ESI sent to Plaintiff and/or any Class member that refer to the costs or attorneys' fees identified in Paragraph 77 of the Complaint.

**RESPONSE:**

**11.** For each person who was charged any of the costs or attorneys' fees identified in Paragraph 77 of the Complaint, produce all account notes and collection histories, including all documents identifying the specific amount of charges and payments made by each such person.

**RESPONSE:**

**12.** All recordings and ESI of communications between you and Plaintiff and/or any Class member about the Notice of Intent Letter.

**RESPONSE:**

**13.** All recordings and ESI of communications between you and Plaintiff and/or any Class member about the collection or attempted collection of any of the costs or attorneys' fees identified in Paragraph 77 of the Complaint.

**RESPONSE:**

**14.** All documentation and ESI upon which you will rely to support the validity and accuracy of any amounts alleged to be owed by Plaintiff during the Relevant Time Period.

**RESPONSE:**

5

**15.** All manuals, handbooks, scripts, guidelines, rules, or similar documents utilized by your employees in connection with the collection of debt from Plaintiff or any Class Member during the Relevant Time Period.

**RESPONSE:**

**16.** All contracts or agreements pursuant to which you were authorized to collect from Plaintiff or any Class Member during the Relevant Time Period, including all contracts or retainer agreements entered between you and any North Carolina homeowner's association during the Relevant Time Period.

**RESPONSE:**

**17.** All contracts or agreements with vendors, agents, or other entities involved in the collection of debt from Plaintiff or any Class Member during the Relevant Time Period.

**RESPONSE:**

**18.** All documents related to your maintenance of procedures created or adapted to avoid any violation of debt collection laws (i.e, the FDCPA, NCDCA, or NCCAA), including but not limited to, employee manuals, training materials, policies, and procedures.

**RESPONSE:**

**19.** All rules, management guidelines, operating guidelines, policies, procedures, ESI, or other documents that identify your policies for the assessment and/or collection of fees, charges, expenses, or interest on accounts placed with you for collection during the Relevant Time Period.

**RESPONSE:**

**20.** Marketing and educational materials that you provided to a homeowner's association during the Relevant Time Period.

**RESPONSE:**

6

**21.** Produce all contracts or retainer agreements with an attorney or law firm retained by Defendant to file or enforce liens during the Relevant Time Period.

**RESPONSE:**

**22.** Produce all reports, including draft reports, ESI or other documents prepared by or for the use of an expert witness in this litigation.

**RESPONSE:**

**23.** Produce all documents and ESI that any expert has reviewed in the course of forming any opinions in this litigation.

**RESPONSE:**

**24.** Produce a copy of all resumes for each expert witness you may call as a witness at trial.

**RESPONSE:**

This the ___ day of July, 2022.

MAGINNIS HOWARD

_____
Edward H. Maginnis
N.C. State Bar No. 39317
Karl S. Gwaltney
N.C. State Bar No. 45118
Asa C. Edwards
N.C. State Bar No. 46000
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Telephone: 919-526-0450
Fax: 919-882-8763
emaginnis@maginnishoward.com
kgwaltney@maginnishoward.com
aedwards@maginnishoward.com

7