IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:22-CV-00302-FL

| | |
|---|---|
| KIMBERLI LEWIS on Behalf of Herself and Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EQUITYEXPERTS.ORG, LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ALL CLAIMS, OR, IN THE ALTERNATIVE, TO STRIKE CLAIMS**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................... 1

FACTS ALLEGED IN THE COMPLAINT ................................................................................. 2

LEGAL STANDARDS .................................................................................................................. 5

I.    RULE 12(b)(6) MOTION TO DISMISS ............................................................................. 5

II.   RULE 12(f) MOTION TO STRIKE ..................................................................................... 5

ARGUMENT .................................................................................................................................. 6

I.    DEFENDANT HAS NOT IDENTIFIED ANY BASIS JUSTIFYING DISMISSAL UNDER FED. R. CIV. P. 12(b)(6) .................................................................................................. 6

    A.  Plaintiff's Claims are Not Barred by Any Operative Statute of Limitations ................................ 6

    B.  Defendant is Subject to the FDCPA and Either the NCCAA or the NCDCA ............................. 7

        1.  Legal Standard ................................................................................................................... 8

        2.  Plaintiff and Class Members are "Consumers" Under the FDCPA and NCDCA ................. 8

        3.  Assessments, Fees, and Charges are "Debt" Under the FDCPA and NCCAA/NCDCA ....... 9

        4.  Defendant is a "Debt Collector" Under the FDCPA ......................................................... 10

5. Defendant is a "Collection Agency" under the NCCAA; or, *Alternatively,* a "Debt Collector" under the NCDCA ............................................................................................................ 11

C. Plaintiff Alleged Defendant Violated the FDCPA and the NCCAA/NCDCA ........................... 12

1. The Notice of Intent is Materially False and Misleading ....................................... 12

a. The Notice of Intent is an Attempt to Collect Debt ........................................ 13

b. Deadlines in the Notice of Intent are Materially False and Deceptive ........................... 13

c. The Notice of Intent Misleadingly Lumps Attorneys' Fees and Costs in with the Principal Balance .................................................................................................... 15

2. Whether Characterized as Attorney Fees or Costs, the Charges Violate the FDCPA and NCCAA/NCDCA .................................................................................. 15

a. If the Charges are Attorney Fees, They Violate the FDCPA and NCCAA/NCDCA .... 16

b. Defendant's "Costs" are Unreasonable and Unrelated to "Actual Costs." ................... 19

3. Plaintiff's Injuries Are Proximately Caused by Defendant's Violations of the NCDCA ..... 20

D. Plaintiff Has Stated a Claim Under the UDTPA Separate and Apart from Debt Collection Violations .................................................................................................... 21

E. Defendant Has Been Unjustly Enriched at Plaintiff's Expense ................................. 23

II. DEFENDANT'S MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f) MUST BE DENIED. .................................................................................................... 25

1. Motions to Strike Class Allegations are Generally Disfavored ................................ 25

2. Plaintiff's Class Allegations are Sufficient Under Fed. R. Civ. P. 23 ...................... 25

a. Commonality is Satisfied ................................................................... 26

b. Class Treatment is Superior ............................................................... 27

CONCLUSION .................................................................................... 30

<u>**TABLE OF AUTHORITIES**</u>

<u>Cases</u>

1.  *White v. Fein, Such & Crane, LLP*,
    2015 WL 6455142 (W.D.N.Y. Oct. 26, 2015) ........................................................ 2, 16, 19

2.  *Koepplinger v. Seterus, Inc.*,
    No. 1:17CV995, 2020 WL 2063416 (M.D.N.C. Apr. 29, 2020) .................................... 2, 11

3.  *Rhue v. Rhue*,
    189 N.C. App. 299 (2008) ............................................................................................ 2, 25

4.  *Edwards v. City of Goldsboro*,
    178 F.3d 231 (4th Cir. 1999) ............................................................................................. 5

5.  *Animal Science Products, Inc. v. China Minmetals Corp.*,
    654 F.3d 462 (3d Cir. 2011) ............................................................................................... 5

6.  *Williams v. Potomac Family Dining Grp. Operating Co., LLC*,
    No. GJH-19-1780, 2019 WL 5309628 (D.Md. 2019) (unpublished) ................................... 6

7.  *Hogans v. Charter Communs., Inc.*,
    563 F. Supp 3d 464 (E.D.N.C. 2021) ........................................................................... 6, 26

8.  *Goodman v. Schlesinger*
    584 F.2d 1325 (4th Cir. 1978) ........................................................................................... 6

9.  *Goodman v. Praxair, Inc.*,
    494 F.3d 458 (4th Cir. 2007) ............................................................................................. 7

10. *Bender v. Elmore & Throop, P.C.*,
    963 F.3d 403 (4th Cir. 2020) ............................................................................................. 7

11. *Truhn v. Equityexperts.org, LLC*,
    418 F. Supp. 3d 186 (E.D. Mich. 2019) ................................................................ 8, 10, 15

12. *Reid v. Ayers*,
    531 S.E.2d 231 (N.C. App. 2000) ................................................................................... 8, 9

13. *Campbell v. Wells Fargo Bank, N.A.*,
    73 F. Supp. 3d 644 (E.D.N.C. 2014) .................................................................................. 9

14. *Davis Lake Cmty. Ass'n, Inc. v. Feldmann*,
    138 N.C. App. 292 (2000) .................................................................................................. 9

15. *Cross v. Equityexperts.org, LLC*,
    2021 WL 5279412 (11th Cir. 2021) ................................................................................ 10

16. *Obduskey v. McCarthy & Holthus LLP*,
    139 S.Ct. 1029 (2019) ...................................................................................................... 11

17. *Peebles v. Seterus, Inc.*,
    2019 WL 4464126 (E.D. Cal. 2019) ................................................................................. 11

18. *Heinz v. Carrington Mortgage Services, LLC,*
    3 F.4th1107 (8th Cir. 2021) ................................................................................... 11

19. *Simmons v. Dross Lieberman & Stone, Inc.,*
    746 S.E.2d 311 (N.C. App. 2013) ......................................................................... 12

20. *Kingston at Wakefield Homeowners Ass'n v. Castell,*
    585 Fed. Appx. 837 (4th Cir. 2014) ...................................................................... 14

21. *Furmick v. Miner,*
    154 N.C. App. 460 (2002) ..................................................................................... 17

22. *Kaymark v. Bank of Am., N.A.,*
    783 F.3d 168 (3d Cir. 2015) ................................................................................. 18

23. *Fields v. Wilber L. Firm, P.C.,*
    383 F.3d 562 (7th Cir. 2004) ................................................................................ 18

24. *Elyazidi v. SunTrust Bank,*
    780 3d 227 (4th Cir. 2015) .................................................................................... 18

25. *Nix v. McCabe Trotter & Beverly, P.C.,*
    2019 WL 5263277 (D.S.C. Oct. 23, 2018) ............................................................ 19

26. *Bull v. Asset Acceptance, LLC,*
    444 F.Supp.2d 946 (N.D. Ind. Aug. 15, 2006) ..................................................... 19

27. *Bradley v. Franklin Collection Serv., Inc.*
    739 F.3d 606 (11th Cir. 2014) .............................................................................. 19

28. *Sparks v. EquityExperts.Org, LLC,*
    936 F3d 348 (6th Cir. 2019) ................................................................................. 20

29. *Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.,*
    376 N.C. 558 (2021) (Newby, C.J., concurring) .................................................... 21

30. *McMillan v. Blue Ridge Companies, Inc.*
    379 N.C. 488 (2021) ............................................................................................. 21

31. *Thompkins v. Key Health Med. Sols., Inc.,*
    No. 1:12CV613, 2015 WL 1292228 (M.D.N.C. Mar. 23, 2015) ..................... 21, 23

32. *DirectTV, Inc. v. Cephas,*
    294 F. Supp. 2d 760 (M.D.N.C. 2003) .................................................................. 22

33. *Norman v. Loomis Fargo & Co.,*
    123 F. Supp. 2d 985 (W.D.N.C. 2000) .................................................................. 22

34. *Bolton Corp. v. T.A. Loving Co.,*
    94 N.C. App. 392 (1989) ....................................................................................... 22

35. *In re Freeway Foods of Greensboro, Inc.,*
    467 B.R. 853, 449 B.R. 871 (Bankr. M.D.N.C. 2012) ........................................... 23

iv

36. *Jones v. Am. Airlines, Inc.*,

No. 5:08-CV-236-BR, 2008 WL 9411160 (E.D.N.C. 2008) ............................................... 24

37. *Booher v. Frue*,

86 N.C. App. 390 (1987) ............................................................................................................. 24

38. *Gunnells v. Healthplan Servs.*,

348 F.3d 417 (4th Cir. 2003) ..................................................................................................... 25

39. *Brown v. Nucor*,

576 F.3d 149 (4th Cir. 2009) ..................................................................................................... 26

40. *Cerrato v. Durham Pub. Schs. Bd. of Educ.*,

No.1:16-CV-1431, 2017 WL 2983301 (M.D.N.C. 2017) ..................................................... 26

41. *Wal-Mart Stores, Inc. v. Dukes*,

564 U.S. 338 (2011) ............................................................................................................. 26, 27

42. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*,

637 F.3d 435 (4th Cir. 2011) ..................................................................................................... 27

43. *Spikings v. Cost Plus, Inc.*,

2007 U.S. Dist. Lexis 44214 (C.D. Cal. 2007) ................................................................. 28, 29

44. *Torossian v. Vitamin Shoppe Industries*,

2007 U.S. Dist. Lexis 81961 (C.D. Cal. 2007) ................................................................. 28, 29

45. *Reiter v. Sonotone Corp.*,

442 U.S. 330 (1979) ..................................................................................................................... 28

46. *Mace v. Van Ru Credit Corp.*,

109 F.3d 338 (7th Cir. 1997) ..................................................................................................... 29

47. *Tchoboian v. Parking Concepts, Inc.*,

2009 WL 2169883 (C.D. Cal. 2009) ........................................................................................ 29

48. *White v. E-Loan, Inc.*,

2006 WL 2411420 (N.D. Cal. 2006) ........................................................................................ 29

49. *Walker v. Calusa Investments, LLC*,

244 F.R.D. 502 (S.D. Ind. 2007) .............................................................................................. 29

50. *Braxton v. Farmer's Ins. Group*,

209 F.R.D. 654 (N.D. Ala. 2002) ............................................................................................. 29

51. *Mohamed v. Off Lease Only, Inc.*,

320 F.R.D. 301 (S.D. Fla. 2017) .............................................................................................. 30

Statutes

A. Fair Debt Collection Practices Act ("FDCPA"): 15 U.S.C. § 1692 *et seq.*

1. 15 U.S.C. § 1692f(1) ....................................................................................................... 2

2. 15 U.S.C. § 1692k(d) ....................................................................................................... 8

3. 15 U.S.C. § 1692a(3) .................................................................................................... 8, 9

v

4.   15 U.S.C. § 1692a(5) ............................................................................................. 8, 10

5.   15 U.S.C. § 1692a(6) ............................................................................................. 8, 10

B.   North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"): N.C.G.S. § 75-1.1 *et seq.*

1.   N.C.G.S. § 75-1.1 *et seq.* ............................................................................................ 2

2.   N.C.G.S. § 75–16.2 ...................................................................................................... 8

3.   N.C.G.S. § 75–1.1(a) .................................................................................................. 22

C.   North Carolina Collection Agency Act ("NCCAA"): N.C.G.S. § 58-70 *et seq.*

1.   N.C.G.S. § 58-70-115(2) ......................................................................................... 2, 15

2.   N.C.G.S. § 58-70-15(a) ........................................................................................... 8, 9

3.   N.C.G.S. § § 58-70-130 ............................................................................................. 30

D.   North Carolina Debt Collection Act ("NCDCA"): N.C.G.S. § 75-50 *et seq.*

1.   N.C.G.S. § 75-55(2) ...................................................................................................... 2

2.   N.C.G.S. § 75-56(b) .................................................................................................... 30

E.   North Carolina Planned Community Act ("PCA"): N.C.G.S. § 47F-1-101, *et. seq.*

1.   N.C.G.S. §47F-3-116 ........................................................................................... 1, 2, 14

2.   N.C.G.S. § 47F-3-116(b) ............................................................................................. 4

3.   N.C.G.S. § 47F-1-101, *et. seq.* ..................................................................................... 6

4.   N.C.G.S. § 47F-3-116(f)(5) ....................................................................................... 15

5.   N.C.G.S. § 45-21.16(c)(5a) ....................................................................................... 15

F.   Other Statutes

1.   N.C.G.S. § 1-52(2) ........................................................................................................ 8

2.   N.C.G.S. § 6-21.2 ........................................................................................................ 17

3.   N.C.G.S. § 45-21.16(c) .............................................................................................. 14

4.   N.C.G.S. § 45-21.17(4) .............................................................................................. 14

5.   N.C.G.S. § 45-21.27(1) .............................................................................................. 14

Rules

1.   Rule 12(b)(6) of the Federal Rules of Civil Procedure ................................................. 5, 26

2.   Rule 12(f) of the Federal Rules of Civil Procedure ..................................................... 5, 25

3.   Rule 23 of the Federal Rules of Civil Procedure ........................................... 5, 25, 26, 27

Other

*Rubenstein, 2 Newberg on Class Actions* § 4:81 (5th ed.) ..................................................... 29

Plaintiff Kimberli Lewis ("Plaintiff") hereby submits this Memorandum in Opposition to the Motion to Dismiss All Claims, or, in the Alternative, to Strike Claims (DE 16) of Defendant EquityExperts.org, LLC, ("EquityExperts" or "Defendant").

## INTRODUCTION

Defendant EquityExperts fundamentally misunderstands—or just ignores—the nature of Plaintiff's straightforward claims.

To be clear, Plaintiff neither challenges Defendant's ability to "impose costs of collection," seeks to "undo [any] contractual burdens," nor deems any contract between Defendant and the Association "void and unenforceable." (Def.'s Mem. (DE 17) pp. 1-2). Plaintiff alleges first that Defendant's "costs"—such as $6,035.00 in costs and attorneys' fees on a debt of $314.00—are illusory, grossly excessive, arbitrary, and unreasonable. (Compl. (DE 1-2) ¶ 50, 77-78). These attorneys' fees and costs are not "reasonable" as required by the Planned Communities Act ("PCA"), N.C.G.S. §47F-3-116, and have no relationship whatsoever to the cost of collecting debt. (*Id*. ¶¶ 50, 54, 77-78). Charging and collecting these unlawful "costs" violates the FDCPA and North Carolina's state unfair debt collection laws. *See e.g., White v. Fein, Such & Crane, LLP*, 2015 WL 6455142 at *5 (W.D.N.Y. Oct. 26, 2015) (To the extent "the fees sought are unreasonable, exceed the customary costs for such work, or represent work not actually performed, they are not 'permitted by law' and the attempt to collect such fees [is a] violation of [15 U.S.C. § 1692f(1)]."); N.C.G.S. § 58-70-115(2) (prohibiting "collect[ing] any interest or other charge, fee or expense incidental to the principal debt unless legally entitled…"); N.C.G.S. § 75-55(2) (same).

Nor does Plaintiff challenge Defendant's ability to send collection letters in general; in fact, notices of intent to foreclose are required under North Carolina law (though Defendant failed to meet the statutory requirements of said notice). Plaintiff argues second that Defendant's utilizes

1

a false deadline in the Notice of Intent as a means to collect the unlawful fees. (Compl. (DE 1-2) ¶¶ 95, 101, and 107) (outlining the statutory prohibitions Defendant has violated)). *See e.g., Koepplinger v. Seterus, Inc.*, No. 1:17CV995, 2020 WL 2063416, at *25 (M.D.N.C. Apr. 29, 2020), report and recommendation adopted sub nom. *Koepplinger v. Seterus, Inc.,* No. 1:17-CV-995, 2020 WL 5705915 (M.D.N.C. Aug. 26, 2020) (Defendant's misrepresentations about "the impact of a partial payment and the date by which Defendant could commence acceleration or foreclosure," violate the FDCPA and NCDCA.).

Separate and apart from its debt collection efforts, Plaintiff alleges Defendant's scheme with HOAs to extort illusory fees and costs from homeowners is an unfair and deceptive trade practice under N.C.G.S. § 75-1.1 *et seq*. (Compl. (DE 1-2) ¶¶ 110-118). *See e.g.*, *In re Freeway Foods of Greensboro*, Inc., 467 B.R. 853, 866 (Bankr. M.D.N.C. 2012). Moreover, Defendant has been unjustly enriched by receiving payment from homeowners for charges which homeowners are not lawfully responsible for or required to pay. (Compl. (DE 1-2) ¶¶ 26-27). *See Rhue v. Rhue*, 189 N.C. App. 299 (2008).

Defendant's Motion must be denied because Plaintiff has sufficiently pled class claims under 15 U.S.C. § 1692 et seq. ("FDCPA"), N.C.G.S. § 58-70 et seq. ("NCCAA"), N.C.G.S. § 75-50 et seq. ("NCDCA"), and N.C.G.S. § 75-1.1 et seq. ("UDTPA").

## FACTS ALLEGED IN THE COMPLAINT

Defendant's business consists primarily of contracting with homeowners' associations ("HOAs") to collect debts from homeowners. (Compl. (DE 1-2) ¶ 2). Plaintiff and each member of the putative classes own residential homes maintained for personal, family, household, or agricultural purposes. (*Id*. ¶ 11). These homes are uniformly subject to the covenants of their respective HOAs. (*Id*. ¶ 23). Plaintiff and each member of the putative classes were alleged to have

had debts arising out of their respective covenants, which their HOAs referred to Defendant for collections. (*Id.* ¶ 25).

After an account is referred to Defendant, Defendant proceeds to assess additional charges for "costs" and "attorneys' fees." (*Id.* ¶ 26). Defendant assesses these charges continually, sometimes multiple times per month. (*Id.*). If consumers fail to pay the ever-increasing charges assessed by Defendant, a lien is threatened and may be filed against their property. (*Id.* ¶¶ 30-33).

The Association referred Plaintiff's account to Defendant on or after February 2019. (Ex. 2 (DE 17-2)). Beginning in March 2019, Defendant repeatedly contacted Plaintiff regarding the amount allegedly owed to the Association; each time Defendant contacted Plaintiff, another charge was added to Plaintiff's account. (*Id.*). Defendants contacted Plaintiff no less than four times between March and April 2019. (*Id.*). On March 10, the day before Defendant's first contact, Plaintiff's balance was $209.00; a few weeks later, on April 29, it was $1,307.00. (*Id.*). The Association's assessments during that period totaled only $78.00. (*Id.*).

By September 2021, Defendant had charged Plaintiff nineteen times. (Compl. (DE 1-2) ¶ 48). Since March 2019, Defendant had assessed ten (10) separate "debtor outreach" charges. (Ex. 2 (DE 17-2)). Defendant's first "escalated" outreach charge totaled $350.00; three subsequent "escalated" outreach charges were $100.00 each. (*Id.*). Defendant also assessed six "extended" outreach charges at $25.00 each, for a total of $150.00. (*Id.*) Defendant's total claimed incurred costs for "debtor outreach" totaled $800.00. (*Id.*). Defendant also assessed specific charges for "dunning letter," "Lien North Carolina," and "foreclosure referral fee," totaling $4,110. (*Id.*). The "lien North Carolina" charge was accompanied by a $150.00 "attorney fee." (*Id.*).

On or about September 16, 2019, Defendant added a $395.00 charge labeled "Lien North Carolina" and $150.00 charge labeled "Attorney Fee for Jorge C." (*Id.*). Defendant did not actually

prepare or file the lien for Plaintiff's property until on or about November 1, 2019, despite having charged Plaintiff in September. (Compl. (DE 1-2) ¶ 42).

Plaintiff's September 2021 balance totaled $6,349.00. (*Id*. ¶ 50). Only $314.00 originated with the Association; the remaining $6,035.00 are fees from Defendant for their debt collection services—nearly twenty-times the amount of the original delinquency. (*Id*.).

In connection with their collection attempts, Defendant utilizes a form letter (the "Notice of Intent"). (*Id*. ¶¶ 2-4). The Notice of Intent "(1) contains a false and arbitrary deadline for payment under threat of foreclosure, creating a false sense of urgency and limits consumers' ability to evaluate and respond to the Notice of Intent; and (2) demands the payment of unlawful, grossly excessive, and arbitrary attorneys' fees and costs that grossly exceeds the amount authorized and allowed under North Carolina law." (*Id*. ¶ 4).

On or about August 26, 2021, Defendant sent Plaintiff a Notice of Intent. (Ex. 1 (DE 17-1)). In the Notice of Intent, Defendant stated that to avoid foreclosure, Plaintiff "must pay all amounts due to the Creditor by 09/25/2021," with the HOA listed as the creditor. (*Id*.). The Notice of Intent further stated the amount secured under the lien was $2,810.00, and the total amount due to the creditor was $6,339.00. (*Id*.). Defendant wrote "failure to satisfy the debt secured by the lien on or before the date stated herein may result in the sale of the Property." (*Id*.)

The deadline contained in the Notice of Intent is designed to scare consumers into paying the unlawfully inflated costs and attorneys' fees demanded by Defendant. (*Id*. ¶¶ 30-33). The Notice of Intent creates a false sense of urgency because Defendant cannot lawfully "sell the Property" upon expiration of the arbitrary deadline. (*Id*.). Plaintiff and putative class members each received at least one Notice of Intent letter during the applicable statute of limitations period with the same misleading threat of foreclosure. (*Id*. ¶ 71).

4

## LEGAL STANDARDS

## I.     RULE 12(b)(6) MOTION TO DISMISS.

A motion to dismiss pursuant to Rule 12(b)(6) should be denied unless "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). The moving party bears the burden of proving no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n. 9 (3d Cir. 2011).

## II.    RULE 12(f) MOTION TO STRIKE.

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). When viewing Rule 12(f) and Rule 23 in tandem, courts rarely make a class determination at the pleading stage. *See, e.g.*, *Williams v. Potomac Family Dining Grp. Operating Co., LLC*, No. GJH-19-1780, 2019 WL 5309628, at *5 (D.Md. 2019) (unpublished). A motion to dismiss a complaint's class allegations should be granted only if "it is clear from the face of the complaint that the plaintiff cannot meet Rule 23's requirements for certification because the plaintiff has failed to properly allege facts sufficient for a class." *Hogans v. Charter Communs., Inc.*, 563 F. Supp 3d 464, 472 (E.D.N.C. 2021); *Williams* at *5. Rather than dismiss class allegations at the pleadings stage, courts normally allow for pre-certification discovery before making a certification decision under Rule 23(c)(1). *See Goodman v. Schlesinger*, 584 F.2d 1325, 1332 (4th Cir. 1978).

**I.    DEFENDANT HAS NOT IDENTIFIED ANY BASIS JUSTIFYING DISMISSAL UNDER FED. R. CIV. P. 12(b)(6).**

As noted above, Plaintiff's claims arise out of (1) Defendant's charging and collecting grossly excessive amounts of attorneys' fees or other amounts with no relationship whatsoever to any "cost" of collection and; (2) Defendants' usage of misleading and false letters as a means to collect those unlawful fees. These allegations, if proven, constitute viable claims under the FDCPA, NCDCA/NCCAA, and UDTPA, as well as a common law claim for unjust enrichment. (Compl. (DE 1-2) ¶¶ 95, 101, 107).

Defendant provides various scattershot arguments for dismissal, which can generally be condensed as follows: (1) all claims are subject to dismissal under their respective statute of limitations (Def.'s Mem. (DE 171) p. 10-13); (2) Defendant is not subject to the PCA[1], FDCPA, NCCAA, or NCDCA (*Id.* p. 5); (3) Defendant did not violate the FDCPA, NCCAA, or NCDCA (*Id.* pp. 15-23); (4) Plaintiff's UDTPA claim is wholly subsumed by the NCCAA/NCDCA (*Id.* p. 14)); and (5) Plaintiff's unjust enrichment claim fails because there is an express contract (*Id.* pp. 15-17).

Finally, Defendant purportedly moves to strike the class allegations as being insufficient to satisfy Rule 23's commonality and superiority requirements. (*Id.* pp. 23-24).

**A.    Plaintiff's Claims are Not Barred by Any Operative Statute of Limitations.**

Defendant argues that Plaintiff's claims "appear to be barred" by the applicable statutes of limitation[2] while admitting it is "unable to determine" whether any claim is "wholly or just

---

[1] The "PCA" refers to the North Carolina Planned Community Act, N.C.G.S. § 47-1-101, *et. seq*.

[2] Plaintiff has not made a claim for breach of contract, yet Defendant argues curiously that Plaintiff's claims should be analyzed under statute of limitations case law for breach of contract. ((DE 17) pp 11-13).

partially barred by the statute of limitations." (*Id*. p. 10). This admission alone requires denial of Defendant's Motion to Dismiss. *See e.g., Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) ("the Court may dismiss claims as time barred only when it is clear from the facts and allegations on the face of the complaint...").

Defendant also argues that Plaintiff's debt collection claims are time-barred because her first cause of action may have accrued outside of the statute of limitations. (*Id*. at p. 12). Even if Plaintiff did receive Notice of Intent Letters outside of the statute of limitations, the Fourth Circuit's recent decision in *Bender v. Elmore & Throop, P.C.* confirms that later violations—like the Notice of Intent Letter[3]—trigger a new limitations period. The FDCPA never suggests "similar" violations be "grouped together and treated as a single claim" for purposes of the statute of limitations. *Bender*, 963 F.3d 403, 406 (4th Cir. 2020) ("a 'separate violation' of the FDCPA occurs 'every time' an improper communication, threat, or misrepresentation is made.").

To be clear, Plaintiff's claims are only pursued on behalf of herself and other consumers who were (a) sent the unlawful Notice of Intent, or (b) charged and illegally pursued for illegal costs or attorneys' fees *during* the FDCPA's one year statute of limitations under 15 U.S.C. § 1692k(d); the NCCAA's and unjust enrichment claims' three-year statute of limitations under N.C.G.S. § 1-52(2); and the four-year statutes of limitations for NCDCA and UDTPA claims under N.C.G.S. § 75-16.2. (*See e.g.,* Compl. (DE 1-2) ¶ 80). Plaintiff's claims as pled in the Complaint are plainly timely.

## B. **Defendant is Subject to the FDCPA and either the NCCAA or the NCDCA.**[4]

### 1. **Legal Standard.**

---

[3] August 26, 2021, Notice of Intent. (Ex. 1 (DE 17-1)).
[4] Courts interpreting the NCCAA/NCDCA look to cases interpreting the FDCPA. *See Reid v. Ayers*, 531 S.E.2d 231, 233 (N.C. App. 2000) (comparing the provisions of the NCDCA with the language of the FDCPA). Because of their similarities, Plaintiffs are collectively addressing Defendants FDCPA, NCCAA, and NCDCA arguments. ((DE 17) pp. 14-15, 23) (Defendant's third and fifth arguments).

To prevail under the FDCPA, a plaintiff must show (1) she is a "natural person obligated or allegedly obligated to pay any debt," 15 U.S.C. § 1692a(3); (2) the "debt" arises out of a transaction entered primarily for personal, family, or household purposes, 15 U.S.C. § 1692a(5); (3) the defendant is a "debt collector," within the meaning of 15 U.S.C. § 1692a(6); and (4) the defendant violated a provision of the FDCPA. *Truhn v. Equityexperts.org, LLC*, 418 F. Supp. 3d 186, 190 (E.D. Mich. 2019) (granting partial summary judgment against EquityExperts under the FDCPA).

To prevail under the NCCAA, a plaintiff must show (1) the defendant is a "collection agency"[5] and (2) the defendant engaged in conduct prohibited by the Act. N.C.G.S. § 58-70-15(a). In the alternative to claims arising under the NCCAA, Plaintiff has stated a NCDCA claim pursuant to which she must allege: (1) the purported obligation is a "debt;" (2) she is a "consumer;" and (3) Defendant is a "debt collector." *Campbell v. Wells Fargo Bank, N.A.*, 73 F. Supp. 3d 644, 649 (E.D.N.C. 2014). After satisfying these threshold requirements, a plaintiff asserting claims under the NCDCA must plausibly allege the general elements of an unfair and deceptive trade practices claim under North Carolina law: an unfair act, in or affecting commerce[6], proximately causing injury. *Id*.

**2. Plaintiff and Class Members are "Consumers" Under the FDCPA and NCDCA.**[7]

A "consumer" under the FDCPA is a natural person allegedly obligated to pay a consumer debt. 15 U.S.C. § 1692a(3). Similarly, a "consumer" under the NCDCA is "any natural person who has incurred a debt or alleged debt for personal, family, household or agricultural purposes." *Reid*

---

[5] Defined as persons "directly or indirectly engaged in soliciting, from more than one person… delinquent claims of any kind owed or due or asserted to be owed or due the solicited person and all persons directly or indirectly engaged in the asserting, enforcing or prosecuting of those claims." N.C.G.S. § 58-70-15(a).
[6] Defendant does not dispute its actions were in or affecting commerce.
[7] The NCCAA is not limited to "consumer debts." N.C.G.S. § 58-70-15(a).

*v. Ayers*, 138 N.C. App. 261, 264-265 (2000). Plaintiff has plainly alleged that she and putative class members are consumers under each statute. (Compl. (DE 1-2) ¶¶ 11-15, 23, 25, 89) (alleging Plaintiff and the putative class "are natural persons allegedly obligated to pay a consumer debt" "incurred in connection with covenants appurtenant to the houses maintained by Plaintiff and each member of the proposed class for personal, family, household, or agricultural purposes.").

### 3. Assessments, Fees, and Charges are "Debt" Under the FDCPA and NCCAA/NCDCA.

"Since [1997] nearly every court, state or federal, that has considered the issue has concluded that association dues, assessments, and rents are properly classified as debt." *Reid* at 264-265 (collecting cases). The North Carolina Court of Appeals has repeatedly held "[HOA] dues and assessments are 'debts' within the meaning of the [NCDCA]." *Davis Lake Cmty. Ass'n, Inc. v. Feldmann*, 138 N.C. App. 292, 295 (2000) (citing *Reid* at 263). Moreover, district courts across the country have specifically held that Defendant's attempts to collect association dues and assessments are subject to the FDCPA. *See e.g., Truhn* at 192; *Cross v. Equityexperts.org, LLC*, 2021 WL 5279412, at *9 (11th Cir. 2021).

Despite this clear authority, Defendant argues the assessments, fees, and charges it has attempted to collect are not "debt" under the FDCPA[8] and NCDCA[9]. However, Plaintiff plausibly alleged that she and members of the putative class owed a debt (as defined by the FDCPA at 15 U.S.C. § 1692a(5)) "incurred in connection with covenants appurtenant to the houses maintained by Plaintiff and each member of the proposed class for personal, family household or agricultural purposes," and these "alleged debts were treated as delinquent when referred to Defendant for

---

[8] "Debt," as defined by the FDCPA is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Reid* at 263.

[9] "Debt" as defined by the NCDCA is "any obligation owed or due or alleged to be owed or due from a consumer." *Reid* at 263.

collection." (Compl. (DE 1-2) ¶¶ 10-12). These allegations readily satisfy this element of the FDCPA and NCDCA.

### 4. Defendant is a "Debt Collector" Under the FDCPA.

Defendant argues it is not a "debt collector" under the FDCPA[10] "because it is the creditor that allegedly seeks to recover its own debts, in its own name," therefore it qualifies for the statutory exclusion from liability in 15 U.S.C. § 1962a(6).[11] (Def.'s Mem. (DE 17) p. 19). Although Defendant attempts to assess its purported collection costs and fees from consumers, such costs and fees are owed to Defendant by the respective HOAs, not the consumers directly. Thus, as other courts have held, Defendant acted as a debt collector under the FDCPA for the HOAs of Plaintiff and class members. *See e.g., Truhn* at 192; *Cross* at *9.

Relying on *Obduskey,* Defendant further argues it is not a "debt collector" because the Notice of Intent was sent in furtherance of a non-judicial foreclosure. (Def.'s Mem. (DE 17) p. 19). However, the facts of this case are distinguishable from *Ombudskey*—Defendant "falls within the primary definition's scope" because it is a "person … in any business the principal purpose of which is the collection of any debts..." *Obduskey v. McCarthy & Holthus LLP*, 139 S.Ct. 1029, 1031 (2019).

Plaintiff's Complaint specifically alleges "Defendant's business consists of contracting with [HOAs] to aggressively contact and attempt to collect debt." (Compl. (DE 1-2) ¶ 2). Although

---

[10] 15 U.S.C. § 1692a(6) defines a "debt collector" as " any person [using] any instrumentality of interstate commerce or the mails in any business [for the principal purpose of the collection of any debts], or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

[11] Defendant's argument that it is collecting its own debts lends credibility to the allegation that Defendant attempts to collect amounts in excess of the actual costs of collection since it apparently does not expect HOAs to ever pay those costs or fees directly.

the Notice of Intent is sent, in part, in connection with a potential non-judicial foreclosure, it is also sent for the purpose of attempting to collect debt, including purported collection costs.

The Notice of Intent does not merely communicate statutorily required notices to consumers (in fact, it fails to do so consistent with statutory requirements[12]); rather, it specifically demands payment of all amounts owed, including fees and costs that are not secured by the lien. (*Id*. ¶ 53). Courts across the country have held similar misrepresentations in notices of intent to accelerate loans are actionable under the FDCPA. *See e.g., Koepplinger v. Seterus, Inc.*, 2020 WL 2063416 (M.D.N.C. 2020) (awarding partial summary judgment under the FDCPA to the Plaintiff); *Peebles v. Seterus, Inc.*, 2019 WL 4464126 (E.D. Cal. 2019). Whether the Notice of Intent is limited to efforts to effectuate a non-judicial foreclosure or goes further to attempt to collect debt is a question for a jury under the circumstances. *Heinz v. Carrington Mortgage Services, LLC*, 3 F.4th1107, 1111 (8th Cir. 2021).

## 5. Defendant is a "Collection Agency" under the NCCAA; or, *Alternatively,* a "Debt Collector" under the NCDCA.

Defendant readily admits it is "a collection agency" under the NCCAA (Def.'s Mem. (DE 17) p. 17, n. 13), then contradictorily argues it is not a collection agency because "it is the creditor that allegedly seeks to recover its own debts, in its own name." (*Id*. p. 19). Plaintiff agrees—Defendant cannot be subject to both the NCCAA and the NCDCA; but stated these claims in the alternative to avoid such gamesmanship. *Simmons v. Dross Lieberman & Stone, Inc.*, 746 S.E.2d

---

[12] N.C.G.S. § 47F-3-116(f)(5) requires that "prior to the commencement of a nonjudicial foreclosure, the association shall give to the lot owner notice of the association's intention to commence a nonjudicial foreclosure to enforce its claim of lien." "The notice shall contain the information required in G.S. 45-21.16(c)(5a)." N.C.G.S. § 47F-3-116(f)(5). N.C.G.S. § 45-21.16(c)(5a) requires (1) notice, that, within 30 days of the date of the notice, the debtor was sent … a detailed written statement of the amount of principal, interest, and any other fees…" N.C.G.S. § 45-21.16(c)(5a). Defendant does not include this information in its Notice of Intent. (DE 17-1); (DE 1-2 ¶¶ 57, 59).

311, 314 (N.C. App. 2013) (Where a party is a collection agency, the NCCAA applies; otherwise, a party must proceed under the NCDCA.).

Ultimately, however, Plaintiff does not object to the Court dismissing Plaintiff's NCDCA claims based upon Defendant's unequivocal judicial admission—and the Court's determination—that Defendant is a "collection agency" under the NCCAA.

**C.  Plaintiff Alleged Defendant Violated the FDCPA and the NCCAA/NCDCA.**

By contending Plaintiff has failed to allege violations of the FDCPA and NCCAA/NCDCA ((DE 17) pp. 14-15), Defendant again ignores the ample allegations in Plaintiff's Complaint establishing two primary violations: (1) Defendant's Notice of Intent contains false and misleading representations regarding the deadline for payment of unspecified costs and fees under threat of foreclosure and sale of consumers' homes; and (2) the amounts assessed and collected by Defendant are unlawfully excessive, regardless of whether discovery ultimately shows the charges are (a) unreasonable attorneys' fees assessed without requisite required notice and in excess of statutory caps on attorneys' fees; or are (b) unlawfully excessive costs with no relationship to the actual cost of debt collection. Accepting these allegations as true, Plaintiff has stated claims under 15 U.S.C. § 1692e-f, ((DE 1-2) ¶93), N.C.G.S. §§ 58-70-110, 115 ((DE 1-2) ¶101d, j) and, *in the alternative*, N.C.G.S. §§ 75-54, 55 ((DE 1-2) ¶107c, g).

**1.  The Notice of Intent Is Materially False and Misleading.**

Defendant argues it cannot be liable for attempting to collect attorneys' fees and other costs allegedly allowed by the governing documents, and that its Notice of Intent contains no false, deceptive, or misleading representations, nor any means that could be objectively misleading to the least sophisticated consumer. (Def.'s Mem. (DE 17) p. 20). However, the Complaint alleges otherwise, noting the Notice of Intent: "(1) contains a false and arbitrary deadline for payment

under threat of foreclosure, [creating] a false sense of urgency and [limiting] consumers' ability to evaluate and respond to the Notice of Intent;" and (2) demands payment "of unlawful, grossly excessive, and arbitrary attorneys' fees and costs that grossly exceeds the amount authorized and allowed under North Carolina law." (Compl. (DE 1-2) ¶¶ 4, 95, 101, 107). Again, these claims, if proven, are plainly actionable.

    a.   <u>The Notice of Intent is an Attempt to Collect Debt</u>.

Defendant utilizes each Notice of Intent sent to Plaintiff and other class members as a means of collecting debt by, *inter alia*, demanding payment of debt purportedly secured by a lien on the consumer's home; demanding payment of unsecured debt, including collection costs and attorneys' fees, purportedly owed to the consumers' respective HOAs; and notifies consumers that the Notice of Intent "is an attempt to collect a debt." (Ex. 1 (DE 17-1)). The Notice of Intent represents that (1) in order "to satisfy the lien(s) you must pay all amounts due to the Creditor [within 30 days];" and (2) "failure to satisfy the debt secured by the lien(s) [within 30 days] may result in the sale of the Property." (*Id*.). Plaintiff alleges these representations are false and misstate North Carolina law. (Compl. (DE 1-2) ¶¶ 95, 101, 107).

    b.   <u>Deadlines in the Notice of Intent are Materially False and Deceptive</u>.

Contrary to the thirty-day deadline outlined in the Notice of Intent where "failure to pay may result in the sale of the property," it is <u>impossible</u> for the upset bid period to expire thirty days from the date Defendant sends its Notice of Intent.[13]

---

[13] This is true regardless of whether the PCA applies to Defendant. *See Kingston at Wakefield Homeowners Ass'n v. Castell*, 585 Fed. Appx. 837, 840 (4th Cir. 2014) ("even assuming arguendo that the [PCA] is not the exclusive vehicle by which a [HOA] can enforce a lien for unpaid assessments on a homeowner's property," the HOA's theory for lien enforcement must be consistent with the statutory procedure required by N.C.G.S. § 47F-3-116 (and the corresponding procedure detailed in the governing documents)).

Consumers may satisfy a lien and avoid the sale of their property up until the expiration of the 10-day upset bid period. N.C.G.S. 45-21.27 ("[i]f, prior to the expiration of the upset bid period …the [homeowner] satisfies the debt secured by [the lien] and pays all expenses and costs incurred in a filing and enforcing [the lien], including…advertising costs, attorneys' fees, and the trustee's commission, then the trustee shall dismiss the foreclosure action and the [HOA] shall cancel the claim of lien of record. The [homeowner] shall have all rights…to ensure the [HOA]'s satisfaction of the claim of lien.").

At least 10 days prior to commencing a nonjudicial foreclosure, Defendant would be required to serve notice of the foreclosure hearing in compliance with N.C.G.S. § 45-21.16(a). If Defendant served a notice of hearing the day after its Notice of Intent (it did not), then the earliest hearing date would be at least 11 days (but almost certainly significantly longer) after *service* of the Notice of Intent. The consumer would then have 10 days to appeal the clerk of court's decision. N.C.G.S. § 45-21.16(c). Then, Defendant would be required to serve the consumer with at least 20 days' notice of the proposed sale. N.C.G.S. § 45-21.17(4). Then, the consumer would have at least 10 additional days after the date of the proposed sale—the upset bid period–to satisfy the lien and avoid the sale. N.C.G.S. § 45-21.27(1).

Thus, even if the court did not account for the appellate period, upset bid period, time required to obtain service, or implausibility that a hearing and sale could be completed within 30 days, it is materially false to suggest that a lien could not be satisfied or that a consumer's property could be sold upon the expiration of the 30-day deadline in the Notice of Intent. *Truhn* at 192 (A misrepresentations is "material [if it tends] to give the consumer the false impression[s] that time [is] of the essence" and "severe consequences could ensue without immediate action. This is precisely the sort of pressure tactic the FDCPA prohibits.").

14

c. The Notice of Intent Misleadingly Lumps Attorneys' Fees and Costs in with the Principal Balance.

Defendant's Notice of Intent lumps attorneys' fees and costs in with the principal debt. (ECF 17-1 ("Amount Secured: $2810.00; Total Owed to Creditor: $6339.00")). Defendant's failure to itemize the attorneys' fees and costs included in those balances is misleading in violation of the FDCPA, NCDCA, and NCCAA. (Compl. (DE 1-2 ¶ 95, 101, 107). This is because "it is misleading under the FDCPA to lump an attorneys' fees charge in with the principal debt as part of an account balance in a dunning letter." *Truhn* at 191 (citing *Singer v. Pierce and Assocs. P.C.*, 383 F.3d 596, 598 (7th Cir. 2004); N.C.G.S. § 58-70-115(2).

The concealment of the amount of attorneys' fees and costs demanded in the Notice of Intent is particularly egregious because North Carolina law requires Defendant to "confirm in the notice, that, within 30 days of the notice, the [consumer] was sent…a detailed written statement of the amount of principal, interest, and any other fees..." N.C.G.S. §§ 47F-3-116(f)(5) and 45-21.16(c)(5a). Defendant's Notice of Intent includes no such confirmation. (Ex. 1 (DE 17-1)). Moreover, the Notice of Intent itself falls far short of "a detailed written statement of the amount of principal, interests, and any other fees." N.C.G.S. § 45-21.16(c)(5a). Rather, the Notice of Intent demands payment of the "Total Owed to Creditor" without identifying charges included in that amount. (Ex. 1 (DE 17-1)); (Compl. (DE 1-2) ¶ 74).

**2. Whether Characterized as Attorneys' Fees or Costs, the Charges Violate the FDCPA and NCCAA/NCDCA.**

On or about March 8, 2019, Plaintiff's account was referred to Defendant with an initial balance of $199. (Ex. 2 (DE 17-2)). The balance more than doubled three days later with the assessment of a $270 "Dunning Letter" fee. (*Id.*). By May 14, the balance exceeded $2,000 with the addition of a $650 charge for "Post Outreach Lien Enforcement." (*Id.*). On September 16,

15

Plaintiff was charged $395 for "Lien North Carolina" and $150 for "Attorney Fee for Jorge C." (Compl. (DE 1-2) ¶¶ 41-43).[14] On January 20, 2020, Defendant assessed a $3,445 "Foreclosure Referral Fee," bringing her initial $199 balance to $6,226. (*Id*.). Plaintiff paid $782 toward satisfaction of the debt, including pay-to-pay fees (e.g., fees charged simply for paying amounts owed), but could not keep up with the ever-increasing fees and costs. (*Id*.).

Defendant contends Plaintiff is without a remedy if, as alleged, the costs and attorneys' fees were unreasonable. (Def.'s Mem. (DE 17) pp. 21-22) However, a party may properly state a claim under the FDCPA against a debt collector attempting to collect fees that are "unreasonable, exceed the customary cost for such work, or represent work not actually performed." *See White v. Fein, Such & Crane, LLP*, 2015 WL 6455142 at *5 (W.D.N.Y Oct. 26, 2015).

Because Defendant unlawfully lumped the charges together, without the benefit of discovery, it is unclear which of these self-styled charges are "attorney fees," and which are simply "costs." Either way, Plaintiffs have adequately alleged a violation of the FDCPA and NCCAA/NCDCA. If the charges are attorney fees, they violate North Carolina's laws regarding notice and statutory maximums. And if they are costs; Plaintiffs have sufficiently pled the "costs" are unreasonable and unrelated to the costs of actual debt collection in violation of the FDCPA and NCCAA/NCDCA.

a. Underline If the Charges are Attorney Fees, They Violate the FDCPA and NCCAA/NCDCA.

Plaintiff cannot be liable for attorneys' fees unless they are (1) provided for by statute, and (2) reasonable. *Furmick v. Miner*, 154 N.C. App. 460, 462 (2002). The statutory basis for the attorneys' fees at issue here appears to be the PCA.[15]

---

[15] The only other potential basis for attorney fees is N.C.G.S. § 6-21.2, which caps fees at 15% of the balance owed. N.C.G.S. § 6-21.2 (a creditor or its agent attempting to enforce some "evidence of indebtedness" that compels "payment of reasonable attorneys' fees by the debtor" is construed to mean

Importantly, the PCA imposes the following limitations on the assessment of attorneys' fees:

> A [homeowner] may not be required to pay attorneys' fees and court costs until [they are] notified in writing of the [HOA's] intent to seek payment of attorneys' fees, costs, and expenses… The notice shall set out the outstanding balance due as of the date of the notice and state that the [homeowner] has 15 days from the mailing of the notice by first-class mail to pay the outstanding balance within this period, then the lot owner shall have no obligation to pay attorneys' fees, costs, or expenses… If the [homeowner] does not contest the obligation to pay or the validity of the amount due on a claim of lien after the 15-day period following notice expires, then the attorneys' fees and the trustee's commission collectively charged to the lot owner shall not exceed [$1,200.00], not including costs or expenses incurred.

N.C.G.S. § 47F-3-116(f)(12).

However, Defendant failed to comply with these statutory prerequisites prior to attempting to collect attorneys' fees. (Compl. (DE 1-2) ¶¶ 57-60; 74-8; (Ex. 1(DE 17-1)). Moreover, the charges appearing to reflect attorney fees– e.g., a $3,445.00 "Foreclosure Referral Fee[16]—are far in excess of the amounts allowed by the PCA.

Without commencing a legal action, Defendant demanded payment from Plaintiff in excess of $5,000.00 for the following plausible legal services:

- Dunning Letter ($270);
- Chain of Ownership ($50);
- Property Analysis Review ($150);
- Post Outreach Lien Enforcement ($650);
- Lien North Carolina ($395);
- Attorney Fee for Jorge C ($150); and,
- Foreclosure Referral Fee ($3,445).

(Ex. 2 (DE 17-2)).

---

15% of the outstanding balance.). It remains a question of fact whether other items in the ledger were "attorneys' fees," but the $150.00 "Attorney Fee for Jorge C" alone exceeds 15% of the original $314 balance.

[16] The Foreclosure Referral Fee is either an attorneys' fee in excess of the PCA's statutory cap, or a $3,445.00 charge for simply referring the matter to an attorney—a grossly excessive "cost." Discovery will reveal the exact violation as to this specific charge.

Defendant's violations with respect to attorneys' fees are particularly clear with respect to the September 16, 2019 charges for "Lien North Carolina" and "Attorney Fee for Jorge C," because Defendant did not actually prepare or file the lien until on or about November 1, 2019. (*Id*.); *See Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 175-76 (3d Cir. 2015) (*abrogated on other grounds* by *Obduskey*, 139 S. Ct. 1029 ("[C]ourts have interpreted agreements awarding costs for 'services performed' and 'expenses incurred' to bar collection of fees for 'not-yet-performed' services and expenses"); *White*, 2015 WL 6455142 at *5.

Defendant cites *Fields, Elyazidi, Nix,* and *Bull* for the proposition that "[a] party does not violate the FDCPA by seeking to collect attorneys' fees and other costs permitted by governing documents…" (Def.'s Mem. (DE 17) p. 20). But just as with the unlawful Notice of Intent, while those cases do affirm that a party *can* attempt to collect attorneys' fees and costs from a debtor without court approval, they do not provide safe harbor for a party attempting to collect unreasonable fees in a false and deceptive manner. *Fields v. Wilber L. Firm, P.C.,* 383 F.3d 562, 565 (7th Cir. 2004) (The plaintiff could . . . contest the reasonableness of the fees through a lawsuit."); *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 234 (2015) (limiting holding to circumstances where "the debt collector sought no more than applicable law allowed and explained via affidavit that the figure was merely an estimate of an amount counsel expected to earn in the course of the litigation…"); *Nix v. McCabe Trotter & Beverly, P.C.*, 2019 WL 5263277 (D.S.C. Oct. 23, 2018) (nonbinding decision limiting holding to circumstances where fees and costs were "permitted by covenants"); *Bull v. Asset Acceptance, LLC*, 444 F.Supp.2d 946 (N.D.Ind. Aug. 15, 2006) (nonbinding decision addressing attorneys' fees requested in a legal filing).

If Defendant claims the right to attorneys' fees under the PCA, it misrepresented its legal authority to Plaintiff and, accordingly, violated the FDCPA and the NCDCA/NCCAA. (Compl.

(DE 1-2) ¶ 74). *See White* at *5 ("[T]o the extent that the fees sought are unreasonable, exceed the customary costs for such work, or represent work not actually performed, they are not 'permitted by law' and the attempt to collect such fees would constitute [a] violation of [15 U.S.C. § 1692f(1)].").

      b.  <u>Defendant's "Costs" are Unreasonable and Unrelated to "Actual Costs."</u>

Perhaps understanding that characterizing these charges as attorneys' fees would violate the PCA, Defendant calls these charges "costs." (Def.'s Mem. (DE 17) p. 21). However, even accepting Defendant's labeling of these amounts as "costs"—which the record does not support— the charges violate the FDCPA and NCCAA/NCDCA.

Defendant acknowledges that even when "the governing documents provide for costs of collection—without limitation—there is not an unlimited ceiling to do so. Instead, where there is no limitation on costs, the parties are instead seeking to collect amounts they believe are reasonable pursuant to the contract, which constitute *actual* costs of collections." (Def.'s Mem. (DE 17) p. 21). Courts have interpreted contracts making a debtor responsible for "all costs of collection" as not authorizing percentage fees unmoored from the actual costs of collection. *See Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 609-610 (11th Cir. 2014). In other words, courts have held "costs" means "actual costs" for services performed. *Sparks v. EquityExperts.Org, LLC*, 936 F3d 348, 352 (6th Cir. 2019).

In *Sparks,* the Eleventh Circuit found it "troubling" that a debt of $220.00 grew to more than $1,000.00 "in a few months of collection efforts," but the reasonableness of the fees was not before the court. *Id.* at 354. ([The Sparks have not "argued that [Defendant]'s fees were unreasonably high. Nor have they provided substantial evidence of an understanding between [Defendant] and the [HOA] that the [HOA] would never actually have to pay the collection fees.

Had they, this might be a different case."). Here, unlike *Sparks*, Plaintiff alleges the amounts Defendant has attempted to collect are neither "actual" costs of collection nor "reasonable;" therefore this is the "different case" alluded to by the Eleventh Circuit. *Id*.

Plaintiff concedes a debt collector may collect fees and costs if permitted by the governing documents and applicable law, but that is beside the point. If the charges are costs, Defendant charged Plaintiff s more than five times the statutory maximum for attorneys to do the same work ($6,000 vs. $1,200). Plaintiff alleged the costs are "unauthorized, grossly excessive, arbitrary, unconscionable, and/or illegal," which, if proven by the evidence, violates the FDCPA and NCCAA/NCDCA (Compl. (DE 1-2) ¶¶ 95, 101, 107).

### 3. Plaintiff's Injuries Are Proximately Caused by Defendants' Violations of the NCDCA.

Finally, Defendant claims that Plaintiff has not met her burden of alleging the "proximate cause" element under the NCDCA,[17] and further argues she cannot prove "damages" for herself or on behalf of the putative class. This is incorrect.

The North Carolina Supreme Court has specifically confirmed that the NCDCA is a statute providing "specified statutory damages without requiring the plaintiff to prove actual injury." *Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 605 (2021) (Newby, C.J., concurring). Later, the Supreme Court re-affirmed this contention, confirming a class certification order on debt collection claims similar to the ones alleged in this matter:

> Plaintiffs here allege precisely the type of injury contemplated by this Court in *Forest* above: one that depends not on individualized harm, but on an informational injury and a deprivation of statutory rights. *Id*. ¶ 71; see N.C.G.S. § 75-56(b) (2021) ("Any debt collector who fails to comply with any provision of this Article with respect to any person is liable to such person in a private action ...."). As a result, the collection letters need not have caused each class member a personal, factual injury based on his or her subjective reaction to it, but only an informational injury based

---

[17] Proximate cause is not an element for Plaintiff's NCCAA claims, which Defendant admits it is subject to. (Def.'s Mem. (DE 17) p. 17, n. 13).

on alleged misrepresentations and misleading information contained in the letters, in violation of the statute.

*McMillan v. Blue Ridge Companies, Inc.*, 379 N.C. 488, 496–497 (2021).

If Defendant sends debt collection letters containing misrepresentations and misleading information—and the Complaint asserts the Notice of Intent does just that—Defendant would have violated the NCDCA or NCCAA. The proximate cause requirement is satisfied by virtue of the sent letters containing misrepresentations. (Compl. (DE 1-2) ¶¶ 55-66) ("Plaintiff read and was misled by the Notice of Intent which caused confusion, distress, anxiety, and other injury.").

**D. Plaintiff Has Stated a Claim Under the UDTPA Separate and Apart from Debt Collection Violations.**

Defendant also argues that Plaintiff's UDTPA claim is wholly subsumed by Plaintiff's unfair debt collection claims. (Def. Mem. (DE 17) p. 14-15). However, "to the extent that the alleged misconduct is outside the NCDCA, the NCDCA does not foreclose a separate UDTPA claim." *Thompkins v. Key Health Med. Sols., Inc.*, No. 1:12CV613, 2015 WL 1292228, at *4 (M.D.N.C. Mar. 23, 2015), report and recommendation adopted, No. 1:12CV613, 2015 WL 3902340 (M.D.N.C. June 24, 2015).

To state a claim under the UDTPA, Plaintiff must allege: (1) that Defendant engaged in an unfair or deceptive act or practice; (2) in or affecting commerce, (3) causing injury to the Plaintiff. *See DirectV, Inc. v. Cephas*, 294 F. Supp. 2d 760, 764 (M.D.N.C. 2003); *see also* N.C.G.S. § 75–1.1(a). Generally, an act is unfair if it "offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," and is deceptive if "it has the capacity or tendency to deceive." *Norman v. Loomis Fargo & Co.*, 123 F. Supp.2d 985, 989 (W.D.N.C. 2000). Allegations of fraud or intent are not required to establish a prima facie claim based on the UDTPA. *Bolton Corp. v. T.A. Loving Co.*, 94 N.C. App.

392, 380 S.E.2d 796, 808 (1989). In addition, the concept of "'unfairness' is broader than and includes the concept of 'deception'" and a plaintiff need not establish the act was both unfair and deceptive. *Id.*

Here, Plaintiff has alleged in detail how Defendant engaged in an unfair scheme with HOAs to extort unlawful costs and attorneys' fees from Plaintiff and putative class members:

- "Defendant's business consists of contracting with [HOAs] to aggressively contact and attempt to collect debt—including arbitrary fees imposed by Defendant—from members of the respective HOAs" (Compl. (DE 1-2) ¶ 2);

- "… Defendant colludes with HOAs to set grossly excessive and arbitrary rates to be paid by consumers with the explicit or implicit agreement that Defendant will not seek to recoup unpaid fees from the respective HOAs" (*Id.* ¶ 38);

- "[An HOA] has the right to enforce its covenants, but Defendant is abusing its authority by unfairly and deceptively coercing the payment of arbitrary and grossly excessive fees from consumers in this state." (*Id.* ¶ 39);

- "…Defendant charged all of the unsecured fees directly to Plaintiff and never sought recoupment of unpaid fees from [HOAs]." (*Id.* ¶ 54); and,

- "The foregoing unfair or deceptive acts or practices in or affecting commerce directly and proximately cause Plaintiff and all others similarly situated anxiety, stress, anger, frustration, mental anguish and other actual damages to be proved at trial." (*Id.* ¶ 118).

The foregoing allegations implicate Defendant's method and practice of colluding with HOAs to establish grossly excessive and abusive collection costs and are akin to those asserted in *In re Freeway Foods of Greensboro*, Inc., 467 B.R. 853, 866 (Bankr. M.D.N.C. 2012) (the

"Freeway Foods MTD Order")[18]. There, an individual creditor ("Walter") owned real property where a Waffle House restaurant franchise was operated by another company ("YSI"). Essentially, Walter alleged defendants "devised a scheme [using] misrepresentations and duress…to coerce her into granting rent concessions" required to maintain Waffle House as a tenant. *Id*., 467 B.R. at 866; *Freeway Foods Remand Order*, 449 B.R. at 871. The defendants argued Walter merely alleged a breach of contract, which is insufficient to support a UDTPA claim (here, EquityExperts is arguing Plaintiff's claims are solely related to debt collection), but the court disagreed finding the "breach of the lease is merely <u>the result of the larger scheme of unfair and/or deceptive acts that Walter alleges</u>." *Id.* at 867 (emphasis added); *see further, Thompkins* 2015 WL 1292228, at *3 (circumstances surrounding a loan and the collection thereof were sufficient to state a claim under both the NCDCA and the UDTPA when the allegations "arguably fall outside the scope of the NCDCA.")[19].

Because these unfair and deceptive acts and practices pertain to Defendant's business dealings—not its attempts to collect debt—Plaintiff's claims under the UDTPA are not precluded by the NCDCA or the NCCAA.

**E.  <u>Defendant Has Been Unjustly Enriched at Plaintiff's Expense</u>.**

To prevail on a theory of quantum meruit or unjust enrichment, Plaintiff "must show three elements: (1) plaintiff conferred a measurable benefit to defendant, (2) defendant knowingly and voluntarily accepted the benefit, and (3) the benefit was not given gratuitously." *Jones v. Am.*

---

[18] The facts were incorporated by reference in the Courts previous Order Denying Plaintiff's Motion to Remand. *In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 870-873 (Bankr. M.D.N.C. 2011).

[19] Moreover, in *DirectTV*, the court found DirectTV's "attempt to use the NCDCA's exclusive remedy protection as a shield against liability from the UDTPA" was barred because "any obligation due from Cephas would not be a debt under the NCDCA." *DirectTV* at 765. Here, Defendant has similarly argued that its Notice of Intent is not an attempt to collect debt subject to the NCDCA or the NCCAA. Thus, even Plaintiff's UDTPA claims predicated upon debt collection should survive so long as Defendant contends its Notice of Intent was not an attempt to collect debt under the NCDCA or the NCCAA. *Id.*

*Airlines, Inc.*, No. 5:08-CV-236-BR, 2008 WL 9411160, at *5 (E.D.N.C. 2008) (citing *Booe v. Shadrick*, 322 N.C. 567, 570 (1988)). The court has described unjust enrichment as:

> the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor. It is a general principle underlying various legal doctrines and remedies, that one person should not be permitted unjustly to enrich [themselves] at the expense of another.

*Jones* at *5–6 (internal citations omitted).

The remedy "is not aimed at compensating the plaintiff, but at forcing the defendant to disgorge benefits that it would be unjust for him to keep." *Booher v. Frue*, 86 N.C. App. 390, 393 (*quoting D. Dobbs, Law of Remedies* § 4.1, at 224 (1973)).

Plaintiff alleged that she and putative class members have conferred monetary benefits (e.g., payment of illegal costs and attorneys' fees) that Defendant knowingly accepted, and which were not provided gratuitously. (Compl. (DE 1-2) ¶¶ 122-125). Plaintiff alleged that these unlawful costs and attorneys' fees were paid by Plaintiff and putative class members and received by Defendant under circumstances that make it inequitable for Defendant to retain those amounts. (*Id*., Costs and attorneys' fees were demanded under threat of foreclosure—which Defendant had no right to do in the manner threatened). *See Rhue v. Rhue*, 189 N.C. App. 299 (2008) ("The doctrine of unjust enrichment was devised by equity to exact the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated.").

Defendant has not disputed the adequacy of the pleadings in this respect. Instead, Defendant appears to contend that, because Plaintiff has a contract with "the Association, who holds the operative contract;" her only remedy is contractual. (Def.'s Mem. (DE 17) p. 16). Simultaneously, however, Defendant states Plaintiff has not "properly pled [breach of contract],

nor can she where there is no privity of contract." (*Id*. n. 14). Plaintiff agrees with the "well-established principle that an express contract precludes an implied contract." (*Id*. p. 15). For example, Plaintiff would almost certainly be precluded from an unjust enrichment claim against the HOA for matters governed by *their* contract; but Plaintiff has not alleged—and Defendant is not contending—that a contract controls the relationship between Plaintiff and Defendant. Therefore, Plaintiff's claims for unjust enrichment against Defendant are not precluded.

## II.   DEFENDANT'S MOTION TO STRIKE PURSUANT TO FED. R. CIV. P. 12(f) MUST BE DENIED.

### 1.   Motions to Strike Class Allegations are Generally Disfavored.

The Fourth Circuit has repeatedly declared that "federal courts should 'give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and…promote judicial efficiency.'" *Gunnells v. Healthplan Servs*., 348 F.3d 417, 424 (4th Cir. 2003) (internal citation omitted). A motion to dismiss a complaint's class allegations should be granted only if "it is clear from the face of the complaint that the plaintiff cannot meet Rule 23's requirements for certification because the plaintiff has failed to properly allege facts sufficient for a class." *Hogans v. Charter Communs., Inc.*, 563 F. Supp 3d 464, 472 (E.D.N.C. 2021).

Defendant claims that, even under the low standard required at the pleading stage, Plaintiff has not properly satisfied her burden of showing commonality and superiority. (Def.'s Mem. (DE 17) pp. 23-25).

### 2.   Plaintiff's Class Allegations are Sufficient Under Fed. R. Civ. P. 23.

Rule 23 prescribes a two-part test for determining whether a putative class action should be certified. *See* Fed. R. Civ. P. 23(a) and (b). First, the plaintiff must satisfy four threshold requirements: numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a). Second,

the plaintiff must meet one of the three subsections of Rule 23(b); here, Rule 23(b)(3): predominance and superiority. Fed. R. Civ. P. 23(b)(3).

    a.  <u>Commonality is Satisfied</u>.

Commonality requires the existence of "questions of law or fact common to the class." Fed R. Civ P. 23(a)(2). Plaintiffs must "demonstrate that…class members have suffered the same injury," and that the injury can be redressed class-wide so as "to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The "threshold requirements of commonality and typicality are not high. Rule 23(a) requires only that resolution of the common questions affect all or a substantial number of the class members." *Brown v. Nucor*, 576 F.3d 149, 153 (4th Cir. 2009). Rule 23(a)(2) requires only one common question for a potential class. *Cerrato v. Durham Pub. Schs. Bd. of Educ.*, No.1:16-CV-1431, 2017 WL 2983301, at *3 (M.D.N.C. 2017) (*quoting Haywood v. Barnes,* 109 F.R.D. 568, 577 (E.D.N.C. 1986).

Defendant claims, without any basis, that commonality is inappropriate because "it would be impossible to assess whether that conduct violated the law, as alleged, without an individualized examination of each homeowners' account, their subjective reaction to the allegedly offensive behavior, and also whether any fees were 'unreasonable.'" (Def.'s Mem. (DE 17) p. 25). This contention is false.

Regarding the Notice of Intent Class, the Notice of Intent Letters are alleged to be materially identical and sent to all Notice of Intent Class Members under the same or similar circumstances.[20] (Compl. (DE 1-2) ¶¶ 30-32). The common issue here is whether Defendant's

---

[20] Defendant repeatedly attempts to expand its 12(b)(6) motion by alleging factual assertions outside of the scope of the complaint; for example, "there are variances in all of the governing documents that any

pattern, practice, and policy of collecting and/or attempting to collect debt using the Notice of Intent Letter violate the FDCPA and the NCCAA/NCDCA by threatening foreclosure without any lawful basis. Regarding the Collection and Fee Classes, the common issue is whether the threat of assessing and collecting unlawful costs and attorneys' fees constitutes a violation of the FDCPA and the NCCAA/NCDCA. The answers to these questions will form the foundation for resolution of class claims. *See Dukes* at 350 (commonality is satisfied when answers to common questions will resolve an issue "central to the validity of each…claim…in one stroke.").

Accordingly, commonality is satisfied.

b. Class Treatment is Superior.

Rule 23(b)(3) asks whether proceeding as a class action is superior to other available methods of resolution. Four factors are relevant: (a) the interests of class members individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability of concentrating the litigation of the claims in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3).

All superiority factors weigh in favor of class treatment. For the first two factors, Plaintiff's counsel is not aware of any cases against Defendant in North Carolina with similar allegations. Absent a class action, putative class members would not have effective and efficient means of representing their interests. For the third factor, it is substantially more desirable to concentrate the litigation as a class action given the uniformity of Defendant's debt collection practices in North Carolina. The duplication of effort would increase burdens and create uncertainty for all parties, and waste judicial resources. For the fourth factor, there are no unique difficulties in managing this

---

association is governed by." (DE 17) p. 24). This attempted expansion is improper. *See e.g., E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

case as a class action. The vast majority of Plaintiff's claims rest on issues of law with minimal evidentiary factual determinations, and any evidentiary factual determinations are applicable on a class-wide basis without needing individual determinations.

Rather than substantively addressing the actual factors Courts are authorized to consider, Defendant finds two uncited and unpublished district court opinions for the proposition that certain claims may not meet the superiority requirement when the defendant's liability would be enormous and completely out of proportion to any harm suffered by the plaintiff. (Def.'s Mem. (DE 17) p. 23) (citing *Spikings v. Cost Plus, Inc.*, 2007 U.S. Dist. Lexis 44214 (C.D. Cal. 2007), and *Torossian v. Vitamin Shoppe Industries*, 2007 U.S. Dist. Lexis 81961 (C.D. Cal. 2007)). This is a flawed argument.

First and foremost, the Supreme Court rejected such an assertion about the impact of class action damages. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 344-45 (1979) ("These [arguments] are not unimportant…but they are policy considerations more properly addressed to Congress than to this Court.").[21] As recognized by the leading treatise on class actions, "Rule 23's superiority prong focuses on the forms of adjudication, not their financial consequences" and "it arguably violates the judicial function for a court to supply a limit that the legislature has not." *Rubenstein, 2 Newberg on Class Actions* § 4:81 (5th ed.).

Secondly, Defendant's argument ignores ample authority holding that statutory damages and a provision for attorneys' fees does not defeat superiority.[22]

---

[21] Indeed, it is bad policy when defendants who wrong people in a systematic fashion are insulated from liability. *See Rubenstein, 2 Newberg on Class Actions* § 4:81 (5th Ed.).

[22] *See e.g., Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("True, the FDCPA allows for individual recoveries of up to $1000. But this assumes that the plaintiff will be aware of her rights, willing to subject herself to all the burdens of suing, and able to find an attorney willing to take her case."); *Tchoboian v. Parking Concepts, Inc.*, 2009 WL 2169883 at *9 (C.D. Cal. 2009) ("The Court is not convinced that [possible recovery of] attorneys' fees in addition to statutory damages of up to $1,000 will result in enforcement of the FCRA by individual actions of a scale comparable to the potential enforcement

Third, Defendant's cited cases are far from the statutory damages at issue and are altogether distinguishable on this basis alone. In *Spikings*, the defendant faced statutory penalties ranging from $340 million to $3.4 billion for merely trivial violations of the Fair and Accurate Transactions Act ("FACTA") by including "the expiration date on credit card and debit card receipts." *Spikings* 2007 U.S. Dist. LEXIS 44214 at *12-13. Moreover, the plaintiff admitted no one sustained actual damage or harm due to the alleged wrongful conduct. *Id*. at *12. *Torossian* also involved a plaintiff seeking between $22.7 million and $227 million in statutory damages for technical violations of the FACTA, even though the company's securities filings reflected only $31 million in equity and $161 million in total assets. *Torossian*, 2007 WL 7648594, at *4. Here, the damages sought are not wholly untethered from the reality of the harm suffered.

Finally, even if the statutory damages requested by Plaintiff were somehow excessive (they are not), Defendant's argument is premature. Without discovery, any argument that the potential damages outweigh the actual harm is pure speculation.[23] Moreover, this Court has the authority under the NCDCA (*see* N.C.G.S. § 75-56(b)) or the NCCAA (*see* N.C.G.S. § § 58-70-130) to set damages within the statutory range reflecting Defendant's conduct and its relationship to the class members. Thus, concerns about the statutory damages' severity are more appropriately addressed in the damages phase. *See Mohamed v. Off Lease Only, Inc*., 320 F.R.D. 301, 318 (S.D. Fla. 2017).

---

by way of class action."); *White v. E-Loan, Inc*., 2006 WL 2411420 at *9 (N.D. Cal. 2006) ("[W]ithout class actions, there is unlikely to be any meaningful enforcement of the FCRA by consumers whose rights have been violated. Moreover, given that thousands of consumers may have suffered identical injury, a class action is certainly the most efficient way to adjudicate disputes over those consumers' rights"); *Walker v. Calusa Investments, LLC*, 244 F.R.D. 502, 511 (S.D. Ind. 2007) (Noting that "many class members may be unaware of their claim. Alternatively, some of those members may not feel that it is worth the effort to file an individual suit seeking statutory damages of between $100.00 and $1000.00."); *Braxton v. Farmer's Ins. Group*, 209 F.R.D. 654, 662 (N.D. Ala. 2002), aff'd, 91 Fed. Appx. 656 (11th Cir. 2003) (quotation omitted) ("[T]he cost of investigating and trying these cases individually likely exceeds the value of any statutory and/or punitive damage award that may be due to any particular class claimant.").

[23] Even more baseless are the spurious allegations that "Plaintiff's attorneys are incentivized to instigate the litigation because they have a far greater interest and stake in certification of a class than Plaintiff or the putative class." ((DE 17) p. 24).

**CONCLUSION**

WHEREFORE, Defendant's Motion should be DENIED because each cause of action has been adequately and plausibly alleged.

Respectfully submitted, this the 2nd day of November, 2022.

MAGINNIS HOWARD

/s/ Asa C. Edwards
Edward H. Maginnis
N.C. State Bar No. 39317
Karl S. Gwaltney
N.C. State Bar No. 45118
Asa C. Edwards
N.C. State Bar No. 46000
7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Telephone: 919-526-0450
Fax: 919-882-8763
emaginnis@maginnishoward.com
kgwaltney@maginnishoward.com
aedwards@maginnishoward.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ALL CLAIMS, OR, IN THE ALTERNATIVE, TO STRIKE CLAIMS with the Clerk of Court using the CM/ECF system, which sent notification of the filing to all counsel of record.

This the 2nd day of November, 2022.

/s/ *Asa C. Edwards*
Asa C. Edwards