IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CV-302-FL

| | | |
|---|---|---|
| KIMBERLI LEWIS on behalf of herself and others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER |
| v. | ) | |
| | ) | |
| EQUITYEXPERTS.ORG, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's motion to dismiss for failure to state a claim
pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 16). The issues raised are ripe for
ruling. For the following reasons, the motion is granted in part and denied in part.

## STATEMENT OF THE CASE

Plaintiff commenced this consumer protection action against defendant in Wake County
Superior Court, April 14, 2022, asserting putative class action claims on behalf of herself and
others similarly situated, based upon allegedly improper debt collection practices by defendant in
connection with delinquent homeowners association dues payments.

Plaintiff asserts claims arising under the federal Fair Debt Collection Practices Act, 15
U.S.C. § 1692 et seq. ("FDCPA"); the North Carolina Collection Agency Act, N.C. Gen. Stat. §
58-70 et seq. ("NCCAA"); the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50 et seq.
("NCDCA"); the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq.
("UDTPA"); and common law unjust enrichment. Plaintiff seeks certification of this action as a

class action; an award of actual, statutory, and trebled damages; and an award of attorneys' fees and costs.

Defendant filed a notice of removal August 4, 2022, on the basis of federal question jurisdiction. Thereafter, defendant filed the instant motion to dismiss, relying upon the following: 1) a notice to plaintiff, dated August 26, 2021 (the "notice"); 2) a statement of plaintiff's account, dated September 20, 2021; 3) articles of incorporation and other documents related to the Abbington Ridge Community Association, Inc. (the "association");[1] 4) Wake County property ownership records. Plaintiff responded in opposition and defendant replied. The court stayed the parties' scheduling conference activities pending decision on the instant motion.

## STATEMENT OF THE FACTS

The facts alleged in support of plaintiff's claims in the complaint may be summarized as follows. Plaintiff is a citizen and resident of Wake County, North Carolina, who was the owner of a home located at 6012 Herston Road, in Raleigh, North Carolina, (the "home"), at all times relevant to plaintiff's claims. The home is "subject to the covenants and restrictions filed in the Wake County Register . . . which places the home under the management of" the association. (Compl. ¶ 34).

The association's covenants authorize it to charge homeowners quarterly assessment fees and "purport to give the [a]ssociation the ability to collect 'all costs' incurred with the collection of assessment fees, without any limitation or bounds of reasonableness of those costs." (Id. ¶ 36). Defendant is a Michigan company with an office in Wake County, North Carolina, whose "business consists of contracting with Homeowner's Associations ('HOAs') to aggressively

---

[1]     Upon the clerk's notice of deficiency that the originally filed document was illegible or improperly formatted, defendant refiled said exhibit May 5, 2023.

2

contact and attempt to collect debt – including [allegedly] arbitrary fees imposed by [d]efendant – from members of . . . HOAs." (Id. ¶ 2).

In 2019, the association "referred [plaintiff's] account to [d]efendant," with an originating balance of approximately $314.00. (Id. ¶¶ 37, 50). According to the complaint, a "contract between the [association] and [d]efendant set the rates for [d]efendant's services." (Id. ¶ 38). "From March to September 2019, [d]efendant called [p]laintiff repeatedly regarding the amount allegedly owed" to the association. (Id. ¶ 40). Each time defendant called plaintiff, it "added another charge to [plaintiff's] account." (Id.). On September 16, 2019, defendant added a $395.00 "Lien North Carolina" and $150.00 "Attorney Fee" to plaintiff's account. (Id. ¶ 41). Defendant caused a lien to be placed on plaintiff's home about November 1, 2019, stating that the secured amount owed was $2,810.00. (Id. ¶ 43).

From October 2019 to August 2021, defendant continued to place calls to plaintiff and add charges to her account. During this time, plaintiff "entered into a payment plan and made a total of $782.45 in payments on her account." (Id. ¶ 49). In January 2020, defendant added a $3,445.00 "Foreclosure Referral" fee to Plaintiff's account. This charge later was removed on August 20, 2021, however it was reinstated six days later, on August 26, 2021.

On that same date, defendant sent plaintiff the notice that is subject of plaintiff's claims in the instant case. The notice states that the "Creditor" is the association and that the "Property" is plaintiff's home. The notice is on defendant's letterhead, which provides a Michigan address and represents that it is an "association collection specialist[,]" with a North Carolina License No. 113246. (DE 17-1).[2] The text of the notice states the following:

---

[2]    Plaintiff attaches a copy of the notice to her complaint; however, defendant attaches a clearer copy in support of its motion. Therefore, the court cites to defendant's copy in the instant order.

3

Equity Experts represents the above referenced Creditor and is writing to provide you with Notice of the Creditor's intent to foreclose on outstanding liens for assessments against the above referenced property. The lien(s) upon which the Creditor is foreclosing are as follows:

1.    Date of Lien: 11/01/2019
      Instrument No: 19-M-5050
      Amount Secured: $2810.00
      Total Owed to Creditor: $6339.00

To satisfy the lien(s) you must pay all amounts due to the Creditor by 09/25/2021. You may have outstanding balances on your account not reflected in the above referenced liens. To obtain the current payoff or to make payment arrangements, please contact the Creditor's agent, Equity Experts, at (855) 321-3973. Failure to satisfy the debt secured by the lien(s) on or before the date stated herein may result in the sale of the Property.

You have the right to bring a court action in the circuit court of the county or city where the Property is located to assert the nonexistence of the debt or any other defense you may have to the sale. This office does not accept cash payments.

This is an attempt to collect a debt and any information obtained may be used for that purpose.

(DE 17-1).

According to the complaint, "[t]he ending balance reflected on [p]laintiff's account is $6,349.00, meaning only $314.00 of the statement balance is the debt originating" from the association, and the "remaining $6,035.00 are fees from [d]efendant for [its] debt collection services." (Compl. ¶ 50). In addition, the notice "included fees and/or costs that were incurred within 30 days" of the notice. (Id. ¶ 53).

Defendant did not seek "recoupment of unpaid fees" from the association. (Id. ¶ 54). Defendant also "did not send [plaintiff] a detailed accounting of what assessments and fees were included in the alleged amount due for foreclosure," nor an "itemization of fees and charges to [plaintiff]" in the notice. (Id. ¶¶ 57, 59). Defendant also did not include any other notice of "intent to seek recovery of attorneys' fees and costs." (Id. ¶ 58). The notice "caused [p]laintiff to believe

that she would lose her home if all assessments and fees were not paid within thirty days." (Id. ¶ 56).

The court addresses plaintiff's class action allegations in the analysis herein.

## COURT'S DISCUSSION

A.    Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).[3]

B.    Analysis

    1.    FDCPA

Defendant argues that plaintiff fails to allege sufficient facts to support her claim under the FDCPA. The court disagrees.

The FDCPA prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" as well as the use of "unfair or unconscionable means" of collection. 15 U.S.C. §§ 1692e, 1692f. "[W]hether a person

---

[3]    Internal citations and quotation marks are omitted from all citations unless otherwise specified.

Case 5:22-cv-00302-FL   Document 25   Filed 05/31/23   Page 5 of 15

qualifies as a debt collector . . . is ordinarily based on whether a person collects debt on behalf of others or for its own account." Henson v. Santander Consumer USA, Inc., 817 F.3d 131, 135 (4th Cir. 2016). "Whether a communication is false, misleading, or deceptive in violation of § 1692e is determined from the vantage of the least sophisticated consumer." Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 394 (4th Cir. 2014). "To violate the statute, a representation must be material, which is to say, it must be important in the sense that it could objectively affect the least sophisticated consumer's decisionmaking." Elyazidi v. SunTrust Bank, 780 F.3d 227, 234 (4th Cir. 2015).

Here, plaintiff has alleged sufficient facts to state an FDCPA claim based on the contents of the notice. First, plaintiff alleges defendant is a debt collector, because the notice states defendant is "attempt[ing] to collect a debt" on behalf of the association, which is expressly designated as the "creditor" in the notice. (DE 17-1). Second, plaintiff has alleged facts giving rise to an inference of a "false, deceptive, or misleading representation" under § 1692e, on the basis of the representation in the notice that "[f]ailure to satisfy the debt secured by the lien(s) on or before the date stated herein may result in the sale of the Property." (DE 17-1). According to the complaint, this representation was false because foreclosure could not take place within that time frame without several conditions precedent that had not been met at the time of the notice. (Compl. ¶¶ 95a.-d.). Thus, plaintiff has alleged facts permitting an inference that the least sophisticated consumer would have been misled into thinking that a completed foreclosure sale was imminent when it could not be.

In addition, plaintiff has alleged facts giving rise to an inference of "unfair or unconscionable means" of collection, under § 1692f, where defendant was attempting to collect an "amount (including any interest, fee, charge, or expense incidental to the principal obligation),"

that was not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). In particular, plaintiff alleges that "costs" sought to be collected, in amounts thousands of dollars in excess of the principal amount of the debt, are "not authorized by the" covenants of the association, nor authorized by North Carolina law. (Compl. ¶ 27). Plaintiff alleges that such costs are "without any limitation or bounds of reasonableness" as well as "excessive and arbitrary." (Id. ¶¶ 36, 38). Plaintiff also alleges such fees are unlawful because they are not tied to actual work completed. For example, plaintiff alleges that plaintiff was charged $545.00 in the notice for a "lien" in September 2019, but defendant undertook no action on a lien until November 2019. (Id. ¶ 42). In sum, plaintiff has stated a claim under the FDCPA, based upon violations of both sections 1692e and 1692f.

Defendant's arguments in favor of dismissal of this claim are unavailing. For example, defendant argues that the claim is time barred. "Under the FDCPA, claims must be brought 'within one year from the date on which the violation occurs.'" Bender v. Elmore & Throop, P.C., 963 F.3d 403, 407 (4th Cir. 2020) (quoting 15 U.S.C. § 1692k(d)). "A separate violation of the FDCPA occurs every time an improper communication, threat, or misrepresentation is made." Id. Here, the notice upon which plaintiff's claim is based was sent August 26, 2021, well within the one-year limitations period. While defendant suggests that all or part of the claim is time barred because the complaint alleges that some charges purportedly were incurred in 2019 or 2020, this is beside the point. Plaintiff does not assert her FDCPA claim based upon communications taking place in 2019 or 2020; rather, she asserts that defendant violated the FDCPA in 2021 based upon the misrepresentation in the notice, and based upon the unreasonableness of the amount sought in the notice. (See Compl. ¶¶ 33, 92, 95).

Defendant argues that it is not alleged to have acted as a "debt collector" seeking to collect a "debt" for purposes of an FDCPA claim. Plaintiff, however, sufficiently alleges that defendant was a debt collector attempting to collect a debt, because the notice states that it is an "attempt to collect a debt" on behalf of the creditor, the association. (DE 17-1); see Henson, 817 F.3d at 135 (stating that the key determinant is whether a defendant collects debt "on behalf of others"). While defendant suggests in its brief that it was "merely advancing a non-judicial foreclosure," (Def's Reply (DE 23) at 4), that is a factual assertion outside of the allegations in the complaint, which the court need not credit at this juncture.

Defendant also argues that plaintiff fails to allege a misrepresentation in the notice, because one of the conditions precedent alleged in the complaint, the "upset bid" period, in fact takes place after a foreclosure sale, not before. (Def's Reply (DE 23) at 2; see, e.g., Compl. ¶ 33). As such, defendant suggests that the representation made in the notice regarding consequences of non-payment is accurate. This argument misses the mark for two reasons. First, viewed from the perspective of the least sophisticated consumer, the notice warns of "sale of the Property," without qualification, due to failure to pay the debt due within 30 days. (DE 17-1). This is open to an interpretation that the time the "sale . . . become[s] fixed" following expiration of the upset bid period will be within 30 days, as opposed to any initial "report of sale" under the statute. N.C. Gen. Stat. § 45-21.27(a).

Second, plaintiff alleges other unsatisfied conditions precedent within the 30 day time period stated in the notice, including "a detailed accounting of the assessments and fees that are included in the alleged amount due for foreclosure pursuant to N.C. Gen. Stat. 47f-3-116(f)(5) and 45-21.16(c)(5a)." (Compl. ¶ 33a). While defendant "submits that it did provide a detailed breakdown" to plaintiff "at or near the same time as" the notice, defendant itself recognizes that

"may be a question of fact." (Def's Reply (DE 23) at 2 n. 2). A motion to dismiss is not the proper vehicle for resolving questions of fact. Dismissal of plaintiff's FDCPA claim thus is not warranted on this basis.

Defendant suggests that costs of collection that it sought through the notice are not unreasonable, and thus not "unfair or unconscionable," under § 1692f because such costs are authorized by the covenants of the association. However, the complaint alleges that "costs" in the amounts sought in the notice are "not authorized by the" covenants of the association, nor authorized by North Carolina law. (Compl. ¶ 27). While defendant seeks to have the court interpret the covenants on the instant motion, the court must construe the allegations in the complaint, and the inferences therefrom, in the light most favorable to plaintiff. See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 167 (4th Cir. 2016) (stating that "Rule 10(c) does not require a plaintiff adopt every word within the exhibits as true for purposes of pleading simply because the documents were [referenced in] the complaint to support an alleged fact"). Thus, it is not appropriate at this juncture to construe the covenants as foreclosing plaintiff's claim under § 1692f.

Moreover, although the United States Court of Appeals for the Fourth Circuit has not addressed standards for evaluating excessive costs of collection under § 1692f, other courts have recognized that the FDCPA prohibits collection of costs that exceed "actual costs of collection," or costs that are unreasonable or excessive beyond any relation to the value of the principal amount of the debt. Sparks v. EquityExperts.org, LLC, 936 F.3d 348, 352 (6th Cir. 2019). For example, the Sixth Circuit has reasoned that "the use of the term 'costs'" in an association covenant "fairly impl[ies] that the homeowner is obligated to pay only something akin to the actual costs of collection—and not any charge, unrelated to actual costs, that the Association decides to levy."

9

Id. "Otherwise, the authorization of 'costs' would be meaningless and open to abuse." Id. In addition, the court noted, it was in that case "troubling that a debt of $220 grew, because of Equity Experts' fees, to more than $1000 in a few months of collection efforts." Id. at 354. Here, plaintiff alleges that the costs sought by the notice both exceed actual costs of collection and are unreasonable and excessive, at almost twenty times the value of the principal amount of the debt owed to the association. (See, e.g., Compl. ¶¶ 36, 42, 50). Therefore, defendant's reliance on the covenants of the association at this juncture is unavailing.

Cases cited by defendant are inapposite. For example, defendant cites to Keys v. Collection Pros., Inc., No. 16 C 8452, 2018 WL 1469006, at *1 (N.D. Ill. Mar. 26, 2018), and Manopla v. Bryant, Hodge & Assocs., LLC, No. CIV.A. 13-338 JAP, 2014 WL 793555, at *8 (D.N.J. Feb. 26, 2014), for the proposition that "exact dollar amounts by their nature, are often not ascertainable at the time of the agreement" for collection between a debt collector and an association. (Def's Reply (DE 23) at 2). Neither case, however, states the quoted text. Moreover, both cases address a question of damages, not liability, the first on a motion for summary judgment and the second on a motion for default judgment. Thus, these cases are not determinative of whether plaintiff has stated a claim in this instance.

Defendant also cites to Mayhall v. Berman & Rabin, P.A., No. 4:13CV0175 AGF, 2014 WL 340215, at *1 (E.D. Mo. Jan. 30, 2014), for the proposition that where costs of collection are authorized the covenants, "a challenge to the 'reasonableness' of fees . . . is more appropriately challenged in the underlying contract or collection action." (Def's Reply (DE 23) at 5). Mayhall, however, is instructively distinguishable, where the defendant made its request for attorney's fees directly to a court in the course of a state court action. In addition, Mayhall was decided on a summary judgment standard. Here, there is no action allegedly pending involving the notice, much

less is there any allegation that defendant made a request for attorney's fees directly to a court in the course of an action. Accordingly, Mayhall is inapposite.

Upon consideration of additional arguments and citations raised in defendant's briefs concerning the FDCPA claim, the court finds them without merit. In sum, plaintiff has stated a claim for violation of the FDCPA, and defendant's motion in this part is denied.

### 2. NCCAA and NCDCA

Defendant's grounds for dismissal of plaintiff's NCCAA and NCDCA claims parallel those articulated in favor of dismissal of plaintiff's FDCPA claim. For the reasons stated by the court in analyzing plaintiff's FDCPA claim, plaintiff also has stated a claim under the NCCAA, or in the alternative, under the NCDCA. The court leaves for another day a determination of whether defendant qualifies as a collection agency or a debt collector under North Carolina law.

### 3. UDTPA

A claim under the NCCAA and the NCDCA necessarily includes the elements of a claim under the UDTPA. "In addition to proving conduct prohibited under the NCDCA, an NCDCA plaintiff must also meet the three generalized requirements for all [North Carolina] UDTPA claims: (1) an unfair act (2) in or affecting commerce (3) proximately causing injury." Ross v. F.D.I.C., 625 F.3d 808, 817 (4th Cir. 2010).

Nevertheless, plaintiff asserts a stand-alone UDTPA based upon conduct apart from that supporting the NCCAA and NCDCA. Defendant argues that said stand-alone claim must be dismissed for failure to state a claim upon which relief can be granted. The court agrees.

For purposes of a UDTPA claim, "[a] practice is unfair if it is unethical or unscrupulous." Dalton v. Camp, 353 N.C. 647, 656 (2001). "To prevail on an UDTPA claim, plaintiffs must demonstrate some type of egregious or aggravating circumstances." Champion Pro Consulting

11

Group, Inc. v. Impact Sports Football, LLC, 845 F.3d 104, 109 (4th Cir. 2016); see Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir.1998) (stating a party must allege "substantial aggravating circumstances" to support a claim under the UDTPA).

Plaintiff has not alleged sufficient facts to support a claim under the UDTPA separate from debt collection violations under the NCCAA or NCDCA. Plaintiff contends she has met the standard by alleging that "[d]efendant's business consists of contracting with [HOAs] to aggressively contact and attempt to collect debt," and that "[d]efendant colludes with HOAs to get grossly excessive and arbitrary rates to be paid by consumers with the explicit or implicit agreement that [d]efendant will not seek to recoup unpaid fees from the respective HOAs." (Pl's Mem. (DE 20) at 28) (quoting Compl. ¶¶ 2, 38).[4]

These allegations are insufficient for two reasons. First, they are conclusory and not supported by any factual allegations supporting a claim of collusion. Second, the allegations quoted above, apart from the conclusory assertion of collusion, do not go beyond facts necessary to state a claim under the FDCPA, NCCAA, or NCDCA, comprising the charging of excessive costs and fees directly to consumers. They do not independently give rise to an inference of "egregious or aggravating circumstances" supporting a stand-alone UDTPA claim. Champion Pro Consulting Group, Inc., 845 F.3d at 109. Accordingly, plaintiff's claim in this part is dismissed.

4. Unjust Enrichment

"The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefor." Krawiec v. Manly, 370 N.C. 602, 615 (2018). "In order to establish a claim for unjust enrichment, a party must have conferred a benefit

---

[4] Citations in this order specify the page number showing on the court's Case Management/Electronic Case Filing ("CM/ECF") system, and not the page number, if any showing on the face of the underlying document.

on the other party, and the benefit must not be gratuitous and it must be measurable." Id. "A claim of this type is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." Booe v. Shadrick, 322 N.C. 567, 570 (1988). Accordingly, "[i]f there is a contract between the parties the contract governs the claim and the law will not imply a contract." Id.

Plaintiff fails to state a claim for unjust enrichment. Although she asserts in her complaint that she has "paid to [d]efendant amounts in excess of their legal obligations," she alleges that she has made, in fact, only "$782.25 in payments on her account," with $6,349.00 allegedly remaining on her account. (Compl. ¶¶ 49, 122). Plaintiff also alleges that $314.00 is "debt originating" with the association. (Id. ¶ 50). Accordingly, plaintiff allegedly has made $468.25 in payments not comprising the principal amount of the debt owed, which debt is the subject of her own contract with the association. Plaintiff does not allege facts supporting an inference that actual payments of $468.25, beyond a principal amount of debt due of $314.00, after four years of collection activity, constitutes "unjust enrichment" to defendant. Krawiec, 370 N.C. at 615.

Plaintiff asserts in support of her claim that "[c]osts and attorneys' fees were demanded under threat of foreclosure—which [d]efendant had no right to do in the manner threatened." (Pl's Mem. (DE 20) at 30). This assertion in plaintiff's brief, however, is unavailing because it does not describe any amounts that were actually paid by plaintiff to defendant after the asserted improper threat of foreclosure. Indeed, plaintiff alleges in the complaint payments made in 2019 and 2020, but none after receipt of the notice in 2021. (Compl. ¶¶ 49-51). Thus plaintiff fails to allege that payments actually made to defendant constitute unjust enrichment.

In sum, plaintiff's claim for unjust enrichment fails as a matter of law. Defendant's motion in this part accordingly is granted.

13

5. Class Action Allegations

Defendant argues that plaintiff's class action allegations should be stricken on the basis that they are insufficiently plead. The court disagrees.

"At an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). According to the advisory committee notes to the rule, "it is appropriate to conduct controlled discovery . . . limited to those aspects relevant to making the certification decision on an informed basis." Fed. R. Civ. P. 23 (2003 Amendment). "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982).

The "normal practice . . . requires the district court to consider more than merely the allegations contained in the complaint in cases in which the complaint on its face does not justify dismissal of the class aspect." Goodman v. Schlesinger, 584 F.2d 1325, 1332 (4th Cir. 1978); see Gariety v. Grant Thornton, LLP, 368 F.3d 356, 366 (4th Cir. 2004) ("Before deciding whether to allow a case to proceed as a class action a judge should make whatever factual and legal inquiries are necessary under Rule 23."). Accordingly, courts in this circuit have recognized that a motion to dismiss a complaint's class allegations should be granted only "when it is clear from the face of the complaint that the plaintiff cannot and could not meet Rule 23's requirements for certification because the plaintiff has failed to properly allege facts sufficient to make out a class or could establish no facts to make out a class." Hogans v. Charter Commc'ns, Inc., 563 F. Supp. 3d 464, 483 (E.D.N.C. 2021).

14

In this case, striking or dismissing plaintiff's class action allegations is improper, where it is not clear from the complaint that she cannot and could not meet Rule 23's requirements for certification. Rule 23(b)(3) permits a class action if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here plaintiff alleges issues of fact and law predominating over individual issues, where she alleges that defendant "sent a form letter substantially identical to" the notice to putative class members who have defaulted on HOA assessment fees. (Compl. ¶ 71). She also alleges superiority, where "[u]pon information and belief, the putative class contains at least a hundred consumers and likely exceeds several thousand consumers." (Id. ¶ 82). The court leaves for another day the more "rigorous analysis" required to address issues raised by defendant in opposition to class certification. Gariety, 368 F.3d at 367.

Therefore, that part of defendant's motion in seeking to strike plaintiff's class action allegations is denied.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 16) is GRANTED IN PART and DENIED IN PART. The court DISMISSES plaintiff's UDPTA and unjust enrichment claims. Plaintiff's claims under the FDCPA, NCCAA, and NCDCA as well as class action allegations, are allowed to proceed. For those proceeding forward, defendant must serve a responsive pleading within 14 days of entry of this order.

SO ORDERED, this the 31st day of May, 2023.

LOUISE W. FLANAGAN
United States District Judge