IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CV-302-FL

| | |
|---|---|
| KIMBERLI LEWIS on behalf of herself and others similarly situated, ) ) ) | |
| Plaintiff, ) | |
| ) | ORDER |
| v. ) | |
| ) | |
| EQUITYEXPERTS.ORG, LLC, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on plaintiff's motions to certify class and for extension of time (DE 56, 73).[1] The motions have been briefed fully, and the issues raised are ripe for ruling. For the following reasons, the motion to certify class is granted in part and denied in part, and the motion for extension of time is granted on the terms set forth herein.

## STATEMENT OF THE CASE

Plaintiff commenced this consumer protection action in Wake County Superior Court, April 14, 2022, asserting putative class action claims on behalf of herself and others similarly situated, based upon allegedly improper debt collection practices by defendant in connection with delinquent homeowners association dues payments.

Plaintiff asserts claims under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"); the North Carolina Collection Agency Act, N.C. Gen. Stat. § 58-70 et seq. ("NCCAA"); and the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50 et seq.

---

[1] Also pending but not yet ripe is plaintiff's motion for leave to file amended complaint (DE 78), which will be addressed by separate order.

("NCDCA").[2] Plaintiff seeks certification of this action as a class action; an award of actual, statutory, and trebled damages; and an award of attorneys' fees and costs.

Defendant filed a notice of removal August 4, 2022, on the basis of federal question jurisdiction. Thereafter, defendant moved to dismiss all claims against it for failure to state a claim and to strike plaintiff's class allegations. The court granted in part and denied in part defendant's motion to dismiss May 31, 2023, allowing plaintiff's claims to proceed, as pertinent here, under the FDCPA, NCCAA, and NCDCA, as well as class action allegations, See Lewis v. EquityExperts.org, LLC, No. 5:22-CV-302-FL, 2023 WL 3746484, at *8 (E.D.N.C. May 31, 2023) (DE 25).

Defendant filed an answer and the court entered case management order July 18, 2023, providing a discovery deadline for August 9, 2024. The court received notice of discovery disputes February 7, 2024, and May 31, 2024, and plaintiff filed a motion to compel June 14, 2024, which notices and motion the court referred to United States Magistrate Judge Brian S. Meyers. November 6, 2024, the court granted in part and denied in part plaintiff's motion to compel, ordering defendant to produce additional materials in discovery as specified in the court's order. (See Order (DE 71) at 6-9).[3]

In the meantime, plaintiff filed the instant motion to certify class August 8, 2024, seeking certification of the following three classes pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3):

---

[2] Plaintiff also originally asserted claims under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq. ("UDTPA"), and for common law unjust enrichment, which the court dismissed for failure to state a claim in its order entered May 31, 2023. (DE 25).

[3] The court entered an amended order November 7, 2024, correcting two scrivener's errors in referencing "plaintiff" instead of "defendant." (DE 72 at nn. 5 and 7).

(1) <u>Notice of Lien Class</u>: All North Carolina homeowners, during the respective statute of limitations period, that received a Notice of Lien from EquityExperts substantially identical to the Notice of Lien delivered to Plaintiff.

(2) <u>Notice of Intent to Foreclose Class</u>: All North Carolina homeowners, during the respective statute of limitations period, that received a Notice of Intent to Foreclose from EquityExperts substantially identical to the Notice of Intent to Foreclose delivered to Plaintiff.

(3) <u>Unconscionable Collection Fee Class</u>: All North Carolina homeowners that were charged more than $1,200 in collection fees by EquityExperts during the respective statute of limitations period.

(Motion to Certify (DE 56) at 1) (hereinafter referenced as the "notice of lien" "notice of intent to foreclose" and "unconscionable collection fee" classes). Plaintiff relies upon the following in support of her motion: 1) governing documents and account statements of Abbington Ridge Homeowner's Association (the "association"); 2) notices of unpaid balance, collection charges, lien, and foreclosure sent by defendant to plaintiff; 3) law firm invoices sent to defendant; 4) defendant's homeowners' association collection agreements and fee schedules; 5) defendant's account ledgers for plaintiff and two other examples; 6) claim of lien filed against plaintiff's property; 7) defendant's "case notes" for plaintiff's account; 8) deposition testimony by plaintiff; Jacqueline Galofaro ("Galofaro"), defendant's general counsel; and Erin Frye ("Frye"), defendant's former employee; and 9) a "firm resume" for plaintiff's counsel. In opposition, defendant relies upon plaintiff's deposition testimony, a declaration by Galofaro, and exhibits comprising a statement of defendant's fees and a form hardship application. In reply, plaintiff relies upon a declaration by counsel Ian E. Vance ("Vance") and exhibits comprising summary tables based upon counsel's review of documents produced by defendant.

Upon joint motion of the parties, on September 5, 2024, the court extended the deadline for discovery to December 4, 2024, and for dispositive motions to February 19, 2025. Plaintiff filed the instant motion for extension of time November 7, 2024, seeking to extend those deadlines

to March 7, 2025, and March 21, 2025, respectively, as well as other preceding deadlines. Defendant consents to an extension of the dispositive motions deadline but not to all other extensions as detailed in the analysis herein.

Plaintiff also filed December 10, 2024, a motion for leave to file amended complaint, relying upon a proposed amended complaint and a redline showing proposed changes. December 27, 2024, the court allowed an extension of time to January 10, 2025, for defendant's response thereto.

## STATEMENT OF FACTS

For background purposes, the court summarizes the facts pertinent to the instant motion to certify based upon evidence submitted by the parties. The court sets forth additional findings, based upon the whole record, in the analysis herein.

The association's covenants authorize it to charge homeowners quarterly assessment fees and provide that "[a]ll assessments which are unpaid when due, together with interest and late charges . . . and all costs of collection, including reasonable attorney's fees, shall be a charge on the land and shall be a continuing lien upon the Lot against which such assessment is made." (Association Covenants (Pl's Ex. A. (DE 57-2)) at 1).[4] They further provide, regarding the effect of nonpayment:

---

[4]     Throughout this order, page numbers in citations refer to the page number specified by the document displayed in the court's case management /electronic case filing (CM/ECF) system, rather than the page number, if any, showing on the face of the underlying document, in the event of a discrepancy between the two, as here.

Section 8.    Effect of Nonpayment of Assessments; Remedies. An assessment not paid within ten (10) days after the due date shall incur such late charge as the Board of Directors may from time to time establish, and, if not paid within thirty (30) days after the due date, shall also bear interest from the due date at the rate of fourteen percent (14%) per annum or the highest rate allowed by law, whichever is less. The Association may bring an action at law or in equity against the Owner personally obligated to pay the same and/or foreclose the lien against the Lot for which such assessment is due. Interest, late payment charges, costs and reasonable attorney's fees of such action or foreclosure shall be added to the amount of such assessment. No Owner may waive or otherwise escape liability for the assessments provided for herein by non-use of the Common Area or by abandonment of his Lot.

(Id. at 3).

Defendant is a Michigan company that entered into collection agreements with the association between 2018 to 2021, which give it "the exclusive right to collect and receive payments on accounts that have been referred to them, including payment of its fees." (E.g. Collection Agreement (Pl's Ex. D (DE 57-5)) at 1). The association "authorizes [defendant] to charge the fee(s) listed" in the schedules copied below, "together with all costs advanced or incurred by Equity Experts to Association who will add these amounts to the account of delinquent Unit and to the Unit Owner(s)."

| STANDARD EQUITY EXPERTS COLLECTIONS FEES | |
|---|---|
| *Interest may be charged on any unpaid fees and cost, up to the maximum rate authorized by law as a cost of collection. This is separate and distinct from any interest charged on Association assessments, pursuant to their governing documents, to the delinquent owner account, which Equity Experts may collect for Association, pursuant to their authorization. | |
| Set-up & Compliance Package | $270.00, or 30% of principal balance at referral, whichever is greater. |
| Pre – Lien Notification | $ 0.00 |
| Prepare Certificate of Lien, Draft to Unit Owner and Record the Lien. | $395.00 + actual costs |
| Prepare Release of Lien, Draft to Unit Owner and Record the Release of Lien. | $100.00 + actual costs |
| Property Analysis Review | $250.00 |
| Chain of Title Verification | $50.00 |
| Stage 1 Outreach and Skip Tracing | $350.00 |
| Stage 2-4 Outreach | $100.00 per stage |
| Enforcement Evaluation and Analysis | $650-$1250.00 |
| File Maintenance | Varies by installments: $0 - $100 |
| Association Foreclosure | Varies: $1,500.00-$4,500.00 (Est.) |

(Id. at 5). These are "standard" fees that defendant charges the association and other North Carolina homeowners associations with which it enters into collection agreements. (Id.). "During

the time-frame in question, [defendant] had 79 associations that it partnered with to provide its collection services in North Carolina." (Galofaro Decl. (DE 63-1) ¶ 51).

Defendant "offers deferred-cost collections, which means that charges are incurred by an association, but they do not have to immediately pay out-of-pocket for those services – [defendant] bears all of the upfront out-of-pocket costs." (Id. ¶ 19). "[G]enerally speaking, the activities and work comprising the charges for [defendant's] work is" based upon standardized "service package[s]." (Id. ¶ 47). "When work is undertaken under any given service package, and because [defendant's] fees are flat-rate fees, the full amount of that package is charged to the Association." (Id.). "The costs to collect delinquent assessments typically do not vary based upon the total amount owed to any given association. In this context, regardless of whether an assessment is $1,000 per year or $10,000, the costs associated with collections and foreclosure are the same." (Id. ¶ 17).

Defendant's fees are charged according to a uniform, "automated process," in accordance with defendant's standard "chart of fees." (Frye Dep. (DE 57-11) at 56). Defendant also uses form collection letters and notices, with amounts and identifiers "[auto-]populated" and "auto-generated" into the letters and notices. (Id. at 82-84, 87, 89; see, e.g., Pl's Stmt. of Account (DE 57-6) at 1).

Plaintiff is a citizen and resident of Wake County, North Carolina, who has been the owner of a home located at 6012 Herston Road, in Raleigh North Carolina, subject to the covenants of the association, at all times relevant to plaintiff's claims. (See Account History Report (Pl's Ex. I (DE 57-10)) at 1). Defendant sent plaintiff a letter March 11, 2019, stating the association "transferred [her] account to [defendant] to collect a debt that they claim you owe," noting an "unpaid balance" of $469.00. (Pl's Ex. K (DE 57-12) at 1). Defendant notified plaintiff April 15,

2019, that "an additional $350.00 collection cost has been charged to the association to be added to your balance." (Pl's Ex. L (DE 57-13) at 1).

On September 16, 2019, defendant sent plaintiff a "notice of lien filing" stating as follows:

Please be advised that a lien has been initiated against the property at 6012 HERSTON ROAD on behalf of Abbington Ridge HOA, in the amount of $2810.00 to include past due assessments, late fees, interest and collection costs, as authorized and permitted by the Declaration of Covenants for Abbington Ridge HOA. In addition, a $545.00 lien filing processing fee has been added to your account.

Be aware that a lien is an encumbrance on the title of your property. Such an encumbrance may impede any sale of your property or refinancing of the mortgage. To satisfy the lien and remove this encumbrance to your property, you must remit payment in full. Payments should be made payable to EquityExperts.org, LLC, and submitted to:

**Equity Experts, 2391 Pontiac Road, Auburn Hills, MI 48326.**

(Notice of Lien (Pl's Ex. B (DE 57-3)) at 1) (hereinafter "notice of lien"). An internal "case note[]" for plaintiff's account noted, on October 29, 2019, that "lien wont' [sic] be recorded until after Oct 30." (Pl's Ex. Q (DE 57-18) at 1). A claim of lien was filed against plaintiff's property November 1, 2019, stating that the secured amount owed was $2,810.00. (Pl's Ex. P. (DE 57-17) at 1).

From October 2019 to August 2021, defendant continued to place calls to plaintiff and add charges to her account. (See Statement of Account (Pl's Ex. E. (DE 57-6)) at 2-3). During this time, plaintiff entered into a payment plan and made a total of $782.45 in payments on her account. (See id.) In January 2020, defendant added a $3,445.00 "Foreclosure Referral" fee to Plaintiff's account. (Id. at 3). This charge later was removed on August 20, 2021, however it was reinstated six days later, on August 26, 2021.

On that same date, defendant sent plaintiff a notice of intent to foreclose, providing as follows:

7

Equity Experts represents the above referenced Creditor and is writing to provide you with Notice of the Creditor's intent to foreclose on outstanding liens for assessments against the above referenced property. The lien(s) upon which the Creditor is foreclosing are as follows:

1.  Date of Lien: 11/01/2019
    Instrument No: 19-M-5050
    Amount Secured: $2810.00
    Total Owed to Creditor: $6339.00

To satisfy the lien(s) you must pay all amounts due to the Creditor by 09/25/2021. You may have outstanding balances on your account not reflected in the above referenced liens. To obtain the current payoff or to make payment arrangements, please contact the Creditor's agent, Equity Experts, at (855) 321-3973. Failure to satisfy the debt secured by the lien(s) on or before the date stated herein may result in the sale of the Property.

You have the right to bring a court action in the circuit court of the county or city where the Property is located to assert the nonexistence of the debt or any other defense you may have to the sale. This office does not accept cash payments.

This is an attempt to collect a debt and any information obtained may be used for that purpose.

(Notice of Intent to Foreclose (Pl's Ex. R (DE 57-19) at 1) (hereinafter "notice of intent to foreclose"). As of July 7, 2022, accrued charges on plaintiff's account with defendant totaled $7,463.25, minus payments made of $3,782.25, leaving the balance due in the amount of $3,681.00. (See Statement of Account (Pl's Ex. E. (DE 57-6)) at 6).

Other homeowners with delinquent homeowners association fees referred to defendant for collection were subject to similar charges. For example, one was charged $495 lien fee, as well as additional fees thereafter, prior to making a payment to defendant for $1,230.89, then charged a $1445 foreclosure referral fee and additional fees, prior to making a final payment of $2,464.83. (Ellerbee Creek Preserve, Pl's File 9860 (Pl's Ex. N (DE 57-15) at 1; see Fields Homeowners Association, Pl's File 9939 (Pl's Ex. N (DE 57-15) at 2)). Based upon review of all of defendant's account ledgers for North Carolina homeowners, plaintiff has identified 249 instances, where defendant sent to a North Carolina homeowner a form notice of lien with a $395 lien charge,

substantially similar to the notice of lien sent to plaintiff, when the filing of the lien postdated the letter. (Pl's Ex. A-1 (DE 70-1) at 4; see Vance Decl. (DE 70-1) ¶ 8). Plaintiff has identified 168 instances where defendant sent to a North Carolina homeowner a form notice of intent to foreclose, substantially similar to the notice sent to plaintiff. (Pl's Ex. A-2 (DE 70-1) at 10). Finally, plaintiff has identified 213 North Carolina homeowners who paid an amount to defendant in excess of $1,200.00 to defendant.

## COURT'S DISCUSSION

A.     Motion to Certify

　　　1.     Certification Standard

Federal Rule of Civil Procedure 23(a) sets forth four "prerequisites" of a class action:

(1) the class is so numerous that joinder of all members is impracticable ["numerosity"];

(2) there are questions of law or fact common to the class ["commonality"];

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ["typicality"]; and

(4) the representative parties will fairly and adequately protect the interests of the class ["adequacy"].

Fed. R. Civ. P. 23(a); see Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011) (labeling the Rule's four requirements as "numerosity, commonality, typicality, and adequate representation"). "Additionally, the class action must fall within one of the three categories enumerated in Rule 23(b), with certification being appropriate under Rule 23(b)(3) when '(1) common questions of law or fact predominate over any questions affecting only individual class members; and (2) proceeding as a class is superior to other available methods of litigation.'" Career Counseling,

9

Inc. v. AmeriFactors Fin. Grp., LLC, 91 F.4th 202, 206 (4th Cir. 2024) (quoting Fed. R. Civ. P. 23(b)(3)).[5] "In other words, Rule 23(b)(3) requires both 'predominance' and 'superiority.'" Id.

"A party seeking class certification must affirmatively demonstrate [her] compliance with the Rule—that is, [s]he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact," typicality of claims, and adequacy of representation. Wal-Mart Stores, Inc., 564 U.S. at 350. "It is the plaintiffs' burden to demonstrate compliance with Rule 23." EQT Prod. Co. v. Adair, 764 F.3d 347, 357 (4th Cir. 2014). "[C]ertification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Wal-Mart Stores, Inc., 564 U.S. at 350-351. "Rule 23 does not set forth a mere pleading standard," and "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." Id. at 350.

"[I]n a class certification analysis, the court determines whether the Rule 23 requirements have been satisfied without considering whether the proposed class is likely to prevail on the merits." Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co., 95 F.4th 181, 188 (4th Cir. 2024). At the same time, "[s]ince the requirements of Rule 23 are often enmeshed in the factual and legal issues comprising the plaintiffs' cause of action, the district court must rigorously examine the core issues of the case at the certification stage." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 654 (4th Cir. 2019). "Although Rule 23 does not give district courts a license to engage in free-ranging merits inquiries at the certification stage, a court should consider merits questions to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." EQT Prod. Co., 764 F.3d at 358.

---

[5] Internal quotation marks and citations are omitted from citations in this order unless otherwise specified.

2.      Analysis

a.      Commonality and Predominance

"Rule 23(b)(3)'s predominance requirement is necessarily intertwined with Rule 23(a)'s commonality requirement." Stafford v. Bojangles' Restaurants, Inc, ___ F.4th ___, 2024 WL 5131108, at *4 (4th Cir. 2024). To meet these requirements, "all class members' claims must depend upon a common contention that is capable of classwide resolution." G.T. v. Bd. of Educ. of Cnty. of Kanawha, 117 F.4th 193, 202 (4th Cir. 2024). The "types of common questions [that] may be sufficient" are those that "generate common answers apt to drive the resolution of the [defendant's] liability." Peters v. Aetna Inc., 2 F.4th 199, 243 (4th Cir. 2021). "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016). "[D]etermination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc., 564 U.S. at 350.

By contrast, "[d]issimilarities within the proposed class have the potential to impede the generation of common answers." G.T., 117 F.4th at 202. An individual question is one where "members of a proposed class will need to present evidence that varies from member to member." Tyson Foods, Inc., 577 U.S. at 453. "[I]f common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied." Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 427–28 (4th Cir. 2003). In such case, "the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." Tyson Foods, Inc., 577 U.S. at 453.

11

Thus, "[t]he application of Rule 23 often turns on the cause of action" and the class action requirements are "inextricably linked with the elements of a particular claim." Krakauer, 925 F.3d at 655. "Efficient and manageable classes require common proof, and the availability of such proof turns on what exactly needs to be proven." Id. The court "therefore begin[s] [its] analysis by looking to the particular cause of action created by the [FDCPA]," in the context of the related commonality and predominance requirements of Rule 23. Id.

Here, plaintiff seeks to advance class claims under both §1692e and §1692f of the FDCPA.[6] The FDCPA prohibits a "debt collector" from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," as well as the use of "unfair or unconscionable means" of collection. 15 U.S.C. §§ 1692e, 1692f. With respect to the first type of violation, "[w]hether a communication is false, misleading, or deceptive in violation of § 1692e is determined from the vantage of the least sophisticated consumer." Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 394 (4th Cir. 2014). "To violate the statute, a representation must be material, which is to say, it must be important in the sense that it could objectively affect the least sophisticated consumer's decisionmaking." Elyazidi v. SunTrust Bank, 780 F.3d 227, 234 (4th Cir. 2015).

Concerning the second type of violation, an inference of "unfair or unconscionable means" of collection, under § 1692f, may arise where a defendant attempts to collect an "amount (including any interest, fee, charge, or expense incidental to the principal obligation)," that is not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Although the United States Court of Appeals for the Fourth Circuit has not addressed standards

---

[6]      As noted in the court's May 31, 2023, order plaintiff's claims under the NCCAA and the NCDCA run parallel, or in the alternative, to plaintiff's FDCPA claims. (See Order (DE 25) at 11). For purposes of the instant order, except where expressly noted herein, the court bases its analysis on plaintiff's claims under the FDCPA, leaving for a later juncture the issue of whether further differentiation of the state and federal claims is necessary.

for evaluating improper amounts of collection under § 1692f, other courts have recognized that the FDCPA prohibits collection of fees that exceed "actual costs of collection," or fees for "not-yet-performed services and expenses," or fees "unreasonably high" in relation to the value of the principal amount of the debt. Sparks v. EquityExperts.org, LLC, 936 F.3d 348, 352 (6th Cir. 2019). "[T]he use of the term 'costs'" in an association covenant "fairly impl[ies] that the homeowner is obligated to pay only something akin to the actual costs of collection—and not any charge, unrelated to actual costs, that the Association decides to levy." Id.

The court turns below first to examining the notice of lien and notice of intent to foreclose classes, and second to examining the unconscionable collection fee class, to determine whether they meet commonality and predominance requirements.

i.      Notice of Lien and Notice of Intent to Foreclose Classes

Common contentions unify both the notice of lien and notice of intent to foreclose classes. For example, a common contention for each notice of lien class member is that a form notice of lien sent to them "intentionally misrepresents that a lien has been filed . . . when in reality a lien has not been filed." (Pl's Mem. (DE 57) at 16). This contention raises a critical question for the resolution of each such class member's claim, namely, "Is the form statement about the status of the lien a 'false, deceptive, or misleading representation' under §1692e?" Answering this question "will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc., 564 U.S. at 350. If the answer is yes, then the notice of lien class members all have the same basis for liability against defendant.

Similarly, for the notice of intent to foreclose class, a common contention for each class member is that a form notice sent to them states that defendant "is foreclosing" on the property, demands payment of "all amounts due" within 30 days, and states "[f]ailure to satisfy the debt

13

secured by the lien(s) on or before the date stated herein may result in the sale of" the property, (E.g., Pl's Ex. M (DE 57-14) (notice dated January 30, 2020)). This contention raises a critical question for the resolution of each such class member's claim, namely, "Are these form representations about what defendant is doing, and can do, 'false, deceptive, or misleading representation[s]' under §1692e?" If the answer is yes, then the notice of intent to foreclose class members all have the same basis for liability against defendant.

An additional common contention for the notice of intent to foreclose class is that the form notice omits "a detailed accounting of the assessments and fees that are included in the alleged amount due for foreclosure pursuant to N.C. [Gen. Stat.] §§ 47f-3-116(f)(5) and 45-21.16(c)(5a)." (Pl's Mem. (DE 57) at 16). Further, plaintiff contends the form suggests that defendant "can immediately foreclose despite the fact that the homeowner has the right to satisfy a lien and prevent the sale of their homes until the expiration of the upset bid period." (Id.). These contention raise additional critical questions for each such class member's claim, namely, "Do these omissions and suggestions render the form 'false, deceptive, or misleading,' under §1692e?" If the answer is yes, then the notice of intent to foreclose class members also have this common basis for liability against defendant.

Finally, the notice of lien and notice of intent to foreclose classes share common contentions that the notices state an amount owed that consists of "inflated, not yet incurred, and unauthorized charges." (Pl's Mem. (DE 57) at 16). These contentions raise central questions for each such class member's claims, namely, "Do these statements regarding amount owed render the notices 'false, deceptive, or misleading,' under §1692e?" and "Do the notices attempt to collect lien and foreclosure fees that exceed actual costs of collection, or fees for not-yet-performed services and expenses, or fees unreasonably high in relation to the value of the principal amount

of the debt, under §1692f?" If the answers are yes, then the notice of lien and notice intent to foreclose class members also have these common bases for liability against defendant.

Furthermore, for the foregoing contentions, common "evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." Tyson Foods, 577 U.S. at 453. For example, regarding the contention that amounts charged in the notice of lien are premature, plaintiff relies upon the form notice of lien stating "a lien has been initiated against the property," and "payment in full" must be made to remove the lien, coupled with records showing a lien was not filed at the time the notice was sent. (E.g., Pl's Ex. B (DE 57-3) (notice dated September 16, 2019); Pl's Ex. C (DE 57-4) (attorney invoice dated October 31, 2019, with $150 lien filing fee); Pl's Ex. P (DE 57-17) (lien filing November 1, 2019)); Pl's Ex. A-1 (DE 70-1) at 4 (comparing date of notice of lien and date lien actually filed for putative notice of lien class members); see Pl's Mem. (DE 57) at 10 (citing "a $395 lien filing fee and $150 in attorney's fee (the '$545 lien processing fee' . . .) over thirty (30) days before performing this task.").

Regarding the contention that foreclosure fees are "inflated" or "unauthorized" (Pl's Mem. (DE 57) at 16), plaintiff relies upon a comparison of records for the type of the charge with the type of the service rendered. (See, e.g., Pl's Mem. (DE 57) at 10 (citing a "[$]3,445 Foreclosure Referral Fee" in comparison to a $1,650.00 "foreclosure fee that [a law firm] would charge" defendant); Id. at 3-4 (stating defendant "routinely takes the fee charged by the attorney and doubles or triples it"); Pl's Ex. A (DE 57-2) at 1 (allowing "all costs of collection"); Ex. D (DE 57-5) at 3 (approving scheduled fees as "costs of collection"); Ex. F (actual attorney invoice for foreclosure); Ex. A-2 (DE 70-1) at 10 (listing recipients of notice of intent to foreclose); Ex. A-3

15

(DE 70-1) at 15 (listing amounts paid in excess of $1,200). In sum common evidence supports the notice of lien and notice of intent to foreclose classes.

In considering further whether common contentions predominate over individual issues, however, the court turns to defendant's argument that plaintiff fails to establish Article III standing and that class certification is inappropriate because individual issues of injury-in-fact exist. The court disagrees with defendant regarding plaintiff's establishment of Article III standing. However, the court agrees with defendant, in part, that class certification to the full extent proposed by plaintiff is inappropriate due to individual issues of standing.

"The irreducible constitutional minimum of standing requires a plaintiff to show (1) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that the injury would likely be redressed by judicial relief." Fernandez v. RentGrow, Inc., 116 F.4th 288, 294 (4th Cir. 2024). "To be concrete, an injury must be real, and not abstract." Id. at 295. "Traditional tangible injuries, like physical harm and monetary harm, are the most obvious." Id. "Although every class member must have Article III standing in order to recover individual damages, [courts] have analyzed standing in the early stages of a class action based on the allegations of personal injury made by the named plaintiffs." Id.

There is no "separate 'class action standing' requirement." Carolina Youth Action Project; D.S. by & through Ford v. Wilson, 60 F.4th 770, 779 (4th Cir. 2023). Nevertheless, the court still must examine whether "common questions predominate over individual questions" regarding standing. Gunnells, 348 F.3d at 427–28. Such questions must be analyzed "to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." EQT Prod. Co., 764 F.3d at 358. Thus, a "court must consider under Rule 23(b)(3) before

16

certification whether [an] individualized issue of standing will predominate over the common issues in the case, when it appears that a large portion of the class does not have standing, . . . and making that determination for these members of the class will require individualized inquiries." Cordoba v. DIRECTV, LLC, 942 F.3d 1259, 1276–77 (11th Cir. 2019).

Here, plaintiff has demonstrated her own Article III standing by virtue of monetary harm in the form of payments she has made as a result of defendant's alleged violations of the FDCPA. For example, she made payments on November 7, 2019, allegedly as a result of the inaccurate notice of lien sent to her on September 16, 2019, and notice of intent to foreclose on January 30, 2020. (Pl's Ex. E (DE 57-6) at 2-3. Plaintiff also has demonstrated that some other putative class members made payments following receipt of the allegedly unlawful notices. (See, e.g., Pl's Ex. N (DE 57-15) at 1; see also Pl's Exs. A-1, A-2, and A-3). Plaintiff and putative class members who made payments to defendant thus suffered "monetary harm," an "obvious" "traditional tangible injur[y]," as a result of defendant's alleged FDCPA violations. Fernandez, 116 F.4th at 295. On this basis, the instant case is distinguishable from Dreher v. Experian Info. Sols., Inc., 856 F.3d 337 (4th Cir. 2017), cited by defendant, because there the named plaintiff could not establish his own individual standing due to an absence of monetary harm. See Id. at 345.

However, defendant contends that some putative class members cannot establish standing because they never "made a payment." (Def's Mem. (DE 63) at 13. Plaintiff does not purport to establish standing for any such putative class members. Rather, she relies upon the assertion that "[n]o injury is more concrete than the payment of money," and she otherwise argues that absent standing "the action would simply be remanded to Wake County Superior Court for further proceedings." (Pl's Reply (DE 70) at 5). Conceivably, plaintiff could seek to establish standing for putative class members who have never made a payment, on a theory that they suffered an

17

"informational injury" based upon "lack [of] access to information to which [they are] legally entitled and that the denial of that information creates a real harm with an adverse effect." Dreher, 856 F.3d at 345. But plaintiff has not pointed to evidence of standing under such a theory in this case. (See Pl's Reply (DE 70) at 5; see also Pl's Mem. (DE 57) at 14 (relying on account statements for other putative class members showing "collection costs charged and paid by the homeowner") and 17 (noting "when homeowners paid the excessive fees . . . can be calculated objectively" during trial) (emphasis added)). More critically, plaintiff has not demonstrated that to establish standing for all putative class members, as proposed without any limitation for payments made, the "same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." Tyson Foods, Inc., 577 U.S. at 453.

Thus plaintiff has not met her burden to show that class claims premised upon a theory of standing other than payments made will satisfy the commonality and predominance requirements. Accordingly, on the court's own initiative, the court limits the class definitions of the notice of lien and notice of intent to foreclose classes to specify that class members must have made a payment after receipt of either such notice. Absent this limitation, the classes are not certifiable. With this limitation, these two classes are unified by common contentions "that predominate over individual questions as to liability" and standing, such that "the predominance standard of Rule 23(b)(3) [is] satisfied." Gunnells, 348 F.3d at 428.

Before applying the additional Rule 23 requirements to these classes, as herein limited, the court addresses arguments raised by defendant concerning the merits of plaintiff's claims. For example, defendant argues: 1) "The individual associations stand in the best shoes to resolve these claims" and "[h]omeowners are circumventing their obligations to take this up with their associations first"; 2) "FDCPA suits are an improper method of challenging the legality or validity

of a contract, mu[ch] less whether charges are or are not 'reasonable'"; 3) "There can only be violations of the FDCPA for the actual act of debt collection"; and 4) "Where the real issue is whether or not a consumer is liable for the debt – and not unlawful collection practices – there can be no violation of the FDCPA."  (Def's Mem. (DE 63) at 13-14).  Likewise, defendant suggests that there is marketable value behind "at any step in the process," negating a claim that any flat fees are unreasonably inflated. (Galofaro Decl. (DE 63-1) ¶ 37).  These arguments are misplaced as a basis for opposing class certification.  At this juncture, the court does not consider "whether the proposed class is likely to prevail on the merits."  <u>Elegant Massage, LLC</u>, 95 F.4th at 188.  Indeed, each of these merits issues raised by defendant can be resolved on a class-wide basis, demonstrating that there may be "common questions" that could "generate common answers apt to drive the resolution of the [defendant's] liability."  <u>Peters</u>, 2 F.4th at 243.  Defendant may raise these questions for resolution, if at all, upon a properly supported motion for summary judgment, not the instant motion for class certification.

In sum, plaintiff has met commonality and predominance requirements for the notice of lien and notice of intent to foreclose classes, as limited herein.

ii. Unconscionable Collection Fee Class

By contrast, plaintiff has not demonstrated that the unconscionable collection fee class, as proposed, meets the commonality and predominance requirements of Rule 23(a) and 23(b)(3).

This proposed class suffers from an ambiguity and lack of clarity in its class definition and supporting contentions.  As contentions in support of this class, plaintiff asserts variously that defendant's collection fees are unlawful because they are: 1) "unauthorized," 2) "inflated," 3) "not akin to actual costs incurred," 4) "premature," and 5) "in excess of the $1,200 cap" under the North Carolina Planned Community Act ("NCPCA").  (Pl's Mem. (DE 57) at 16).  Plaintiff also

19

describes class members "being charged unconscionable costs from the universal Fee Schedule." (Id. at 17). Plaintiff further asserts a common contention is "whether [defendant's] 'packages' are reasonable considering the underlying charges and comparator options." (Pl's Reply (DE 70) at 9). Finally, plaintiff proposes a class definition that is comprised of "homeowners that were charged more than $1,200 in collection fees by [defendant] during the respective statute of limitations period." (Pl's Mot. (DE 56) at 1).

Plaintiff's reliance upon all of these contentions for a single unconscionable collection fee class serves to "mask a multitude of disparities" that is fatal to the commonality and predominance requirements. Stafford, ___ F.4th ___, 2024 WL 5131108, at *5. "[I]t is circular logic for plaintiff[] to create a laundry list of factually diverse claims and then assert that these claims, in turn, prove the existence of a uniform company policy." Id.

Plaintiff's contentions for the unconscionable collection fee class rely upon disparate theories that will require different types of evidence and methods of proof. See Tyson Foods, Inc., 577 U.S. at 453. The court has already detailed above the contentions and proof that may be used to show lien fees and foreclosure fees include "inflated, not yet incurred, and unauthorized charges." (Pl's Mem. (DE 57) at 16). The contentions for the unconscionable collection fee class that fees are "premature," "not akin to actual costs incurred," and "inflated," are redundant when they are based upon lien fees and foreclosure fees. (Id.). Apart from the contentions and methods of proof already raised related to notices of lien and foreclosure, however, it is much less clear on what common basis plaintiff will show a fee not linked to a lien or foreclosure is "inflated," "unauthorized," or "unconscionable."

This brings to the forefront plaintiff's contention that defendant's "collection costs" are "in excess of the $1,200 cap" under the NCPCA, and the related class definition based upon

"homeowners that were charged more than $1,200 in collection fees." (Pl's Mot. (DE 56) at 1; Mem. (DE 57) at 16). Plaintiff's contention based upon the $1,200 cap is problematic because it is unclear whether it pertains to the sum of all collection fees and costs, or instead only to attorneys' fees associated with enforcement of a lien through foreclosure. The plain language of the contention suggests the former broad interpretation, whereas the law and the following description in plaintiff's brief suggests the latter more narrow interpretation:

> HOAs are permitted to place a lien on properties within 30 days of an unpaid assessment, foreclose, and recover their attorneys' fees; but there are strict statutory mechanisms which govern this conduct, and the NCPCA caps the total amount of attorneys' fees at $1,200.00 for uncontested cases. See N.C.G.S § 47F-3-116(f)(12). In other words, an attorney who is capable of completing the enforcement of a lien through foreclosure, soup to nuts, is only able to charge a maximum amount of $1,200.00 for all aspects of the collection process.[] If necessary, HOAs can turn to their attorneys quickly, with a cap on fees, then use the lien and foreclosure proceedings to ensure they receive payment of their assessments.

(Pl's Mem. (DE 57) at 3) (emphasis added). The cited statute in this passage provides that an HOA "may foreclose a claim of lien . . . if the assessment remains unpaid for 90 days or more," subject to the limitation that, if uncontested, "attorneys' fees and the trustee's commission collectively charged to the lot owner shall not exceed one thousand two hundred dollars ($1,200), not including costs or expenses incurred." N.C. Gen. Stat. Ann. § 47F-3-116(f)(12) (emphasis added).

Applying the narrower interpretation of the $1,200 contention, this part of the proposed unconscionable collection fee class is subsumed within the proposed notice of lien and notice of intent to foreclose classes. Because this narrower contention is redundant of part of the contentions supporting those classes, the court exercises its discretion to carve it out from the unconscionable collection fee class and apply it as a contention supporting only to the notice of lien and notice of intent to foreclose classes. Stafford, ___ F.4th ___, 2024 WL 5131108, at *7 (noting that a district

court maintains discretion in "[b]reaking down a broad class" to ensure that "common questions are properly defined and predominate within each subclass").

By contrast, if interpreted more broadly, plaintiff's $1,200 contention is too vague and multifaceted to unify a class with common issues predominating over individual issues. Plaintiff has not demonstrated common issues predominate over a class based on all "collection costs . . . in excess of . . . $1,200," without qualification, apart from lien and foreclosure fees. (Pl's Mem. (DE 57) at 16). The vagueness of this contention is due, in part, to the fact that some individuals could incur that sum of fees through repetition of many small charges in a short amount of time, whereas other individuals could incur a large amount of fees through just one or two larger charges. Still others could incur fees spread out at different time periods, for different reasons, over a proposed class period spanning almost seven years.[7] Plaintiff has not demonstrated that analysis of such disparate fee scenarios would involve similar types of proof and issues of fact or law, for purposes of comparing charged fees with "actual costs of collection." Sparks, 936 F.3d at 352.

In addition, for collection costs other than lien and foreclosure fees, plaintiff relies in part upon a comparison to what the association charged for collection costs for plaintiff's account in 2015-2018, prior to defendant's involvement. (Pl's Mem. (DE 57) at 6 (citing Pl's Ex. I (DE 57-10) at 1-6). However, for "all other North Carolina management companies," she asserts only that their collection costs "would be drastically less than what [defendant] charges for the simple reason that the NCPCA caps attorney's fees at $1,200.00." (Pl's Mem. (DE 57) at 6 (citing N.C. Gen. Stat. § 47F-3-116(f)(12))) (emphasis added). This is not sufficient to show common issues of fact

---

[7]      Plaintiff proposes a class period from April 14, 2018, to the "date of Notice," and she requests 60 days from the date of a certification order to propose to the court for review a form of notice. (See Pl's Mem. (DE 57) at 13, 24).

and "common proof" outside the context of the notice of lien and notice of intent to foreclose classes. Krakauer, 925 F.3d at 655.

In sum, the unconscionable collection fee class, as proposed by plaintiff, is not certifiable due to lack of commonality and predominance. The components of the unconscionable collection fee class that are not overlapping with the notice of lien and notice of intent to foreclose classes are not sufficiently unified by common contentions and proof to enable a determination that "questions of law or fact . . . predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(2). Therefore, certification of the unconscionable collection fee class is denied on this basis.[8]

        b.    Typicality

"To be given the trust responsibility imposed by Rule 23, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Deiter v. Microsoft Corp., 436 F.3d 461, 466 (4th Cir. 2006). "The essence of the typicality requirement is captured by the notion that as goes the claim of the named plaintiff, so go the claims of the class." Id. A "plaintiff's claim cannot be so different from the claims of absent class members that their claims will not be advanced by plaintiff's proof of [her] own individual claim. Id. at 466-467. "That is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." Id. at 467. "But when the variation in claims strikes at the heart of the respective causes of actions, [courts] have readily denied class certification." Id.

---

[8]      In addition, and in the alternative, the court denies certification of the unconscionable collection fee class due to a failure to show typicality and ascertainability, as detailed further herein.

Here, plaintiff has demonstrated typicality with respect to the notice of lien and notice of intent to foreclose classes, as limited herein, because she possesses the same interest as putative class members and she has suffered the same injury, in that she made payments as a result of the allegedly improper notices she received. At the same time, plaintiff has not demonstrated typicality with respect to a subset of putative class members who never made any payments.[9] For this subset, plaintiff has not demonstrated that she "suffer[ed] the same injury" as such putative class members. Deiter, 436 F.3d at 466. This lack of typicality is augmented by plaintiff's failure to demonstrate common questions of proof and standing with respect to plaintiff and putative class members who never made any payments.

Accordingly, for this additional reason, the court on its own initiative limits the class definitions for the notice of lien and notice of intent to foreclose classes to require that all putative class members made a payment during the limitations period.

Defendant argues that plaintiff's claims are not typical of the proposed classes because of the need to adjudicate defenses, including "bona fide error," "reasonableness" of fees, statute of limitations, and "mitigation of damages." (Def's Mem. (DE 63) at 18). The first three asserted defenses, however, are by their nature resolvable on a class-wide basis in light of the class definitions adopted herein. "To qualify for the bona-fide-error defense, a defendant is required to show, inter alia, it maintained procedures reasonably adapted to avoid [a] violation." Russell v. Absolute Collection Servs., Inc., 763 F.3d 385, 389 (4th Cir. 2014). This defense may be resolved by examination of defendant's procedures as applied to all class members. Likewise, whether defendant's standard lien or foreclosure fees are reasonable, as reflecting "actual costs of

---

[9] The typicality analysis also provides an additional, alternative, basis for denying certification of the unconscionable collection fee class, as proposed. Plaintiff's claims are not typical of those members of the unconscionable collection fee class who received no notices of lien or notices of intent to foreclose.

collection," Sparks, 936 F.3d at 352, are common issues of liability unifying the notice of lien and notice of intent to foreclose classes. Finally, the statute of limitations is built into the class definitions, and the proper cutoff date(s) can be determined on a class-wide basis.

Defendant's assertion of a mitigation of damages defense also does not defeat typicality. "In fact, Rule 23 explicitly envisions class actions with . . . individualized damage determinations." Gunnells, 348 F.3d at 428. "The possibility that individualized inquiry into [putative] [p]laintiffs' damages claims will be required does not defeat the class action because common issues nevertheless predominate" on issues of liability. Id. at 429. Moreover, to the extent defendant seeks to argue that a failure to mitigate damages is an absolute bar to liability for plaintiff's and putative class members' claims, this is a question going to the ultimate merits of the claims that defendant can raise in the context of a summary judgment motion.

Thus, with the limitation set forth herein, the court finds plaintiff has demonstrated typicality for the notice of lien and notice of intent to foreclose classes.

    c.  Adequacy

"The adequacy inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent." Sharp Farms v. Speaks, 917 F.3d 276, 295 (4th Cir. 2019). "For a conflict of interest to defeat the adequacy requirement, that conflict must be fundamental." Id. "A conflict is not fundamental when all class members share common objectives and the same factual and legal positions and have the same interest in establishing the liability of defendants." Id.

Under this standard, plaintiff has demonstrated her adequacy as a class representative of the notice of lien and notice of intent to foreclose classes as delineated herein, because of her common factual and legal positions and the same interest in establishing the liability of defendant.

Plaintiff also has demonstrated that plaintiff's attorneys are appropriate for appointment as class counsel based upon their experience and qualifications. (See Pl's Ex. S (DE 57-20)).

Defendant argues, nonetheless, that plaintiff is not an adequate class representative because of her "general lack of knowledge and misunderstanding of key issues in this case." (Def's Mem. (DE 63) at 23). For example, defendant asserts, "she has no specific recollection of the letters she complains of," "she relies upon a pamphlet from 2002 to substantiate what is and is not a reasonable fee," and "she had no idea a motion to dismiss was filed or what the results of it were." (Id.). However, "attacks on the adequacy of a class representative based on the representative's ignorance" are "expressly disapproved." Gunnells, 348 F.3d at 430. "[I]n a complex lawsuit, such as one in which the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative." Id. A defendant's attack on adequacy "must be more than merely speculative or hypothetical." Id. Here, defendant has not demonstrated that plaintiff is inadequate due to lack of knowledge, nor that any other putative class member would have better understanding of the factual and legal issues of the case, particularly in light of the complexity and novelty of the claims.

Accordingly, the adequacy requirement is met, and plaintiff has shown good cause for appointing her attorneys as class counsel and for appointing plaintiff as class representative.

        d.     Ascertainability and Numerosity

"Rule 23 . . . contains an implicit threshold requirement that the members of a proposed class be readily identifiable." Career Counseling, Inc., 91 F.4th at 206. "Under that requirement — which is commonly referred to as 'ascertainability' — a class cannot be certified unless a court can readily identify the class members in reference to objective criteria." Id. "[I]f class members

26

are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." Id. By contrast, a proposed class may be ascertainable where "class-wide data allow[s] for identification on a large-scale basis." Peters, 2 F.4th at 243.

Plaintiff has demonstrated ascertainability of the notice of lien and notice of intent to foreclose classes, based upon records of when such notices were sent, liens were filed, foreclosure charges were assessed, and payments were made. Through this method, plaintiff identified 249 violations for the notice of lien class, and 168 violations for the notice of intent to foreclose class, with most violations assigned to unique individual identifiers. (See, e.g., Pl's Ex. A-1 and Ex. A-2 (DE 70-1) at 4, 10). By virtue of the same showing, plaintiff also has met the related numerosity requirement. Any adjustment to these numbers to account for the additional limitations in class definitions imposed by the court can be made by reference to the same evidence.

Related to ascertainability, defendant argues that plaintiff's proposed classes are "fail-safe classes. (Def's Mem. (DE 63) at 9). "[A] fail-safe class is defined so that whether a person qualifies as a member depends on whether the person has a valid claim." EQT Prod. Co., 764 F.3d at 360 n. 9. Plaintiff's notice of lien and notice of intent to foreclose classes are not fail-safe classes because membership does not depend on whether the person has a valid claim, but rather on whether the person made a payment after receiving a notice of lien or a notice of intent to foreclose in substantially the form that plaintiff received.[10] Whether plaintiff or any such person has a valid claim is precisely the common question, not yet answered, that must be determined through this litigation.

---

[10]      By contrast, the proposed unconscionable collection fee class is, at least in part, an improper fail-safe class, because it is based upon an "unconscionable collection fee," (Pl's Mot. (DE 56) at 1) (emphasis added). This title suggests that "whether a person qualifies as a member depends on whether the person has a valid claim." EQT Prod. Co., 764 F.3d at 360 n. 9. Thus, an additional, alternative, basis for denying class certification for this class as proposed is that it is an improper fail-safe class, as proposed, thus not meeting the ascertainability requirement.

Accordingly, plaintiff has met the ascertainability and numerosity requirements for the notice of lien and notice of intent to foreclose classes.

   e.  Superiority

A plaintiff must demonstrate that "proceeding as a class is superior to other available methods of litigation." <u>Career Counseling, Inc.</u>, 91 F.4th at 206. Here, given the number of putative class members, the similarity of the factual and legal bases of their claims and asserted defenses, as delimited herein, as well as defendant's use of uniform letters and procedures, proceeding as a class is superior to other methods of litigation, such as a multitude of individual actions brought on the same basis.

Defendant argues that class treatment is not superior because defendant "has a $0 net worth (or possibly negative net worth)," and statutory damages under the FDCPA can only be 1% of its net worth, or $500,000.00, whichever is less. (Def's Mem. (DE 63) at 27). Defendant cites <u>Tourgeman v. Nelson & Kennard</u>, 900 F.3d 1105 (9th Cir. 2018), for the proposition that "it is Plaintiff's obligation to prove sufficient net worth to sustain an FDCPA class action for statutory damages." <u>Id.</u>

Defendant's argument premised upon its net worth, and its reliance upon <u>Tourgeman</u>, is unavailing for several reasons. As an initial matter, the court in <u>Tourgeman</u> actually "certified a class of consumer plaintiffs," and only later dismissed the FDCPA class action claims prior to trial on the basis of insufficient evidence of net worth to obtain statutory damages. <u>See Tourgeman</u>, 900 F.3d at 1107. The court did not consider this as a basis for denying class certification. <u>See id.</u>

Second, statutory damages are not the only damages available for a violation of the FDCPA: A plaintiff may recover "any actual damage sustained" as well as "such additional damages as the court may allow" subject to the statutory cap based upon net worth. 15 U.S.C. §

1692k(a). The plaintiff in <u>Tourgeman</u> expressly did not rely upon actual damages, and thus could not recover on that alternative basis. <u>See</u> <u>Tourgeman</u>, 900 F.3d at 1108 n.6.

Here, by contrast, plaintiff relies in part upon actual damages, and her theory of standing is dependent upon her actual payments made in response to allegedly improper notices. (Compl. (DE 1-2) at 22 (seeking "actual and statutory damages"); Pl's Reply (DE 70) at 5 ("No injury is more concrete than the payment of money.")). Plaintiff also seeks statutory damages under the NCCAA and NCDCA, which provide damages of $500-$4,000 per violation without a net worth cap. N.C. Gen. Stat. §§ 58-70-130(b) and 75-56(b). Therefore, defendant's argument based upon its net worth is unavailing, and plaintiff has met the superiority requirement for certification.

In sum, based on the foregoing, plaintiff has met all the requirements for class action certification, subject to the limitations on plaintiff's classes as set forth herein. In particular, only the following classes are certified with the following limitations:

> (1) <u>Notice of Lien Class</u>: All North Carolina homeowners, during the respective statute of limitations period, that received a Notice of Lien from EquityExperts substantially identical to the Notice of Lien delivered to Plaintiff, and thereafter made a payment to EquityExperts.

> (2) <u>Notice of Intent to Foreclose Class</u>: All North Carolina homeowners, during the respective statute of limitations period, that received a Notice of Intent to Foreclose from EquityExperts substantially identical to the Notice of Intent to Foreclose delivered to Plaintiff, and thereafter made a payment to EquityExperts.

Plaintiff requests in her motion a period of 60 days from the date of certification to provide the court with a proposed plan for providing notice to class members. For good cause shown, the court directs the parties to file, jointly, a proposed plan for providing notice to class members, or if the parties cannot agree upon a proposed plan, then to file their proposals separately. Thereupon, the court will enter such order as is warranted for providing notice to class members.

B.    Motion for Extension of Time

In addressing the instant motion, the court notes the following deadlines plaintiff seeks to extend to which defendant has provided its consent:

| Event | Current Deadline | Requested Deadline |
|---|---|---|
| Rule 26(e) Supplemental Disclosures | September 27, 2024 | March 7, 2025 |
| Expert Depositions | December 4, 2024 | February 4, 2025 |
| Dispositive Motions | February 19, 2025 | March 21, 2025 |

The court also notes the following deadlines plaintiff seeks to extend which defendant opposes:

| Event | Current Deadline | Plaintiff's Requested Deadline |
|---|---|---|
| Fact Discovery | November 7, 2024 | March 7, 2025 |
| Expert Disclosures | December 4, 2024 | January 8, 2025 |

Concerning the deadline for fact discovery, plaintiff has shown good cause for an extension of time on the basis of the court's November 6, 2024, order compelling defendant to produce additional materials in discovery. In particular, the day before the current deadline for fact discovery expired, the court ordered defendant to provide to plaintiff: 1) complete and unredacted copies of defendant's procedure manual and compliance manual within 14 days; 2) a list of employees who sent emails to NC HOAs and a list of NC HOAs who have received emails from defendant's employees within 7 days (out of which plaintiff was directed to designate three employees and 25 HOAs, together with 15 search terms, within 14 days); and 3) a subset of such emails, within 30 days of receipt of plaintiff's designation. (DE 71 at 9; see DE 72 at 9).

30

It reasonably follows from the court's November 6, 2024, ruling that plaintiff should be entitled to conduct depositions and written discovery related to the materials ordered to be produced therein. While defendant argues that plaintiff was not diligent because she did not earlier "explore numerous compromises" with defendant, did not earlier seek to conduct another Rule 30(b)(6) deposition, and did not earlier serve more than "limited additional discovery requests," (Def's Opp. at 4-5), plaintiff has demonstrated diligence through her pursuit of her motion to compel. Plaintiff also has shown she would be prejudiced by not being permitted to conduct additional fact discovery related to the materials ordered to be produced.

Accordingly, the court allows plaintiff's extension of the fact discovery deadline, but the court limits the scope of discovery to that related to the materials ordered to be produced. The court allows plaintiff to conduct up to three more depositions, including one additional Rule 30(b)(6) deposition, and to serve related written discovery, if any. On the same basis, the court allows plaintiff's request for an extension of the deadline for expert disclosures, where plaintiff suggests that her proposed experts may review materials now produced by defendant and then revise or complete their expert reports.

Further, in light of the passage of time, the court on its own initiative adjusts the extended deadlines to account for delays due to the pendency of the instant motion and orderly conduct of the remaining fact and expert discovery.

In sum, for good cause shown, case deadlines are extended as follows:

| Event | Current Deadline | New Deadline |
|---|---|---|
| Rule 26(e) Supplemental Disclosures | September 27, 2024 | February 4, 2025 |
| Fact Discovery | November 7, 2024 | March 7, 2025 |
| Expert Disclosures | December 4, 2024 | March 7, 2025 |

| | | |
|---|---|---|
| Expert Discovery | December 4, 2024 | March 28, 2025 |
| Dispositive Motions | February 19, 2025 | April 21, 2025 |

**CONCLUSION**

Based on the foregoing, plaintiff's motion to certify class (DE 56) is GRANTED IN PART

and DENIED IN PART as set forth herein. The court certifies only the following two classes

defined as follows, pursuant to Rule 23(a) and 23(b)(3):

> (1) <u>Notice of Lien Class</u>: All North Carolina homeowners, during the respective
> statute of limitations period, that received a Notice of Lien from EquityExperts
> substantially identical to the Notice of Lien delivered to Plaintiff, and thereafter
> made a payment to EquityExperts.

> (2) <u>Notice of Intent to Foreclose Class</u>: All North Carolina homeowners, during the
> respective statute of limitations period, that received a Notice of Intent to Foreclose
> from EquityExperts substantially identical to the Notice of Intent to Foreclose
> delivered to Plaintiff, and thereafter made a payment to EquityExperts.

Plaintiffs' attorneys of record are appointed as class counsel, and plaintiff is designated class

representative. Within 60 days of the date of this order, the parties are DIRECTED to file, jointly,

a proposed plan for providing notice to class members, or if the parties cannot agree upon a

proposed plan, then to file their proposals separately. Plaintiff's motion for extension of time (DE

73) is GRANTED on the terms set forth herein.

SO ORDERED, this the 6th day of January, 2025.

_____
LOUISE W. FLANAGAN
United States District Judge