IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CV-302-FL

| | | |
|---|---|---|
| KIMBERLI LEWIS on behalf of herself and others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER |
| EQUITYEXPERTS.ORG, LLC, | ) ) | |
| Defendant. | ) ) | |

This matter is before the court on plaintiff's motion for leave to file amended complaint (DE 78) and defendant's motion for reconsideration (DE 89) of the court's class certification order. The motions have been briefed fully, and the issues raised are ripe for ruling. For the following reasons, the motions are granted in part and denied in part as set forth herein.

## STATEMENT OF THE CASE

Plaintiff commenced this consumer protection action in Wake County Superior Court, April 14, 2022, asserting putative class action claims on behalf of herself and others similarly situated, based upon allegedly improper debt collection practices by defendant in connection with delinquent homeowners association dues payments.

Plaintiff asserts claims under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"); the North Carolina Collection Agency Act, N.C. Gen. Stat. § 58-70 et seq. ("NCCAA"); and the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50 et seq.

("NCDCA").[1]  Plaintiff seeks certification of this action as a class action; an award of actual, statutory, and trebled damages; and an award of attorneys' fees and costs.

Defendant filed a notice of removal August 4, 2022, on the basis of federal question jurisdiction.  Thereafter, defendant moved to dismiss all claims against it for failure to state a claim and to strike plaintiff's class allegations.  The court granted in part and denied in part defendant's motion to dismiss May 31, 2023, allowing plaintiff's claims to proceed, as pertinent here, under the FDCPA, NCCAA, and NCDCA, as well as class action allegations, See Lewis v. EquityExperts.org, LLC, No. 5:22-CV-302-FL, 2023 WL 3746484, at *8 (E.D.N.C. May 31, 2023) (DE 25).

Defendant filed an answer and the court entered case management order July 18, 2023, providing a November 16, 2023, deadline to amend pleadings, an August 9, 2024, deadline for completion of discovery, and an August 23, 2024, deadline for dispositive motions.

As pertinent to the analysis herein, the court sets forth as follows the parties' discovery activities as represented in the instant motions, leading up to the filing of the instant motion to amend.  The court received notice of a discovery dispute February 7, 2024, regarding defendant's objections to noticed depositions of three Rule 30(b)(6) witnesses.  The court referred the matter to a United States Magistrate Judge for informal telephone conference to address the issues raised. The magistrate judge held a telephone conference February 8, 2024, and scheduled a follow-up conference February 9, 2024, at which point the parties reported they reached a resolution of the discovery dispute.

---

[1]      Plaintiff also originally asserted claims under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 et seq. ("UDTPA"), and for common law unjust enrichment, which the court dismissed for failure to state a claim in its order entered May 31, 2023.  (DE 25).

2

In the meantime, according to plaintiff, she "issued third party subpoenas to [defendant's] counsel that handled the liens for NC HOAs [homeowner associations], but, due to the voluminous nature of the requested documents, the subpoena production was on a rolling basis and not obtained until December 19, 2023, with most of the production (for all NC HOAs) not produced until April 1, 2024." (Pl's Mem. (DE 79) at 6). According to defendant, it "provided written discovery responses in September 2023, including all account-level documents, letters sent to Plaintiff, marketing materials, financials, contracts, and regulatory complaint documentation." (Def's Opp. (DE 86) at 8). "Class-specific information, including class lists, was completed by November 2023." (Id.).

May 2, 2024, the parties jointly moved for an extension of discovery and dispositive motions deadlines noting that "[t]he parties [had] diligently pursued discovery since September 2023 involving approximately five hundred (500) homeowner accounts from at least fifty-nine (59) different [NC HOAs]." (DE 42 at 1). "This include[d] written discovery, third-party subpoenas, and multiple document productions, and various depositions." (Id.). The parties reported that defendant's employees in depositions had "identified training materials, reports, and communications between Defendant and each NC HOA that are alleged to be responsive to outstanding discovery requests and which . . . led to additional bona fide discovery disputes requiring additional discovery," which the parties were optimistic of resolving without court intervention. (Id. at 2).

The court received notice May 31, 2024, of a discovery dispute between the parties, and that same day entered a text order determining that informal conference by telephone was unlikely to aid in the resolution of the disputed issues, and allowing plaintiff to file a motion to compel. A motion to compel discovery and for sanctions by plaintiff followed June 14, 2024. In support of

the motion, plaintiff contended that, "[a]t the onset of discovery," plaintiff had requested defendant's 1) "debt collection policies and procedures" and 2) "communications with [NC] HOAs regarding its debt collection attempts utilizing lien enforcement and foreclosures." (DE 50 at 1). Plaintiff also contended:

> Defendant initially claimed that these Documents simply did not exist so could not be produced. However, after conducting the depositions of several current and former employees of Defendant, it became apparent that the Documents did in fact exist, were in Defendant's possession, and could readily be produced. Despite Defendant's original position being categorically false, Defendant is still refusing to produce these Documents.

(Id. at 1-2). Plaintiff further contended that "depositions . . . confirmed that there are communications between Defendant and each NC HOA regarding the enforcement of liens and foreclosure and collection of debt – all germane to the initial discovery served on Defendant but falsely claimed to have not existed." (Id. at 3). In opposition, defendant argued inter alia that plaintiff failed to state how the requested materials "are pertinent to any element of her claims." (DE 53 at 7). The court referred the motion to compel to magistrate judge for decision.

While the motion to compel was pending, plaintiff filed her motion to certify class August 8, 2024, proposing certification of the following three classes pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3):

> (1) Notice of Lien Class: All North Carolina homeowners, during the respective statute of limitations period, that received a Notice of Lien from EquityExperts substantially identical to the Notice of Lien delivered to Plaintiff.

> (2) Notice of Intent to Foreclose Class: All North Carolina homeowners, during the respective statute of limitations period, that received a Notice of Intent to Foreclose from EquityExperts substantially identical to the Notice of Intent to Foreclose delivered to Plaintiff.

> (3) Unconscionable Collection Fee Class: All North Carolina homeowners that were charged more than $1,200 in collection fees by EquityExperts during the respective statute of limitations period.

(Motion to Certify (DE 56) at 1) (hereinafter referenced as the "Notice of Lien" "Notice of Intent to Foreclose" and "unconscionable collection fee" classes).

November 6, 2024, the court granted in part and denied in part plaintiff's motion to compel, ordering defendant to produce additional materials in discovery as specified in the court's order. (See Order (DE 71) at 6-9).[2]  The court noted, "[a]s an initial matter, the court is persuaded by plaintiff's argument that she only became aware of the exact scope and nature of the discovery disputes discussed herein during various depositions that occurred during the course of the discovery period." Id. at 6.  "Accordingly, the court [did] not find plaintiff's motion to compel to be untimely." Id.

With respect to defendant's procedure manual and compliance manual, the court noted "[d]efendant has not cited any compelling legal authority to support its position that redactions of non-privileged information are appropriate in this case given the presence of a protective order," and thus ordered defendant to provide complete and unredacted copies of the same within 14 days. (Id. at 6-7).  With respect to emails with NC HOAs, the court ordered defendant to produce a subset of emails to plaintiff, based upon three designated defendant employees, and designated NC HOAs that include requested search terms, within 30 days.    The court declined to sanction defendant.

Plaintiff filed December 10, 2024, the instant motion for leave to file amended complaint, relying upon a proposed amended complaint and a redline showing proposed changes.  Before this motion ripened, the court entered its order granting in part and denying in part plaintiff's motion for class certification.  In particular, the court certified the following two classes:

---

[2]        The court entered an amended order November 7, 2024, correcting two scrivener's errors in referencing "plaintiff" instead of "defendant."  (DE 72 at nn. 5 and 7).  Upon joint motion of the parties, on September 5, 2024, the court extended the deadline for discovery and for dispositive motions.  Plaintiff filed an additional motion for extension of time November 7, 2024.

(1) <u>Notice of Lien Class</u>: All North Carolina homeowners, during the respective statute of limitations period, that received a Notice of Lien from EquityExperts substantially identical to the Notice of Lien delivered to Plaintiff, and thereafter made a payment to EquityExperts.

(2) <u>Notice of Intent to Foreclose Class</u>: All North Carolina homeowners, during the respective statute of limitations period, that received a Notice of Intent to Foreclose from EquityExperts substantially identical to the Notice of Intent to Foreclose delivered to Plaintiff, and thereafter made a payment to EquityExperts.

(Order (DE 85) at 32).[3]

Defendant filed opposition to the instant motion to amend January 10, 2025. Thereafter, January 20, 2025, defendant filed the instant motion for reconsideration, or in the alternative for clarification, of the court's January 6, 2025, class certification order. Defendant relies upon a declaration of its employee, Leslie Dejesus Mitchell ("Mitchell"), an account ledger for plaintiff, and an expert report by defendant's designated expert Ben Hodges.

Plaintiff replied in support of her motion to amend, and responded in opposition to the motion for reconsideration, relying upon exhibits comprising notices sent by defendant to plaintiff and class members, and charts prepared by counsel. Defendant replied, February 24, 2025, relying on a second declaration of Mitchell. That same date, the court granted defendant's motion to stay all deadlines pending resolution of the instant disputed motions.

## STATEMENT OF FACTS

For background purposes, the court incorporates herein by reference the statement of facts alleged in the original complaint, as set forth in the court's May 31, 2023, order, (DE 25) as well as the summary of facts in the record, as set forth in the court's January 6, 2025, order. (DE 85).

---

[3]    The court also granted plaintiff's motion to extend case deadlines, including deadlines for discovery and dispositive motions.

## COURT'S DISCUSSION

A.    Motion to Amend

Defendant argues plaintiff's motion to amend should be denied because plaintiff fails to establish good cause to modify the scheduling order, and amendment is unduly delayed, prejudicial, and futile.  The court disagrees, except in that part where plaintiff proposes in the motion to include class definitions modified in the court's class certification order and herein.

A "schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  A party may amend its pleading with "the court's leave," and "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend a pleading under Rule 15 should be allowed "[i]n the absence of . . . undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment."  Foman v. Davis, 371 U.S. 178, 182 (1962).[4]

"[A]fter the deadlines provided by a scheduling order have passed, the good cause standard must be satisfied to justify leave to amend the pleadings."  Nourison Rug Corp. v. Parvizian, 535 F.3d 295, 298 (4th Cir. 2008).  The court must first ensure a plaintiff meets the Rule 16 good cause standard before turning to the standard for amendment under Rule 15.  Id.  The Rule 16 standard primarily turns on the diligence of the party seeking to amend after the deadline in a scheduling order.  See id.; see also Montgomery v. Anne Arundel County, 182 F. App'x 156, 162 (4th Cir. 2006) ("Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party.").

---

[4]    Internal quotations and citations are omitted from all case citations in this order unless otherwise specified.

Here, plaintiff has demonstrated diligence in moving to amend under the circumstances of this case. At the point of the deadline to amend pleadings, on November 16, 2023, plaintiff had not yet received the completed subpoena production from defendant's lien counsel. "[T]he subpoena production was on a rolling basis and not obtained until December 19, 2023, with most of the production (for all NC HOAs) not produced until April 1, 2024." (Pl's Mem. (DE 79) at 6). Although defendant contends it provided "[c]lass-specific information, including class lists" by November 2023, this does not address information concerning the Notice of Lien letter, lien filing dates, and subpoenaed information. (Def's Mem. (DE 86) at 8). Indeed, defendant also acknowledges "there was a rolling production of documents" pertinent to issues of timing of liens. (Id. at 5).

In addition, the parties jointly recognized in May 2024 that they had "diligently pursued discovery since September 2023," and that defendant's employees in depositions had identified additional information "alleged to be responsive to outstanding discovery requests" subject of a brewing discovery dispute. (DE 42 at 2). Thereafter, May 31, 2024, plaintiff asserted that part of that discovery dispute concerned "communications with [NC] HOAs regarding its debt collection attempts utilizing lien enforcement and foreclosures." (DE 50 at 1) (emphasis added). Plaintiff further contended that "depositions . . . confirmed that there are communications between Defendant and each NC HOA regarding the enforcement of liens and foreclosure and collection of debt – all germane to the initial discovery served on Defendant but falsely claimed to have not existed." (Id. at 3) (emphasis added). While defendant argued that the requested materials were not relevant to any element of her claims (DE 53 at 7), the magistrate judge did not exclude from the court's ordered production any information related to enforcement of liens. (See Order (DE 71) at 9).

Multiple factors thus contribute to the court's determination that plaintiff demonstrated sufficient diligence to modify the scheduling order deadline for motions to amend. First, discovery pertaining to the timing of lien filings specifically was not obtained until after the deadline to amend the pleadings. Second, discovery was complicated and augmented in this case because plaintiff not only sought discovery regarding her own account but also "approximately five hundred (500) homeowner accounts from at least fifty-nine (59) different [NC HOAs]." (DE 42 at 1). Third, discovery has been contentious, and additional discovery in dispute concerned, in part, liens and foreclosures that are subject of the new allegations in the proposed amended complaint. Fourth, plaintiff's good faith pursuit of such discovery is demonstrated by the court's ruling, in part, granting plaintiff's motion to compel. Fifth, as of the date of filing of the instant motion to amend, discovery had not yet completed, the court had not yet made a ruling on class certification. In light of all these factors, plaintiff has demonstrated good cause to permit her to file a motion for leave to amend complaint outside of the deadline in the scheduling order.

In so holding, the court recognizes that plaintiff conceivably could have moved to amend her complaint, or moved to amend the scheduling order deadline for amendment, at some point in 2024 prior to the date of filing of the instant motion to amend on December 10, 2024. However, the record does not permit a finding that plaintiff was aware of all information pertinent to amendment prior to adjudication of her motion to compel. Accordingly, it was not unreasonable for plaintiff to wait until after completion of the court-ordered production of compliance and procedure manuals to move for leave to amend.

Cases cited by defendant for a contrary conclusion are instructively distinguishable. For example, defendant cites Joseph v. Wilmerding, No. CV 11-109-M-DWM-JCL, 2012 WL 2712710, at *9 (D. Mont. June 4, 2012), for the proposition that "if a party was aware of the facts

that warranted an amendment but allowed the amendment deadline . . . to pass without so much as a motion to extend the deadline, then this demonstrates lack of diligence." (Def's Mem. (DE 86) at 5). Joseph, however, is distinguishable on each of the factors identified by the court above. The court determined that "[a]ll of facts giving rise to [the plaintiff's] proposed [amended] promissory estoppel claim were known to her when she first initiated the action." Joseph, 2012 WL 2712710 at *9. In Joseph, there was no discussion by the court of information revealed during discovery, there was no motion to compel by the plaintiff, there was no class discovery, and the plaintiff was privy to the facts supporting her own personal claims. Thus, Joseph is inapposite.

Defendant also cites to Holland v. Cardiff Coal Co., 991 F. Supp. 508 (S.D.W. Va. 1997), where the court denied a motion to amend outside the deadline set in the court's scheduling order. However, Holland stands as an informative example in contrast to the instant case, because the defendant in Holland "did not raise [its new] defense until its response to the plaintiffs' motion for summary judgment," at which point "discovery had already ended." Id. at 515. Also, "the [non-movants] were precluded from taking discovery on matters that [were] relevant to presenting fact specific arguments against [the moving party's new] defense." Id. at 516. None of these circumstances are present here, where no summary judgment motions have been filed, discovery is ongoing, and defendant may take discovery as needed on the allegations in the amended complaint, the subject of which is within defendant's own command and control.

In sum, plaintiff has demonstrated good cause for modification of the case schedule to allow her to amend her complaint outside of the deadline provided in the court's case management order. The court thus turns to considering the standard for amendment under Rule 15. Here, defendant has not demonstrated that "amendment would be prejudicial, . . . there has been bad

10

faith on the part of the moving party, or the amendment would [be] futile." Laber v. Harvey, 438 F.3d 404, 426 (4th Cir. 2006) (en banc).

Turning first to the issue of prejudice, "[a] common example of a prejudicial amendment is one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant, and is offered shortly before or during trial." Id. at 427. By contrast, if a "defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case." Id. The instant case falls closer to the latter scenario than the former. Critically, plaintiff's proposed amendments are not offered "shortly before or during trial." Id. In addition, plaintiff made allegations in her complaint at the outset concerning defendant's charges for lien filing. (See Compl. (DE 1-2) ¶¶ 41-44, 77). Thus, she has made defendant generally "aware to the events giving rise to the action," if not "fully aware" of them, at least with no new legal claims being asserted or separate transactions or occurrences being alleged. Laber, 438 F.3d at 427.

Defendant argues that "[p]laintiff seeks to radically alter the nature of this case, requiring [defendant] to engage in additional and very costly class discovery on [the] newly-minted classes." (Def's Mem. (DE 86) at 6-7). "Incurring the enormous expense involved in litigating class certification issues alone is prejudicial to [defendant], let alone reverting back to now-rejected definitions." (Id.). However, the case necessarily has expanded in scope as a consequence of the court's class certification ruling. In addition, plaintiff modified her proposed amended complaint, in reply to the instant motion, to align the class definitions with those determined in the court's class certification order. Plaintiff's proposed amended complaint, thus, is aligned with the court's class certification decision and it does not create "undue prejudice" of the nature requiring denial

of the motion for leave to amend.  <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>see</u> <u>Laber</u>, 438 F.3d at 427.[5]

Defendant cites to <u>Troxel Mfg. Co. v. Schwinn Bicycle Co.</u>, 489 F.2d 968 (6th Cir. 1973) for the proposition that "[a]n amendment prejudices a party where the amendment will require the party to prepare an additional defense strategy and expend additional resources to defend against new claims."  (Def's Mem. (DE 86) at 8).  Troxel, however, does not stand for such a broad proposition, and it illustrates circumstances of prejudice in contrast to those present here.  There, the plaintiff "moved to amend its pleadings to assert an alternative theory of recovery," but "[t]he only excuse offered for [the] delayed presentation is that [the plaintiff] misconceived the law."  <u>Troxel</u>, 489 F.2d at 970.  The court held that a "misconception of the law is not an excuse for the late presentation of an alternative theory of recovery," and that "[n]o reason [was] shown why [the plaintiff] could not have presented its alternative theory initially."  <u>Id.</u> at 971.  The court further held that "the prejudice to [the defendant] is obvious," where the defendant already "had to defend against one theory at both the district court and the appellate court levels."  <u>Id.</u>  None of these circumstances are present in the instant case, and thus <u>Troxel</u> does not support defendant's argument.

Defendant also argues that plaintiff has acted in bad faith as "part of a larger effort to multiply these proceedings for the purpose of increasing defense costs."  (Def's Mem. (DE 86) at 8).  As it relates to plaintiff's intent in litigating discovery disputes, however, this court has already determined "the court is persuaded by plaintiff's argument that she only became aware of the exact scope and nature of the discovery disputes discussed herein during various depositions that

---

[5]     Defendant also argues plaintiff's proposed amended complaint is futile because "the proposed classes (as written by Plaintiff) do not meet the requirements for class certification."  (Def's Mem. (DE 86) at 9).  Where plaintiff has modified her proposed amended complaint in reply to align with the court's class definitions, and plaintiff is directed to further modify class definitions in accordance with instructions herein, this argument also is without merit.

12

occurred during the course of the discovery period." (Order (DE 71) at 6). Further, in light of all the circumstances and factors set forth above concerning plaintiff's showing of diligence and good cause, defendant has not demonstrated that plaintiff acted in bad faith in moving to amend her complaint.

In sum, where plaintiff has met the good cause standard of Rule 16, and the standard for "freely" giving leave to amend under Rule 15, plaintiff's motion for leave to amend is granted in part on the terms set forth herein. The motion is denied only in that limited part where the proposed amended complaint includes plaintiffs' original class definitions.

B.    Motion for Reconsideration

1.    Standard of Review

Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a [final] judgment." Fed. R. Civ. P. 54(b).[6] Thus, "every order short of a final decree is subject to reopening at the discretion of the district judge." Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 515 (4th Cir. 2003). "[D]octrines such as law of the case . . . have evolved as a means of guiding that discretion," under which a prior ruling "must be followed unless (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." Id. "[H]owever, it does not and cannot limit the power of a court to

---

[6]    Although defendant cites Rule 59(e) in support of its motion for reconsideration, Rule 59(e) is not applicable where the class certification order did not "adjudicate[] all outstanding claims in the case and result[] in a final judgment." JTH Tax, Inc. v. Aime, 984 F.3d 284, 289 n. 2 (4th Cir. 2021). "Rule 59(e) motions are governed by a significantly higher standard than Rule 54(b) motions." Id.

reconsider an earlier ruling," and "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." Id.

      2.      Analysis

Defendant argues that reconsideration of the class certification order is required because the court defined two letter classes sua sponte and plaintiff cannot sustain her burden for numerosity and predominance based on those newly-defined classes. Defendant also seeks clarification of asserted ambiguities in the class definitions, as an alternative to reconsideration. The court begins with the class definitions and clarification, before reconsidering the requirements of numerosity and predominance.

      a.      Class Definitions

Defendant contends the court erred by certifying two letter classes, "neither of which appeared in the Complaint or the Parties' Motion for (or Opposition to) Class Certification." (Def's Mot. (DE 89) at 1). The court disagrees. In fact, it is well established that defects in proposed class definitions, such as those identified by the court in its class certification order, "can and often should be solved by refining the class definitions." Stafford v. Bojangles' Restaurants, Inc, 123 F.4th 671, 682 (4th Cir. 2024). Likewise, "district courts may certify subclasses sua sponte." Id. "There is no brightline rule for how such a definition should read, and district courts have discretion in their phrasing." Id.; see, e.g., EQT Prod. Co. v. Adair, 764 F.3d 347, 369 (4th Cir. 2014) (noting "[t]he district court may . . . be able to craft more definite class definitions, thus eliminating or mitigating some of the problems described" on appeal); In re Monumental Life Ins. Co., 365 F.3d 408, 414 (5th Cir. 2004) ("District courts are permitted to limit or modify class definitions to provide the necessary precision.").

Thus, the court's sua sponte modification of the proposed class definitions is not, in itself, a basis for reconsideration of the court's order.

> b.    Clarification

Defendant suggests the court must clarify ambiguities in the class definitions by adding a 45-day time limit on when a payment is made, as well as a limitation on the type of payment, in order to satisfy class certification standards.  For the following reasons, the court agrees there must be a definite time limit, albeit not in the amount suggested by defendant.  In addition, no limit on the type of payment made is necessary for purposes of the class definitions.

> i.    Time Limit

The court's class certification order limits class members to those who received a Notice of Lien or Notice of Intent to Foreclose "and <u>thereafter</u> made a payment to [defendant]."  (Order (DE 85) at 32) (emphasis added).  The payment requirement placed by the court on each class definition was made to ensure there was a common basis for Article III standing of putative class members, in the form of "monetary harm . . . as a result of defendant's alleged FDCPA violations." (<u>See</u> Order (DE 85) at 16 (quoting <u>Fernandez v. RentGrow, Inc.</u>, 116 F.4th 288, 294 (4th Cir. 2024)).  While "[t]here is no 'separate class action standing requirement,'" the court still must ensure that "'individualized issue[s] of standing will [not] predominate over the common issues in the case.'"  (<u>Id.</u> at 16-17 (quoting <u>Carolina Youth Action Project; D.S. by & through Ford v. Wilson</u>, 60 F.4th 770, 779 (4th Cir. 2023) and <u>Cordoba v. DIRECTV, LLC</u>, 942 F.3d 1259, 1276 (11th Cir. 2019)).

Defendant suggests that a 45-day time period for making a payment is warranted because class members properly are limited to those who made payments "as a result of receiving" the subject letters.  (Reply (DE 95) at 7).  "In the case of the [Intent to Foreclose] Letter," it argues,

"the main issue raised was the claim of a 'false' 30-day payment period," and thus "using a 45-day window, which is longer than the disputed 30-day period, is entirely appropriate." (Id.).

As an initial matter, the court agrees with defendant that imposing a more definite time period than "thereafter" in the class definition is necessary. In its prior order, the court addressed primarily the first injury-in-fact element of standing, determining it was satisfied here by "monetary harm." (Order (DE 85) at 16). The court did not, however, discuss in detail the "fairly traceable" element of standing, which is the issue implicated by defendant's argument, to which the court now turns. (Id.).

"To satisfy standing's causation requirement, the alleged injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." DiCocco v. Garland, 52 F.4th 588, 592 (4th Cir. 2022). "The 'fairly traceable' standard is not equivalent to a requirement of tort causation," Friends for Ferrell Parkway, LLC v. Stasko, 282 F.3d 315, 324 (4th Cir. 2002), and "[p]roximate causation is not a requirement of Article III standing." DiCocco, 52 F.4th at 592. This means that "defendant's conduct need not be the last link in the causal chain," but rather only "that the alleged harm was caused by the defendant," as opposed to a third party or self-inflicted injury. Disability Rts. S.C. v. McMaster, 24 F.4th 893, 901 (4th Cir. 2022).

In this case, defendant's suggested 45-day time period does not capture all plausible scenarios in which a class member may have made a payment "as a result of" the alleged FDCPA violations in the Notice of Lien or Notice of Intent to Foreclose. (Order (DE 85) at 17). In fact, a 45-day time period does not even encompass the circumstances in which plaintiff made payments, where the time between the Notice of Lien (September 16, 2019) and her first payment under a "plan" (November 7, 2019) was 52 days. (DE 57-6 at 2). In another example of a putative class

16

member, the time between the Notice of Lien (October 23, 2018) and a first payment (December 18, 2018) was in fact 56 days. (DE 57-15 at 1). It is reasonable to infer that other class members could have made payments to defendant as a result of a subject letter in a similar or longer time frame.

At the other end of the spectrum, an indefinite time period is too broad, because after a certain amount of time has passed it becomes implausible to infer that a payment was made to defendant "as a result of" an allegedly offending letter. (Order (DE 85) at 17). Likewise, it is not plausible to infer such a causal link based upon a very long, but definite, period of time, such as 8 months, 1 year, or more. For example, the time between one Notice of Intent to Foreclose in the record (August 27, 2019) and record of "payoff" thereafter (February 16, 2022) was 904 days. (DE 57-15 at 1). Plaintiff does not make allegations or present evidence at this juncture giving rise to an inference of a causal link on the basis of a payment made 904 days after receipt of an allegedly offending letter. The court thus erred in its prior order in not further limiting the time period from an indefinite or lengthy time period to a time period upon which a plausible basis of standing reasonably may be inferred.

The court recognizes that any definite time period risks casting the net for class members too narrowly (as with defendant's suggestion of a 45-day time period) or too broadly (as with an eight month or one year time period). Adopting a middle-ground time period of 90 days, for class definition purposes, maintains the benefit of a definite time period giving rise to a plausible inference of causation, while leaving the door open for defendant to argue in favor of a narrower time period cut-off at summary judgment or trial. In the event additional evidence at a later juncture requires further modification of the class definition, further modification then may be

considered.  <u>Krakauer v. Dish Network, L.L.C.</u>, 925 F.3d 643, 652 (4th Cir. 2019) ("When new evidence became available, the court modified the class appropriately.").

In sum, defendant's motion is granted in that part where it seeks reconsideration and clarification of the court's class definitions. In particular, the court strikes the indefinite period of time for a payment following receipt of a subject letter and replaces it with a 90-day time period, as indicated as follows:

> (1) <u>Notice of Lien Class</u>: All North Carolina homeowners, during the respective statute of limitations period, that received a Notice of Lien from EquityExperts substantially identical to the Notice of Lien delivered to Plaintiff, and ~~thereafter~~ made a payment to EquityExperts~~.~~ **within 90 days thereafter.**

> (2) <u>Notice of Intent to Foreclose Class</u>: All North Carolina homeowners, during the respective statute of limitations period, that received a Notice of Intent to Foreclose from EquityExperts substantially identical to the Notice of Intent to Foreclose delivered to Plaintiff, and ~~thereafter~~ made a payment to EquityExperts~~.~~ **within 90 days thereafter.**

### ii.    Type of Payment

Defendant argues that some limitation must be placed on the type of payment made by a putative class member, as part of the class definition. Defendant argues, for example, that "conditioning the Letter Classes on homeowners who made a payment . . . does not account for Plaintiff's or class members' state of mind in making such payments."  (Def's Mem. (DE 90) at 6).  It notes "the parameters for what qualifies as . . . a payment are not clearly defined – i.e., a payment towards (whether in full or partial) the IRL or ITF[7] Packages, payment in full to avoid foreclosure, or payment in general, regardless of purpose, including for ongoing assessments" or dues.  (<u>Id.</u>; <u>see</u> Reply (DE 95) at 7-8). The court disagrees that any further limitation of type of payment is required.

---

[7]    Defendant uses the shorthand "IRL" and "ITF" in place of "Intent to Record Lien" and "Intent to Foreclose."

18

To satisfy the Article III standing, all that is required is a "'monetary harm' an 'obvious' 'traditional tangible injury,' as a result of defendant's alleged FDCPA violations." (Order (DE 85) at 17 (quoting <u>Fernandez</u>, 116 F.4th at 295)). Now, in light of the court's reconsideration of the timing component of the class definitions, the "as a result of" element is covered by the 90-day time period limitation. This time period, in itself, ensures that any payment made to defendant is close enough in proximity to receipt of a subject letter to give rise to a plausible inference that the payment made is "fairly traceable to the challenged action of the defendant." <u>Fernandez</u>, 116 F.4th at 294. In other words, it is likely that any payment made to defendant within 90 days of receipt of a subject letter resulted from the subject letter and not "the independent action of some third party not before the court." <u>Disability Rts. S.C.</u>, 24 F.4th at 901.

Thus, for purposes of class certification, it is not necessary that a payment made was of a particular nature, such as a payment plan payment, a regular dues payment, a late penalty, or any other type of payment, as long as it was "a payment to EquityExperts" within the 90-day time period. (Order (DE 85) at 29). Likewise, in light of the time period limitation, how the payment was accounted for, or the reasoning or "state of mind" of the person making the payment, is not a necessary inquiry for Article III standing. See <u>In re Zetia (Ezetimibe) Antitrust Litig.</u>, 7 F.4th 227, 237 (4th Cir. 2021) ("[T]o establish Article III standing of named plaintiffs during class certification under Rule 23, it is sufficient for standing purposes that the plaintiffs seek recovery for an economic harm that they allege they have suffered."); <u>see, e.g.</u>, <u>Mack v. Resurgent Cap. Servs., L.P.</u>, 70 F.4th 395, 406 (7th Cir. 2023) (rejecting argument that the court "must look to the reason that [the plaintiff] spent the money" following receipt of a dunning letter, to determine standing in an FDCPA case).

19

In sum, the court premises its class action standing determination on the plausible inference of standing that arises from the proximity in time of a payment made to defendant following receipt of a subject letter, in light of form contents of each subject letter and the common circumstances of the putative class members and their claims. Having clarified the class definition, the court turns to additional arguments raised by defendant concerning numerosity and predominance.

        c.      Numerosity

Defendant argues that numerosity requirements are not met because, of 120 accounts that received the Notice of Intent to Foreclose, "only 31 accounts made payments within 45 days of the letter being sent." (Def's Mem. (DE 90) at 3). Similarly, it states that of 242 accounts that received the Notice of Lien, "only 66 accounts made payments within 45 days of the letter being sent." (Id.). It also expects that those numbers will "decrease further due to statute of limitations reviews, duplicate account reviews, consumer versus business account distinctions, and other considerations relevant to class definitions." (Id.). Defendant's argument is unavailing on multiple levels.

First, the premise of defendant's argument is no longer valid, in light of the court's determination that a 90-day time period shall apply in the class definition rather than a 45-day time period. Having modified the class definition, the number of class members will fall somewhere between the 31/66 identified by defendant (Mitchell Decl. (DE 90-1) ¶¶ 12, 14) and the 96/240 identified by plaintiff. (DE 92-5 at 1; DE 92-6). Both defendant and plaintiff identify additional factors that could reduce or enlarge the class size. (Def's Mem. (DE 90) at 3; Pl's Opp. (DE 92) at 6 nn. 4-5). On the one hand, the court rejects defendant's suggestion to further limit class size based on a one-year statute of limitations under the FDCPA, given that a three-year statute of limitations still applies under the NCCCA. See N.C. Gen. Stat. § 1-52(1); N.C. Gen. Stat. § 58-

70-130.  The court also does not apply further reduction due to "duplicate account reviews, consumer versus business account distinctions, and other considerations relevant to class definitions," where defendant does not suggest specific reductions.  (Def's Mem. (DE 90) at 3). On the other hand, the court agrees with plaintiff that class numbers will be increased to account for the "date of notice," and that they may be increased due to defendant's supplemental discovery production.  (Pl's Mem. (DE 92) at 6 nn. 4-5).

Third, the court does not agree with defendant's characterization that plaintiff made "false and misleading statements to support numerosity for class certification."  (Def's Mem. (DE 90) at 3).  In support of the class certification motion, plaintiff transparently set forth her method for identifying class members, based upon defendant's account ledgers received in discovery, document production received from counsel handling liens and foreclosures, and court records. (Vance Decl. (DE 70-1) ¶¶ 8-9).  Plaintiff now has attached 302 Notice of Lien letters received in document production, as well as revised calculations based upon the court's prior class definitions. (See DE 92-4 to 92-6).  For purposes of class certification and the instant motion the court determines that plaintiff has met her burden of proof to establish numerosity, as limited herein, with that evidence.  Defendant's suggestion that plaintiff's assertions are not "based on a review of [defendant's] records," nor knowledge of "how to read or understand [defendant's] records," (Reply (DE 95) at 4), is not a dispute this court must resolve at this juncture. Plaintiff is not required to rely only on evidence from defendant's perspective, and defendant has not demonstrated to the court that its perspective on the evidence is determinative to class certification. The court leaves for another day consideration of all the evidence that defendant contends will support its position.

Defendant contends that the chart plaintiff relied upon in her reply in support of class certification "does not establish whether the accounts received the same letters as the [p]laintiff."

21

(Def's Mem. (DE 90) at 4). Plaintiff's counsel, however, stated in declaration that the Notice of Lien chart, for example, was based upon review of the document production from Jorge Cowley in response to the two (2) subpoenas served on him. (Vance Decl. (DE 70-1) ¶ 8). In addition, plaintiff presented evidence that defendant "uses form collection letters and notices, with amounts and letters auto-populated and auto-generated into the letters and notices." (Order (DE 85) at 6 (citing Frye Dep (DE 57-11)). In any event, the Notice of Lien examples upon which plaintiff relies are all in the same form as the Notice of Lien sent to plaintiff September 16, 2019, attached to her class certification motion, and corresponding to the September 16, 2019, charges to plaintiff's account as alleged in the original complaint. (See Pl's Opp. Ex. C (DE 92-4); Compl. (DE 1-2) ¶ 41; Pl's Mot. Ex. B (DE 57-3) at 1).

The court also finds unhelpful defendant's insistence upon using the shorthand "IRL" (standing for "intent to record lien") to describe the Notice of Lien that is attached to the motion to certify and the proposed amended complaint. (Reply (DE 95) at 4-5). That Notice of Lien, dated September 16, 2019, prominently is titled "NOTICE OF LIEN FILING" and it is distinguishable from a separate letter, dated August 26, 2019, that states "we intend to file a notice of lien." (Pl's Mot. Ex. B. (DE 57-3) at 1; Prop Am. Compl. (DE 79-1) at 27; Pl's Opp. Ex. B (DE 92-3) at 1) (emphasis added). While defendant contends that it refers to the Notice of Lien "both formally and informally as the 'IRL' letter," (Reply (DE 95) at 5), this contention is beside the point, where plaintiff's claim and the court's class certification analysis is based on the language of the Notice of Lien. In addition, defendant asserts "this letter is not actually notifying a person that a lien was, indeed, filed." (Id. at 2 n. 1). This contention by defendant is in fact one of the critical disputed contentions in this case, that is, whether the Notice of Lien does or does not misrepresent that a lien has been filed, where the Notice of Lien is actually titled "NOTICE OF LIEN FILING" and the

text of examples in the record in fact state "Please be advised that a lien <u>has been filed</u>" or "Please be advised that a lien <u>has been initiated</u>." (DE 92-4 at 1-2) (emphasis added).

In sum, to resolve that part of defendant's instant motion challenging numerosity, the court determines that the total number of class members will fall somewhere between the numbers identified by defendant and those identified by plaintiff. As a starting point, the court adopts plaintiff's numbers (240 Notice of Lien and 96 Notice of Intent to Foreclose) for purposes of analysis of numerosity, recognizing that the parties must 1) reduce that number to account for the 90-day time period set forth herein, and then 2) increase that number to account for the "date of notice," and for any increase due to supplemental discovery production. (Pl's Opp. (DE 92) at 6 nn. 4-5). Before notice is given, the court will direct the parties to file a joint status report specifying the final list of notice recipients, in conjunction with a proposed form of class notice.

Neither the numbers identified by defendant, nor the more probable increased numbers based upon the court's calculations herein, defeat class certification on the basis of numerosity. Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Though no specified number is needed to maintain a class action, as a general guideline, a class that encompasses fewer than 20 members will likely not be certified while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." <u>In re Zetia (Ezetimibe) Antitrust Litig.</u>, 7 F.4th at 234. "For the gray area cases between twenty and forty members, all the circumstances of the case should be taken into consideration in evaluating the impracticability of joinder." <u>Id.</u> The instant case falls in the presumptive range because the number of class members even based upon defendant's calculations exceed 40 for the Notice of Lien class.

Defendant argues that "joinder is . . . more practicable because all members of the class are from the same geographic area." (Def's Mem. (DE 90) at 15 (quoting Andrews v. Bechtel Power Corp., 780 F.2d 124, 131-32 (1st Cir. 1985)). However, class members' subject properties are in various locations both in this district and the Middle District. (See, e.g., Pl's Opp. Ex. C (providing copies of all notices of lien, listing properties in locations such as 1013 Sweet Gale Drive, Durham; 61 Waxflower Drive, Smithfield; 500 Boneset Park Trail, Holly Ridge). In addition, joinder is not more practicable where class members would otherwise need to obtain attorneys to represent them in the instant court, and they would have little incentive to do so where individual claim value is small. Therefore, plaintiff has demonstrated that the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).

     d.     Predominance

Defendant argues that plaintiff's identification of accounts reflecting payments made in excess of $1,200.00 is not an appropriate basis for showing commonality. (Def's Mem. (DE 90) at 10-12). The court, however, agreed with defendant in its prior order that a class definition premised solely upon any and all payments made in excess of $1,200.00 is not viable. (See Order (DE 85) at 19-23). Rather, the court relies, for example, on the common contention that specific lien and foreclosure fees charged are "for not-yet-performed services and expenses," or are "inflated" or "unauthorized," based upon "a comparison of records for the type of the charge with the type of the service rendered." (Id. at 15). Issues now raised by defendant about the difficulty of adjudicating all charges "relative to Plaintiff's $1,200 goalpost," (Def's Mem. (DE 90) at 10), thus are not pertinent to class certification.

Likewise, this analysis will not require defendant "to present a defense for every charge on every account" where a Notice of Lien or Notice of Intent to Foreclose was sent, as defendant

argues. (Id. at 12). Rather, as pertinent to plaintiff's contention, it will require comparison of the "lien filing fee" or "foreclosure referral fee" that is charged according to defendant's uniform fee schedule, to the actual cost of the services provided according to a standard rate. (See Order (DE 85) at 15). As such, it is also not true that "[p]laintiff has set forth no basis for which such a measurement will be made," (Reply (DE 95) at 8), where plaintiff identified actual attorney invoices as a basis for comparison. (Pl's Ex. C. (DE 57-4); Pl's Ex. F (DE 57-6)). Defendant's dispute of such comparison on the merits demonstrates a common contention predominating over individual issues.

Defendant argues that the "data and each individual account is also affected by COVID-related delays and varied individual circumstances, recording delays, delay in mail, and other instances, such as homeowners arranging payments to delay or cancel recordings or foreclosures." (Def's Mem. (DE 90) at 4). As such, defendant points out, "the chart [plaintiff] filed does not have any uniformity" in the time difference between the Notice of Lien and the date lien filed. (Id.). These distinctions, however, are beside the point. A common contention for each class member is that the "form notice of lien sent to them 'intentionally misrepresents that a lien has been filed when in reality a lien has not been filed.'" (Order (DE 85) at 13). A similar common contention is that the form states "'payment in full' must be made to remove the lien," where "a lien was not filed at the time the notice was sent." (Id. at 15). It is not material to these contentions that the timing of lien filing or other activity on the account varied by degree or kind. Thus, defendant's argument does not defeat class certification.

Defendant also suggests that there is a lack of commonality and typicality because plaintiff's "file is uniquely characterized by multiple foreclosure proceedings, several made-and-broken payment arrangements, and the fact that she had a large waiver or removal of significant

fees from her account." (Def's Mem. (DE 90) at 6; see id. at 16). None of these points, however, interfere with the common contentions the court identified above and in its prior order underlying the Notice of Lien and Notice of Intent to Foreclose classes. (See Order (DE 85) at 13-15). Despite these differences, it remains a common contention at the core of plaintiff's and all class members' claims that the Notice of Lien and Notice of Intent to Foreclose contained misrepresentations at the time each such notice was sent. Defendant argues that "without presenting the full account history," which it contends "will necessarily require mini-trials," "it is deprived of the ability to assert a complete defense." (Def's Mem. (DE 90) at 6; see Reply (DE 95) at 8-9). But defendant does not demonstrate the relevance of any such complete defense or mini-trials to the "core issues" in the common contentions underlying the Notice of Lien and Notice of Intent to Foreclose classes. Krakauer, 925 F.3d at 654. Defendant's argument thus is not probative to whether "determination of [a common contention's] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011).

In sum, defendant has not demonstrated that reconsideration of class certification is warranted on the basis of numerosity or predominance issues. Therefore, except in that limited part set forth herein, defendant's motion is denied.

## CONCLUSION

Based on the foregoing:

1.   Plaintiff's motion for leave to file amended complaint (DE 78) IS GRANTED IN PART and DENIED IN PART. Plaintiff is DIRECTED to file, within five days of the date of this order, her amended complaint, as proposed, except with respect to the class definitions, which must be modified as set forth below.

2.	Defendant's motion for reconsideration and in the alternative for clarification (DE 89) is GRANTED IN PART and DENIED IN PART.  The court grants the motion in that part where defendant seeks a modification of the class definitions, and in that alternative part where defendant seeks clarification, to the extent set forth herein.  The class definitions are modified as follows:

(1) Notice of Lien Class: All North Carolina homeowners, during the respective statute of limitations period, that received a Notice of Lien from EquityExperts substantially identical to the Notice of Lien delivered to Plaintiff, and made a payment to EquityExperts within 90 days thereafter.

(2) Notice of Intent to Foreclose Class: All North Carolina homeowners, during the respective statute of limitations period, that received a Notice of Intent to Foreclose from EquityExperts substantially identical to the Notice of Intent to Foreclose delivered to Plaintiff, and made a payment to EquityExperts within 90 days thereafter.

3.	Within 30 days of the date of this order, the parties are DIRECTED to file, jointly, a proposed plan for providing notice to class members, as well as a proposed schedule for conducting remaining discovery and dispositive motions briefing, or if the parties cannot agree upon a proposed plan, then to file their proposals separately.

SO ORDERED, this the 2nd day of May, 2025.



LOUISE W. FLANAGAN
United States District Judge

27